Ronald L. Israel, Esq.
Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, NJ 07052
(973) 325-1500
*Attorneys for Plaintiff*
*John Doe*



## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>PRINCETON UNIVERSITY,<br><br>　　　　　Defendant. | Civil Action No. _____<br><br>**VERIFIED COMPLAINT** |

Plaintiff John Doe ("Plaintiff")[1], by way of complaint against the Defendant Princeton University ("Princeton"), says:

### NATURE OF THE ACTION

1. This action arises as a result of Princeton's failure to safeguard Plaintiff's due process and contractual rights in the context of an investigation under Title IX of the Educational Amendments of 1972 ("Title IX"). Princeton's investigation stems from a relationship between Plaintiff and another Princeton student, identified herein as Jane Roe for privacy reasons, that began during the Spring semester of 2017.

---

[1] Defendant Princeton University is aware of Plaintiff's identity. Plaintiff has executed a verification of this Complaint as "John Doe" to protect his identity. However, should the Court require additional verification with Plaintiff's actual signature, such verification has been executed and is maintained in counsel's file.

7985996

2. Princeton's investigation into John Doe's and Jane Roe's respective allegations is ongoing; however, recent proposed regulations by the U.S. Department of Education stand to impact the framework pursuant to which the investigation proceeds. The proposed regulations are currently in a sixty-day review and comment period, following which the regulations will likely be enacted.

3. The proposed regulations, once enacted, will significantly impact Title IX investigations, such as the one currently being conducted by Princeton, by implementing new procedural safeguards, such as cross-examination and a heightened burden of proof, to ensure the fairness of the proceeding. In light of these new safeguards, Plaintiff requested that Princeton delay the investigation to ensure that the proper investigatory framework is followed in his case. Although Princeton's current Title IX policy expressly permits delays in the proceedings for "good cause," Princeton denied Plaintiff's request, thereby necessitating the filing of this action.

## THE PARTIES

4. Plaintiff is a resident of New York and a student of Princeton.

5. Defendant Princeton is a private university that receives federal Title IX funds, and is located in Princeton, New Jersey 08544.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over the subject of this action pursuant to 28 U.S.C. § 1331, as this action arises from Plaintiff's claimed violation of his constitutional due process rights.

7. This Court also has supplemental jurisdiction over any claims arising hereunder under the laws of the State of New Jersey pursuant to 28 U.S.C. § 1367 because the claims are

7985996

so related to Plaintiff's federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

8. This Court has personal jurisdiction over the parties to this action because: (i) Plaintiff's claims arise in this judicial district and (ii) Princeton is located within this judicial district.

9. Venue for this action is proper in the District under 28 U.S.C. § 1391(b), in that Princeton, a university, resides in this judicial district, witnesses and evidence are located within this judicial district, and the acts complained of herein have taken place in this judicial district.

## FACTS UNDERLYING ALL COUNTS

### A. Plaintiff's Relationship with Jane Roe

10. Plaintiff is a student of Princeton who is currently involved in a Title IX investigation concerning his relationship and interactions with Jane Roe, a female student at Princeton.

11. On or about January 14, 2018, John Doe advised Princeton that he felt he was being harassed by Jane Roe. Despite this fact, and although the conduct at issue in the Title IX investigation occurred in Spring 2017, Plaintiff was not advised of Jane Roe's allegations against him or that the university had commenced a Title IX investigation, until November 7, 2018, nearly eighteen months after the conduct occurred.

### B. Princeton's Title IX Policy

12. As a part of Princeton's "Rights, Rules, Responsibilities," which outlines Princeton's policies and procedures with respect to a number of issues, Princeton has issued a sex discrimination and sexual misconduct policy (the "Policy").

3

7985996

13. The Policy "includes investigation and disciplinary procedures that will be followed in response to allegations of sex or gender discrimination, including sexual misconduct such as sexual harassment and sexual assault, intimate partner violence, stalking, and related retaliation." (Section 1.3).

14. The Policy refers to Title IX, and states that Princeton "has an obligation to make reasonable efforts to investigate and address complaints or reports of sex or gender discrimination, including sexual misconduct, whenever it becomes aware of such a complaint or report." (Section 1.3).

15. In that regard, the Policy identifies a Title IX Coordinator, who "will be informed of all complaints or reports of violations of [the Policy] and oversees the University's centralized response to ensure compliance with Title IX," including "[r]eviewing applicable University policies to ensure institutional compliance with Title IX," "[m]onitoring the University's administration of its own applicable policies, including record keeping, timeframes, and other procedural requirements," and "[r]esponding to any complaint or report regarding conduct that violates [the Policy]." (Section 1.3.1).

16. The Policy describes certain prohibited conduct, including different types of sex discrimination and sexual misconduct. Moreover, the Policy advises that "[a]ll forms of sexual misconduct are serious offenses and will result in University disciplinary consequences." (Section 1.3.3(2)).

17. The Policy encourages "[c]omplainants and other reporting individuals" to report violations of the Policy "as soon as possible in order to maximize the University's ability to respond promptly and effectively," but notes that "[c]omplaints and reports may be made at

7985996

any time without regard to how much time has elapsed since the incident(s) in question." (Section 1.3.8(3)).

18. After a complaint has been made, the Policy specifies that Princeton "will provide reasonable and appropriate interim measures," including the imposition of "an on-campus 'no contact order,' an administrative remedy designed to curtail contact and communications between two or more individuals[.]" (Section 1.3.9).

19. Pursuant to the Policy, Princeton's investigative policy begins when the Title IX Coordinator receives a complaint or report of a violation. Importantly, "[t]he Title IX Coordinator will seek to complete the investigation and any resulting disciplinary process and provide notice of the outcome within 60 calendar days after receipt of the complaint or report." (Section 1.3.10).

20. However, such investigations are not always required to be completed within sixty days. Indeed, the Policy recognizes that extensions of that timeframe may be warranted under certain circumstances. Specifically, the Policy states: "***There may be circumstances that require the extension of timeframes for good cause, including extensions beyond 60 calendar days***." (emphasis added). Although "good cause" is not defined by the Policy, the Policy does provide circumstances under which an extension may be appropriate, including "to ensure the integrity and completeness of the investigation, comply with a request by external law enforcement, accommodate the availability of witnesses, or accommodate delays by the parties; or for other legitimate reasons, including the complexity of the investigation and the severity and extent of the alleged misconduct." (Section 1.3.10).

21. The Policy provides that, with respect to an investigation concerning the conduct of a student, the Title IX Coordinator will appoint a three-person panel of administrators and/or

5

investigators, which will "conduct an inquiry and determine, by a preponderance of the evidence, whether [the Policy] was violated." (Section 1.3.12).

22. As a part of that inquiry, the panel is to collect information from each party, including by way of interview. While "[e]ach party may select an adviser of their choice who may accompany them to any meeting or related proceeding," that adviser "may not actively participate in the interview process." (Section 1.3.12).

23. Following interviews of the parties and/or witnesses, the panel is then supposed to prepare a case file of all interview summaries, witness statements, and other documents for the parties' review, following which the panel may conduct some additional investigation. (Section 1.3.12).

24. At the conclusion of the investigation, "the panel will meet to determine, by a majority decision, whether the respondent, based on the preponderance of evidence standard, violated University policy," and is to issue a report detailing findings of fact, findings of responsibility, and the panel's rationale. If a student is found to have violated the Policy, the case file is forwarded to the dean, who determines the penalty to be assigned. (Section 1.3.12).

C. **U.S. Department of Education's Proposed Rules Impacting Certain Aspects of University Title IX Investigations**

25. On November 16, 2018, the United States Department of Education ("DOE") released proposed rules which would impact certain aspects of Title IX investigations as they are currently conducted by universities.

26. Indeed, the DOE stated that the proposed regulations are designed to "clarify that in responding to any claim of sex discrimination under Title IX, [universities] are not required to deprive an individual of rights that would be otherwise guaranteed under the U.S. Constitution[.]" (DOE Summary, at 5).

6

7985996

27. DOE also stated that "the major benefits of these proposed regulations, taken as a whole, include achieving the protective purposes of Title IX via fair, reliable procedures that provide adequate due process protections for those involved in grievance procedures." (DOE Summary, at 6).

28. DOE further stated that one of the reasons it sought to promulgate the proposed regulations was the lack of "clear regulatory standards" throughout the country that have "contributed to processes that have not been fair to all parties involved, that have lacked appropriate procedural protections, and that have undermined confidence in the reliability of the outcomes of investigations of sexual harassment allegations." (DOE Summary, at 15).

29. Specifically, of importance in this case, DOE's proposed regulation would "[e]stablish procedural safeguards that *must* be incorporated into" the university's "grievance procedures to ensure a fair and reliable factual determination when a [university] investigates and adjudicates a sexual harassment complaint." (DOE Summary, at 5) (emphasis added).

30. One of the procedural safeguards that the DOE is proposing mandating is the right to cross-examination. In its summary of the proposed regulations, DOE stated, "The Department recognizes the high stakes for all parties involved in a sexual harassment investigation, and recognizes that the need for recipients to reach reliable determinations lies at the heart of Title IX's guarantees for all parties. Indeed, at least one federal circuit court has held that in the Title IX context cross-examination is not just a wise policy, but is a Constitutional requirement of Due Process." (DOE Summary, at 56).

31. DOE concluded that "at institutions of higher education, where most parties and witnesses are adults, grievance procedures must include live cross-examination at a hearing.

Proposed section 106.45(b)(3)(vii) requires institutions to provide a live hearing, and to allow the parties' advisors to cross-examine the other party and witnesses." (DOE Summary, at 57).

32. DOE also concluded that, "In the context of institutions of higher education, the proposed regulation balances the importance of cross-examination with any potential harm from personal confrontation between the complainant and the respondent by requiring questions to be asked by an advisor aligned with the party."

33. By contrast, Princeton's current Policy does not contain any right to cross-examination by the parties' advisors, and instead precludes the parties' advisors from affirmatively participating in the proceedings at all.

34. In addition, DOE's proposed regulation may also heighten the burden of proof applied in a university's Title IX investigation. Specifically, DOE has proposed "adding section 106.45(b)(4)(i) stating that in reaching a determination regarding responsibility, the recipient must apply either the preponderance of the evidence standard or the clear and convincing evidence standard. The recipient may, however, employ the preponderance of the evidence standard only if the recipient uses that standard for conduct code violations that do not involve sexual harassment but carry the same maximum disciplinary sanction. The recipient must also apply the same standard of evidence for complaints against students at it does for complaints against employees, including faculty." (DOE Summary, at 61-62).

35. In other words, a university will not be permitted to employ a preponderance of the evidence standard in the context of sexual harassment and misconduct cases if that standard is not employed for other violations carrying the "same maximum disciplinary sanction."

36. Accordingly, the proposed regulation establishes the firm possibility that the burden of proof to be applied in Title IX investigations following its enactment will be clear

8

7985996

and convincing evidence, rather than the preponderance of the evidence standard currently employed by Princeton's Policy.

### D. Plaintiff's Request for a Continuance in Light of the Proposed Title IX Rules That Safeguard Important Due Process Rights

37. Plaintiff was originally scheduled to be interviewed by Princeton in connection with the investigation on November 26, 2018.

38. Upon learning of DOE's proposed regulations, Plaintiff requested a continuance of the November 26, 2018 meeting until January 28, 2019, to permit the mandatory review and comment period on the proposed regulation to conclude and a final determination as to the enactment of DOE's proposed regulation to be made.

39. While Princeton initially agreed to a one-week extension of the interview to December 3, 2018 and later consented to an additional extension until the week of December 10, 2018 to permit Plaintiff to file this action, it has refused to stay the proceeding pending the final implementation of the DOE's new Title IX rules. Nor has Princeton agreed, instead of a delay to the proceeding, to apply the new proposed procedural safeguards that are contained in the proposed rules.

40. Plaintiff believes that the significant changes that will be imposed to a university's Title IX investigation policy, including Princeton's Policy, following the enactment of the proposed regulations warrant an adjournment of Plaintiff's proceeding during the review and comment period and until such time as the regulations are implemented by universities such as Princeton.

41. Critically, should Princeton continue its investigation irrespective of the proposed regulations, it will be weighing conduct against a burden of proof that may not even be applicable in a couple of months, and will preclude Plaintiff from relying on procedural

9

safeguards that DOE has determined are crucial in Title IX proceedings, such as the right of cross-examination. An adjournment of Plaintiff's proceedings under such circumstances will not only protect Plaintiff's due process rights, but will not prejudice Jane Roe, as the conduct at issue took place a year and a half ago, and no-contact orders between the parties have been in effect for nearly a year without issue.

42. Notwithstanding that the Policy expressly permits extensions for "good cause," Princeton refused the continuance, requiring Plaintiff to file this action.

### COUNT ONE

### (Violation of Due Process Rights)

43. Plaintiff repeats and realleges the foregoing allegations as if they were more fully set forth herein.

44. Plaintiff is a student at Princeton, a private university.

45. As such, Plaintiff is entitled to certain procedural safeguards to ensure that he receives a fundamentally fair disciplinary process.

46. In its guidance documents, DOE has confirmed the importance of due process protections in Title IX proceedings.

47. Moreover, in proposing new regulations concerning Title IX investigations conducted by universities, DOE has indicated its belief that certain aspects of the current Title IX investigatory framework insufficiently protect the rights of students accused of sexual misconduct.

48. For example, DOE's proposed regulations provide for cross-examination of the parties, and may establish a more difficult burden of proof for a complainant to sustain his or her claims.

10

49. Should Plaintiff's disciplinary proceeding continue before DOE's proposed regulations are enacted, Plaintiff would be subject to a disciplinary proceeding that does not sufficiently protect his due process rights or provide him a fundamentally fair disciplinary process.

50. Accordingly, Princeton's failure to grant Plaintiff an adjournment of the Title IX investigation until DOE's proposed regulations are implemented has violated Plaintiff's due process rights.

## COUNT TWO

### (Breach of Contract)

51. Plaintiff repeats and realleges the foregoing allegations as if they were more fully set forth herein.

52. As a student of Princeton, Plaintiff's relationship with Princeton is governed by Princeton's "Rights, Rules, Responsibilities," which contains a section pertaining to sex discrimination and sexual misconduct, defined above as the "Policy."

53. As set forth above, Princeton's sexual misconduct Policy outlines the framework in which the University will conduct Title IX investigations.

54. Princeton's sexual misconduct Policy contains a provision requiring a Title IX investigation to be conducted within sixty days.

55. However, the Policy also contains an express provision (Section 1.3.10(3)) stating that an extension of the timeframe for "good cause" may be permitted, including to ensure "the integrity and completeness of the investigation" or "for other legitimate reasons."

56. Plaintiff requested an adjournment of the investigation to accommodate the review, comment, and implementation of DOE's proposed regulations, which Plaintiff

11

contends is "good cause" to extend the sixty-day timeframe in which the investigation should be completed. However, Princeton refused Plaintiff's requested extension.

57. Princeton's failure to permit Plaintiff's adjournment for the "good cause" of ensuring that the proper procedure is employed in Plaintiff's case is a breach of the terms of Princeton's contract with Plaintiff, embodied in the Policy, which expressly permits extensions for good cause.

58. Princeton's breach of its obligations to Plaintiff will cause Plaintiff to suffer damages, by requiring Plaintiff to be subject to a process that insufficiently protects Plaintiff's rights.

## COUNT THREE

### (Anticipatory Breach of Contract)

59. Plaintiff repeats and realleges the foregoing allegations as if they were more fully set forth herein.

60. As set forth above, Plaintiff's relationship with Princeton is governed by the "Rights, Rules, Responsibilities," including the Policy.

61. According to the Policy, Princeton is committed to providing its students subject to a Title IX investigation with a fair process and an impartial investigation. More generally, Princeton's "Rights, Rules, Responsibilities" strives to "establish[] procedures for a fair hearing, including advising individuals fully of the charges against them, affording them ample opportunity to speak on their behalf, and requiring a clear explanation of their rights of appeal." (Section 1.1.1).

12

62. As set forth above, Plaintiff requested an adjournment of the Title IX investigation pending the review, comment, and implementation of DOE's proposed regulations, but Princeton refused the adjournment.

63. Princeton's failure to adjourn Plaintiff's Title IX investigation until such time as the proper framework for such investigation is determined qualifies as an anticipatory breach of Princeton's obligations to Plaintiff, including but not limited to Princeton's obligation to provide Plaintiff with a fair disciplinary process.

64. Princeton's anticipatory breach of its obligations to Plaintiff will cause Plaintiff to incur damages, by requiring Plaintiff to be subject to a process that insufficiently protects Plaintiff's rights.

## COUNT FOUR

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

65. Plaintiff repeats and realleges the foregoing allegations as if they were more fully set forth herein.

66. As set forth above, Plaintiff's relationship with Princeton is governed by the "Rights, Rules, Responsibilities," including the Policy.

67. As in all contracts, Plaintiff's contract with Princeton contains an implied covenant of good faith and fair dealing.

68. As set forth above, Plaintiff has established good cause for an adjournment of Princeton's Title IX investigation into his alleged conduct, based upon DOE's proposed regulations, which will alter the procedural framework in which such investigations must occur.

13

7985996

69. Nonetheless, Princeton has refused in bad faith Plaintiff's requested adjournment, even though that refusal will likely work to deny Plaintiff the benefits of his contract with Princeton, including the benefit of a fundamentally fair disciplinary proceeding.

70. Princeton's denial of Plaintiff's requested adjournment has breached the implied covenant of good faith and fair dealing, thereby causing Plaintiff to incur damages, by requiring Plaintiff to be subject to a process that insufficiently protects Plaintiff's rights.

WHEREFORE, Plaintiff seeks relief as follows:

(a) That Princeton be enjoined from proceeding with the Title IX investigation as to Plaintiff's and Jane Roe's respective allegations until such time as the review, comment, and implementation of DOE's proposed regulations concerning Title IX investigations has passed; and

(b) That Plaintiff has such other and further relief as the Court deems to be just and proper.

CHIESA SHAHINIAN & GIANTOMASI PC

*Attorneys for Plaintiff*
*John Doe*

By _____
RONALD L. ISRAEL

Dated: November 28, 2018

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

Pursuant to Local Rule 11.2, counsel for Plaintiff hereby certifies, to the best of his knowledge, that this matter in controversy is not the subject of any other action currently pending in any court, or of any pending arbitration or administrative proceeding.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

CHIESA SHAHINIAN & GIANTOMASI PC

*Attorneys for Plaintiff*
*John Doe*

By _____
RONALD L. ISRAEL

Dated: November 28, 2018

## VERIFICATION

JOHN DOE, of full age, hereby declares pursuant to 28 U.S.C. § 1746:

1. I am the plaintiff in the above-captioned action and have authorized the filing of this Complaint.

2. I am fully familiar with the facts and circumstances alleged in the foregoing Complaint. I have read the Complaint and affirm that, to the best of my personal knowledge, the facts stated therein are true. If my knowledge is qualified, I believe the fact stated is true.

I declare under penalty of perjury that the foregoing is true and accurate.

*John Doe*
JOHN DOE

Dated: November 28, 2018