**UNITED STATES DISTRICT COURT**
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
**FOR THE DISTRICT OF NEW JERSEY**

2018 NOV 28  P 3: 23

CIVIL ACTION NO. _____

JOHN DOE,

      Plaintiff,

vs.

PRINCETON UNIVERSITY,

      Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

---

**CHIESA SHAHINIAN &**
**GIANTOMASI PC**
ONE BOLAND DRIVE
WEST ORANGE, NJ 07052
973.325.1500
*Attorneys for Plaintiff*
*John Doe*

On the Brief:
   Ronald L. Israel, Esq.
   Brigitte M. Gladis, Esq.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 3

LEGAL ARGUMENT............................................................................................................... 5

       PLAINTIFF IS ENTITLED TO THE ENTRY OF A PRELIMINARY
       INJUNCTION.................................................................................................................. 5

I.     PLAINTIFF IS ABLE TO DEMONSTRATE THAT HE IS
       LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS............................ 5

       A.     Princeton Has Violated Plaintiff's Due Process Rights By
             Failing to Grant a Brief Continuance of the Proceedings ........................... 5

       B.     Princeton Has Also Breached Its Contract With Plaintiff By
             Failing to Grant the Requested Continuance ............................................... 9

       C.     Princeton Has Breached the Implied Covenant of Good
             Faith and Fair Dealing ............................................................................. 12

       D.     Princeton Has Anticipatorily Breached Its Contract with
             Plaintiff By Proceeding with Its Investigation
             Notwithstanding the Release of the DOE's New Proposed
             Regulations .............................................................................................. 13

II.    PLAINTIFF WILL SUFFER IRREPARABLE HARM SHOULD
       THE INJUNCTION NOT ISSUE....................................................................... 15

III.   THE BALANCE OF THE EQUITIES WEIGHS STRONGLY IN
       FAVOR OF PLAINTIFF..................................................................................... 16

CONCLUSION....................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.,
   182 N.J. 210 (2005) ...................................................................................13

Checker Cab of Phila. Inc. v. Uber Techs., Inc.,
   643 F. App'x 229 (3d Cir. 2016) .................................................................17

Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,
   467 U.S. 837 (1984)....................................................................................10

Coulter v. East Stroudsburg Univ.,
   2010 WL 1816632 (M.D. Pa. May 5, 2010) ...............................................17

Danzig v. AEC Corp.,
   224 F.3d 1333 (Fed. Cir. 2000), cert. denied, 532 U.S. 995 (2001) ..........14

Davis v. Monroe County Bd. of Educ.,
   526 U.S. 629 (1999)......................................................................................7

Doe v. Brandeis University,
   177 F. Supp.3d 561 (D. Mass. 2016) ........................................................9, 10

Doe v. Pennsylvania State Univ.,
   276 F. Supp.3d 300 (M.D. Pa. 2017)..........................................................17

Emerson Radio Corp. v. Orion Sales, Inc.,
   80 F.Supp.2d 307 (D.N.J. 2000), rev'd in part, on other grounds, 253 F.3d 159
   (3d Cir. 2001)..............................................................................................13

EnviroFinance Grp., LLC v. Environmental Barrier Co., LLC,
   440 N.J. Super. 325 (App. Div. 2015) ........................................................11

Fitzgerald v. Barnstable School Committee,
   555 U.S. 246 (2009)......................................................................................7

Friedlander v. Gross,
   63 N.J. Super. 470 (N.J. Super. Ct. App. Div. 1960)..................................15

Hernandez v. Don Bosco Preparatory High,
   730 A.2d 365 (N.J. App. Div. 1999)...........................................................11

Marsh v. State of Alabama,
   326 U.S. 501 (1946)......................................................................................6

7987583

## TABLE OF AUTHORITIES

**Page**

Mittra v. Univ. of Medicine and Dentistry of New Jersey,
   316 N.J. Super. 83 (N.J. App. Div. 1998)...............................................................................11

Moe v. Seton Hall Univ.,
   2010 WL 1609680 (D.N.J. Apr. 20, 2010) .......................................................................11, 12

Mucci v. Rutgers,
   2011 WL 831967 (D.N.J. Mar. 3, 2011)................................................................................11

R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.,
   168 N.J. 255 (2001) .................................................................................................................13

Shelley v. Kraemer,
   334 U.S. 1 (1948)......................................................................................................................6

Spring Creek Holding Co., Inc. v. Shinnihon U.S.A. Co., Ltd.,
   399 N.J. Super. 158 (N.J. Super. Ct. App. Div. 2008)...........................................................14

United States v. Mead Corp.,
   533 U.S. 218 (2001).................................................................................................................10

**Statutes**

20 U.S.C. § 1681(a) ...........................................................................................................................7

20 U.S.C. § 1682................................................................................................................................7

7987583

## **PRELIMINARY STATEMENT**

Plaintiff John Doe[1] ("Plaintiff"), a student of Defendant Princeton University ("Princeton" or the "University"), is in the midst of an investigation being conducted by Princeton pursuant to Title IX of the Educational Amendments of 1972 ("Title IX"), arising from his relationship with another Princeton student, Jane Roe, which occurred during the Spring semester of 2017. Although Plaintiff had notified Princeton that he believed he was being harassed by Jane Roe in January 2018, Plaintiff was not notified that Jane Roe had asserted claims against him, or that the present Title IX investigation had been initiated, until early November 2018 – nearly eighteen months after the conduct at issue occurred.

As is the case for most, if not all, universities, Princeton's Title IX investigation is conducted pursuant to a sex discrimination and sexual misconduct policy (the "Policy"). The Policy outlines the procedure for commencing an investigation, the particular guidelines the University must follow during that investigation, and the timeframe in which the investigation is to occur. As a part of the investigation, Princeton's Policy provides that the University may interview the parties to the investigation, as well as any witnesses that may possess relevant knowledge. Although the parties may have "advisors" present during their interviews, neither those advisors nor the parties themselves are permitted to engage in cross-examination of the other party or witnesses.

The Policy's framework, however, stands to be significantly impacted by regulations that have been proposed by the U.S. Department of Education ("DOE"). As the DOE has described, the proposed regulations are intended to create a clear regulatory framework for universities to

---

[1] To maintain the privacy of the parties involved, the individuals identified herein will be referred to by pseudonyms.

investigate allegations pursuant to Title IX.  These new regulations were spurred by DOE's conclusion that current frameworks for Title IX investigations implemented at universities throughout the country lack procedural protections for individuals being investigated, thereby undermining confidence in the outcomes of those investigations.  Accordingly, DOE has proposed new regulations designed to strengthen procedural protections for Title IX investigations by, among other things, permitting cross-examination of the parties and witnesses and potentially heightening the burden of proof for allegations of sexual misconduct.

Through this application, Plaintiff is simply seeking an adjournment of his ongoing Title IX investigation until the time in which DOE's proposed regulations are implemented by universities.  Plaintiff requested that adjournment from the University, but Princeton declined to grant it.  However, Plaintiff's position is that he should not be subject to an investigation that the DOE has already determined may be insufficient to protect his constitutional due process rights. Instead, Princeton's investigation should be put on hold during the review and comment period concerning DOE's proposed regulations and until those regulations are implemented.  Such an adjournment is the only way to ensure that Plaintiff's constitutional and contractual rights are protected.   Absent that adjournment, which will prejudice neither Jane Roe nor Princeton, Plaintiff stands to suffer significant irreparable harm, as the potential ramifications of this investigation can seriously impact Plaintiff's reputation, education, and future job prospects.  In light of such serious potential consequences, the University should be required to provide all proper procedural safeguards to ensure the protection of Plaintiff's rights – including safeguards, such as cross-examination, not currently present under Princeton's framework.[2]

---

[2] We anticipate that Princeton will raise as an issue in this matter that it is bound by a contractual relationship with the U.S. government concerning the requirements for its Title IX policy.  While we do not believe that Princeton's relationship with the U.S. government is relevant to the

Consequently, Plaintiff respectfully requests that the Court grant his application for a preliminary injunction, restraining Princeton from continuing its Title IX investigation until DOE's proposed regulations are implemented.

## STATEMENT OF FACTS

The facts underlying this application are more thoroughly set forth in Plaintiff's Complaint, which is being submitted herewith. However, the most salient points are summarized below.

Pursuant to Title IX, Princeton maintains a Policy that outlines the framework pursuant to which the University will investigate allegations of sexual misconduct. (See Nov. 28, 2018 Declaration of Ronald L. Israel, Esq. ("Israel Decl."), Ex. A). The Policy recognizes that students may involve advisors to accompany them in connection with the proceedings, but that those advisors are not permitted to participate in the interview process on the students' behalf. (Id., Section 1.3.12). In addition, the Policy states that the panel appointed to conduct the investigation will apply a preponderance of the evidence standard in its consideration of the evidence received during the course of the investigation. (Id.). Further, the Policy mandates that Princeton complete its investigation and any resulting disciplinary process within sixty days after it receives the complaint or report of a violation. (Id., Section 1.3.10). However, the Policy also provides that extensions of this sixty-day period are warranted under certain circumstances, when "good cause" for that extension exists. (Id.).

Although Princeton's current investigation involving Plaintiff is being conducted pursuant to the Policy, DOE recently issued proposed regulations concerning Title IX that will

---

limited relief requested by Plaintiff in this application, we recognize that it may ultimately be an issue should this matter proceed beyond Plaintiff's request for a preliminary injunction. Accordingly, the Court may need to render a determination as to whether the U.S. government should be added as a nominal defendant or interested party in this action.

7987583

seriously impact proceedings involving allegations of sexual misconduct.  (See Israel Decl., Ex. B, DOE Summary of Proposed Regulations).  The DOE specified that those regulations were issued as a result of the lack of procedural protections currently implemented by universities during Title IX investigations of allegations of sexual misconduct.  (Id., at 15).  Indeed, DOE has stated that these unfair procedures have "undermined confidence in the reliability of the outcomes of investigations of sexual harassment allegations."  (Id.). In order to correct these procedural deficiencies and to ensure the fairness of Title IX investigations, DOE's proposed regulations provide for cross-examination of parties and witnesses by the parties' advisors – a procedural protection not currently present in Princeton's Policy.  (Id., at 57-58).  Moreover, DOE's proposed regulations stand to potentially heighten the burden of proof for allegations of sexual misconduct, thereby treating sexual misconduct cases in similar fashion to matters that may impose similar discipline on a student.  (Id., at 61-62).  In other words, if a university relies upon a clear and convincing evidence standard in imposing similar discipline for charges other than sexual misconduct, the university must also employ a clear and convincing evidence standard in sexual misconduct cases.

Plaintiff asked Princeton to adjourn the proceedings until such time as DOE's proposed regulations can be reviewed and implemented, but Princeton refused.  Accordingly, Plaintiff was forced to file this application seeking a preliminary injunction to preclude Princeton from proceeding to investigate the allegations involving Plaintiff and Jane Roe without having the benefit of knowing the proper standard to be applied in that investigation.  One fact is clear, however; if Princeton proceeds in its investigation before DOE's proposed regulations take effect, Plaintiff will be irreparably harmed by being subjected to a process lacking the proper due process protections.

4

**LEGAL ARGUMENT**

**PLAINTIFF IS ENTITLED TO THE ENTRY OF A PRELIMINARY INJUNCTION**

I.   **PLAINTIFF IS ABLE TO DEMONSTRATE THAT HE IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS**

    A.   **Princeton Has Violated Plaintiff's Due Process Rights By Failing to Grant a Brief Continuance of the Proceedings**

Princeton has violated Plaintiff's due process rights by failing to grant the appropriate continuance he requested, which would accommodate the sixty-day review and comment period required before a federal agency's proposed regulations take effect as well as any period of time necessary for universities to implement those regulations. Given the facts of this case – including that more than eighteen months have passed since the relevant conduct occurred – and that Plaintiff is simply seeking injunctive relief for an adjournment to protect his rights during Princeton's investigative process, Plaintiff is likely to prevail on his due process claim.

While Plaintiff acknowledges that the Due Process Clause of the U.S. Constitution does not automatically apply to private actors, there are several exceptions, including the public function exception and the entanglement exception, where private actors are bound by the Constitution. See, e.g., Marsh v. State of Alabama, 326 U.S. 501, 508-09 (1946) (concluding that company-owned town was bound by constitutional requirements); Shelley v. Kraemer, 334 U.S. 1, 20-22 (1948) (concluding that court could not enforce racially discriminatory restrictive covenant provision in private agreement). One of these exceptions is where, by way of statute, Congress has required that private actors that receive federal funding must comply with constitutional norms. By way of obvious example, the Civil Rights Act of 1964 prohibits certain forms of private discrimination, similar to the constitutional requirement for equal protection. Another example is this case, involving Title IX.

Title IX prohibits "discrimination under any educational program or activity receiving Federal financial assistance" on the basis of sex.  20 U.S.C. § 1681(a).  "Discrimination" under Title IX includes sexual harassment.  See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 649-50 (1999) (noting that "sexual harassment is a form of discrimination for Title IX purposes").  Although a private university, Princeton receives federal funding, and thus must comply with the requirements of Title IX.  See Fitzgerald v. Barnstable School Committee, 555 U.S. 246, 257 (2009) ("Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), which may include nonpublic institutions . . .").

Title IX is enforced by DOE, which has been explicitly "authorized and directed to effectuate the provisions of [Title IX] . . . by issuing rules, regulations, or orders of general applicability[.]"  See 20 U.S.C. § 1682; Davis, 526 U.S. at 638.  On September 22, 2017, the Office for Civil Rights at DOE issued a "Dear Colleague" Letter, for the purpose of withdrawing previous guidance documents, as they had been criticized for "placing 'improper pressure upon universities to adopt procedures that do not afford fundamental fairness.'"  (Israel Decl., Ex. C, Sept. 22, 2017 Letter, at 1) (internal citation omitted).  DOE further stated that "those documents have led to the deprivation of rights for many students – both accused students denied fair process and victims denied an adequate resolution of their complaints."  (Id.).  In withdrawing the previous guidance documents, DOE noted that it "will continue to rely on its Revised Sexual Harassment Guidance, which was informed by a notice-and-comment process and issued in 2001, as well as the reaffirmation of that Guidance in the Dear Colleague Letter on Sexual Harassment issued January 25, 2006."  (Id.).

Accordingly, DOE has indicated that the Revised Sexual Harassment Guidance (the "Guidance") currently contains the provisions relevant to university investigations pursuant to

6

7987583

Title IX. The Guidance contains a particular provision concerning due process rights of accused students. That provision states that "[t]he Constitution . . . guarantees due process to students in public and State-supported schools who are accused of certain types of infractions." (See Israel Cert., Ex. D, Guidance, at 22). Further, the Guidance directs that "[t]he rights established under Title IX must be interpreted consistent with any federally guaranteed due process rights involved in a complaint proceeding." (Id.). The Guidance also clarifies that "[p]rocedures that ensure the Title IX rights of the complainant, *while at the same time according due process to both parties involved*, will lead to sound and supportable decisions. Of course, schools should ensure that steps to accord due process rights do not restrict or unnecessarily delay the protections provided by Title IX to the Complainant." (Id.) (emphasis added). Accordingly, DOE, in its currently governing Guidance, has recognized that students accused of sexual harassment are entitled to due process protections.

Further, as set forth above, consistent with its September 22, 2017 "Dear Colleague" Letter, DOE has also recently released proposed regulations, striving to ameliorate perceived flaws with procedures currently employed at universities throughout the country. Specifically, in its public summary of the proposed regulations, DOE stated that they are designed to "clarify that in responding to any claim of sex discrimination under Title IX, [universities] are not required to deprive an individual of rights that would be otherwise guaranteed under the U.S. Constitution[.]" (See Israel Decl., Ex. B, DOE Summary, at 5). More specifically, DOE has concluded that "the major benefits of these proposed regulations, taken as a whole, include achieving the protective purposes of Title IX via fair, reliable procedures *that provide adequate due process protections* for those involved in grievance processes." (Id., at 6) (emphasis added). In that regard, DOE has proposed adding section 106.45(b) to the Title IX regulations, which

7

would specifically require the imposition of "due process protections for the respondent before any disciplinary sanctions are imposed." (See Israel Cert., Ex. B, at 41). That section would also require a Title IX Coordinator to "ensure due process protections for all parties" during the investigation and grievance process. (Id.). In other words, DOE's proposed regulations, like the currently governing Guidance, demonstrate that university students should have an expectation that, during a Title IX investigation, the university will protect their due process rights, and universities should recognize their obligation to do so.

Consistent with DOE's conclusion that students accused of sexual misconduct should be entitled to due process protections, courts outside of this jurisdiction have found that students are entitled to a fundamentally fair disciplinary process. See Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 602 (D. Mass. 2016) (concluding that private university "failed to provide a variety of protections to [plaintiff], many of which, in the criminal context, are the most basic and fundamental components of due process of law"). In Brandeis, for example, the court concluded that a plaintiff had sufficiently alleged that a private university had failed to provide certain procedural safeguards in the context of a disciplinary proceeding arising from a claim of sexual misconduct, thereby sufficiently stating a claim for relief and withstanding dismissal. In doing so, the court noted:

> Again, this was not a criminal proceeding, and Brandeis is not a governmental entity. Nonetheless, the stakes were very high. John was charged with serious offenses that carry the potential for substantial public condemnation and disgrace. He was required to defend himself in what was essentially an inquisitorial proceeding that plausibly failed to provide him with a fair and reasonable opportunity to be informed of the charges and to present an adequate defense. He was ultimately found "responsible," and received a penalty that may permanently scar his life and career. Under the circumstances, the complaint plausibly alleges that the procedures employed by Brandeis did not provide him with the "basic fairness" to which he was entitled.

Brandeis, 177 F. Supp. 3d at 607.

Because Princeton is a recipient of federal funds, it is bound by Title IX. The proper scope of Princeton's Title IX investigation thus must be informed by DOE's rules and regulations.[3]  Those rules and regulations specifically address the concern that a university's Title IX investigation must secure the due process rights of accused students. Because Princeton has indicated that it intends to proceed with Plaintiff's Title IX investigation without waiting for the implementation of DOE's new regulations, which would ensure Plaintiff's due process rights are protected, Plaintiff is likely to succeed on his due process claim.

Accordingly, Plaintiff will likely succeed in his assertion of a due process claim, which supports his requested grant of injunctive relief.

### B.    Princeton Has Also Breached Its Contract With Plaintiff By Failing to Grant the Requested Continuance

In addition to violating Plaintiff's due process rights by failing to grant Plaintiff the reasonable adjournment requested, Princeton has also breached its agreement with Plaintiff, which is embodied in Princeton's Policy. As such, Plaintiff will likely succeed on a breach of contract claim against Princeton.

To prevail on a breach of contract claim under New Jersey law, a plaintiff must generally prove: (1) the existence of a "valid contract between the parties"; (2) the defendant's failure "to perform a defined obligation under the contract"; and (3) that the breach caused the plaintiff's

---

[3] It is well-settled that courts will generally defer to conclusions of an agency charged with enforcing a federal statute. Pursuant to Chevron, U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984), courts will defer to an agency's "administrative implementation of a particular statutory provision" when "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." United States v. Mead Corp., 533 U.S. 218, 226-27 (2001). "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 844.

alleged damages." EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC, 440 N.J. Super. 325, 345 (App. Div. 2015). This standard is modified, however, in the context of a relationship between a private university and its students. "New Jersey courts have declined to characterize the relationship between student and university as [purely] contractual," Moe v. Seton Hall Univ., 2010 WL 1609680, at *4 (D.N.J. Apr. 20, 2010) (alteration in original) (quoting Hernandez v. Don Bosco Preparatory High, 730 A.2d 365, 374 (N.J. Super. Ct. App. Div. 1999)). Rather, "New Jersey recognizes an implied agreement between students and universities." Mucci v. Rutgers, No. 08-4806, 2011 WL 831967, at *19 (D.N.J. Mar. 3, 2011). Therefore, a student can bring a breach of contract claim against a private university. See Moe, 2010 WL 1609680, at *4; see also Hernandez, 730 A.2d at 373. To determine whether a private university met its contractual duty to a student against whom it initiated disciplinary proceedings, courts should consider whether (1) the university failed to adhere to its own rules, (2) the procedures followed were fundamentally fair, and (3) the decision was based on sufficient evidence. Moe, 2010 WL 1609680, at *5 (citing Hernandez, 730 A.2d at 375-76).

A higher education institution breaches its agreement with a student if it fails to provide students with a "fair procedure" to protect against "arbitrary or capricious decision making," including "adequate notice of deficiencies," an "opportunity to examine evidence of those deficiencies," and the "right to present a case to the decision-making authority." Mittra v. Univ. of Medicine and Dentistry of New Jersey, 316 N.J. Super. 83, 91–92 (N.J. App. Div. 1998). Under New Jersey case law, courts may look to the university's student manual to determine the scope of the contractual relationship between a student and a university if the claims at issue are not related to academic performance. See Moe, 2010 WL 1609680, at *5 ("As to the student

manual, New Jersey case law does not preclude courts from looking to such sources to determine the scope of the contractual relationship between a student and her school.").

Here, Princeton's rules governing investigations and disciplinary proceedings for allegations of sexual misconduct require the Title IX Coordinator "to complete the investigation and any resulting disciplinary process and provide notice of the outcome within [sixty] calendar days after receipt of the complaint or report." (See Israel Decl.., Ex. A, Section 1.3.10(3)). However, the policy provides that the timeframe for investigation can be extended beyond sixty calendar days for "good cause," which includes but is not limited to "ensur[ing] the integrity and completeness of the investigation, comply[ing] with a request by external law enforcement, accommodat[ing] the availability of witnesses, or accommodat[ing] delays by the parties." (Id.). It also provides that extensions should be granted "for other legitimate reasons, including the complexity of the investigation and the severity and extent of the alleged misconduct." (Id.).

By denying Plaintiff's request for an adjournment pending the implementation of the proposed regulations for Title IX investigations, Princeton has violated its own Policy, thereby breaching its agreement with Plaintiff. Specifically, Princeton denied Plaintiff's reasonable request for an adjournment notwithstanding the Policy's express provision for extensions based on "good cause." It is hard to imagine better cause for an extension than a shifting framework under which universities will be conducting Title IX investigations. Moreover, in this instance, Plaintiff's requested adjournment is necessary to ensure the integrity and completeness of the investigation at issue, as the proposed regulations would modify the parties' obligations and rights in connection with the presentation of evidence during the proceeding. By denying Plaintiff's requested reasonable adjournment, Princeton is thereby denying Plaintiff the benefit of

11

the provision of Princeton's Policy that would allow an extension of the timeframe of a Title IX investigation for good cause.

Given the foregoing, Plaintiff has demonstrated a likelihood of success on the merits of his breach of contract claim.

### C.    Princeton Has Breached the Implied Covenant of Good Faith and Fair Dealing

Moreover, Princeton's conduct in denying Plaintiff's requested adjournment has violated the implied covenant of good faith and fair dealing.  An implied covenant of good faith and fair dealing exists in every contract.  See R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 277 (2001).  It requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. (quoting Ass'n Grp. Life, Inc. v. Catholic War Veterans, 293 A.2d 382 (1972)).  "The implied covenant is an independent duty and may be breached even where there is no breach of the contract's express terms."  Emerson Radio Corp. v. Orion Sales, Inc., 80 F.Supp.2d 307, 311 (D.N.J. 2000), rev'd in part, on other grounds, 253 F.3d 159 (3d Cir. 2001).

To succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must prove that (1) the defendant acted with a "bad motive or intention," and (2) "the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties."  See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 225 (2005).

Here, Princeton's Policy provides that Title IX investigations will occur within a sixty-day time period, unless good cause warrants the extension of that period.  Plaintiff has unquestionably established good cause to extend the timeframe for the investigation.  Moreover, despite the fact that Princeton is aware of the significant impact DOE's proposed regulations will

7987583

have on the investigation, Princeton has nonetheless determined that it will proceed in the investigation irrespective of the fact that the investigation will likely violate Plaintiff's due process rights, by, among other things, denying Plaintiff the right to cross-examine his accuser. Princeton's improper conduct will work to deny Plaintiff the benefits of his agreement with Princeton, including but not limited to the benefit of a fundamentally fair disciplinary proceeding.

Accordingly, Princeton's failure to grant Plaintiff an adjournment of the investigation pending the implementation of DOE's proposed regulations has breached the implied covenant of good faith and fair dealing.

> **D.    Princeton Has Anticipatorily Breached Its Contract with Plaintiff By Proceeding with Its Investigation Notwithstanding the Release of the DOE's New Proposed Regulations**

In addition to Princeton's breach of an express term of the Policy by failing to permit an extension despite the existence of "good cause," Princeton has also anticipatorily breached other provisions of the Policy.  Because Plaintiff is likely to succeed on his claim of anticipatory breach of contract, injunctive relief staying the proceeding is warranted.

Under the doctrine of anticipatory breach of contract, a non-repudiating party generally may claim damages for total breach when the other party, through an unambiguous affirmative act or statement, repudiates its contractual duties prior to the agreed-upon time for performance. Spring Creek Holding Co., Inc. v. Shinnihon U.S.A. Co., Ltd., 399 N.J. Super. 158, 178 (N.J. Super. Ct. App. Div. 2008).  The modern view of this doctrine does not "limit anticipatory repudiation to cases of express and unequivocal repudiation of a contract. Instead, anticipatory repudiation includes cases in which reasonable grounds support the obligee's belief that the obligor will breach the contract." Danzig v. AEC Corp., 224 F.3d 1333, 1337 (Fed. Cir. 2000), cert. denied, 532 U.S. 995 (2001).  Where there is an anticipatory breach, the injured party can

13

elect to treat the other party's repudiation as termination of the contract and sue immediately or wait until the time when performance is due. See Friedlander v. Gross, 63 N.J. Super. 470, 475 (N.J. Super. Ct. App. Div. 1960) ("Upon wrongful repudiation by one party of his contractual obligation to the other, the injured party may elect to rescind agreement").

Here, Princeton has repudiated its obligations under its implied contract with Plaintiff by suggesting that it will deny Plaintiff the benefit of the amended regulations, as it intends to proceed under the current Title IX framework. Princeton's decision to proceed under the current framework for Title IX investigations is a violation of the policies contained in its agreement with Plaintiff and other students. Princeton's existing Policy provides that Princeton "is committed to providing a prompt and impartial investigation of all alleged violations of this policy." (See Israel Decl., Ex. A, Section 1.3.10). It guarantees both the complainant and respondent "equivalent rights, including the opportunity to present evidence, to identify individuals who may possess relevant information and request that such individuals be interviewed, to be accompanied by an adviser of their choice, and to appeal." (Id.). According to the DOE, the amendments are necessary to reach reliable determinations, in light of the high stakes involved in Title IX investigations. (See Israel Decl., Ex. B, DOE Summary, at 57).

The procedure Princeton has chosen to apply instead is fundamentally unfair to Plaintiff, as it will deny him the benefit of the additional procedural protections the DOE has already determined are necessary to ensure the integrity of Title IX investigations. For example, the proposed rules "provide for a live hearing" where "the decision-maker must permit each party to ask the other party and any witnesses all relevant questions and follow-up questions, including those challenging credibility." (See Israel Decl.., Ex. B, DOE Summary,  at 53). This rule is a significant departure from Princeton's current Policy regarding investigation and adjudication of

14

7987583

sexual misconduct, which does not provide for cross-examination. (See Israel Decl.., Ex. A, 1.3.12(1)).

Consequently, Princeton's decision to deny Plaintiff's adjournment, thereby subjecting Plaintiff to the University's current Title IX framework, qualifies as an anticipatory breach of Princeton's contract with Plaintiff.  Plaintiff is thus likely to succeed on his anticipatory breach of contract claim.

## II.    PLAINTIFF WILL SUFFER IRREPARABLE HARM SHOULD THE INJUNCTION NOT ISSUE

As courts analyzing Title IX investigations into claims of sexual misconduct have noted, the stakes involved in these proceedings are high, and the proceedings have the ability to severely impact the education, future career prospects, and, more broadly, the reputations of the individuals involved in such proceedings.  This case is no different.  Should this Court not issue a stay and Princeton be permitted to continue pursuing the present Title IX proceeding, Plaintiff will be irreparably harmed.

In this case, monetary damages would be insufficient to redress the harm that Plaintiff would suffer should the proceeding not be stayed pending the implementation of DOE's proposed regulations.  Indeed, should the investigation proceed before the implementation of DOE's proposed regulations, Plaintiff will not have the opportunity to cross-examine his accuser or have other fundamental procedural protections, such as the correct burden of proof.  The denial of these protections will cause Plaintiff irreparable harm, as he would be required to defend himself without the benefit of procedures deemed necessary by DOE, and, upon a finding that he was responsible for the conduct alleged, would be subject to significant penalties, including reputational and educational injuries for conduct that he unequivocally denies.  These injuries are not monetary in nature and could not properly be redressed by monetary relief.  See

15

7987583

Checker Cab of Phila. Inc. v. Uber Techs., Inc., 643 F. App'x 229, 232 (3d Cir. 2016) (quoting

Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992)); see also Coulter v. East

Stroudsburg Univ., 2010 WL 1816632, at *3 (M.D. Pa. May 5, 2010) (finding student would

suffer irreparable injury absent grant of preliminary injunction).

Accordingly, Plaintiff will suffer irreparable harm should the pending Title IX

investigation not be adjourned pending the implementation of DOE's proposed regulations.

## III.    THE BALANCE OF THE EQUITIES WEIGHS STRONGLY IN FAVOR OF PLAINTIFF

Finally, when considering the balancing of the equities, the Court should consider

whether the requested injunctive relief would simply maintain the status quo. See Doe v.

Pennsylvania State Univ., 276 F. Supp.3d 300, 315 (M.D. Pa. 2017) (considering student

discipline, finding that balance of hardships weighed in favor of injunctive relief because "during

the pendency of the investigation, Doe remained (1) on campus, (2) in the Penn State-Thomas

Jefferson program, and (3) separated from Ms. Roe, without incident," and thus there was "no

reason to believe that this *status quo* cannot be maintained during the pendency of" litigation).

Here, Plaintiff simply requests that the Court maintain the present relationship between the

parties until such time as DOE's proposed regulations are ready for implementation. This request

to simply maintain the status quo weighs in favor of Plaintiff's requested injunctive relief.

Moreover, the Court should conclude that the total lack of prejudice to Jane Roe, and to

Princeton for that matter, warrants a finding that Plaintiff should be entitled to an adjournment of

the proceedings. Specifically, the conduct of which Jane Roe now complains occurred in Spring

2017. Further, Plaintiff notified Princeton that he felt he was being harassed by Jane Roe in

January 2018. Nonetheless, Plaintiff was not notified that Princeton had commenced a Title IX

investigation into Jane Roe's allegations until November 7, 2018, nearly eighteen months after

7987583

the conduct at issue.  An adjournment for such a significant purpose would cause no prejudice in light of the extensive delays that have already occurred, and which served no apparent purpose.

Given the foregoing, the balance of the respective hardships of the parties warrants the imposition of Plaintiff's requested injunctive relief.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his application and enjoin Princeton's pending Title IX investigation until such time as DOE's proposed regulations are implemented.

Respectfully submitted,

CHIESA SHAHINIAN & GIANTOMASI PC
*Attorneys for Plaintiff*
*John Doe*

By _____
RONALD L. ISRAEL

Dated:  November 28, 2018

17

7987583