**♛ PRINCETON** UNIVERSITY

# Rights, Rules, Responsibilities 2018

# 1. University-wide Regulations

- 1.1 University Principles of General Conduct and Regulations
- 1.2 University-wide Conduct Regulations
- 1.3 Sex Discrimination and Sexual Misconduct
- 1.4 The University, the Law, and Property Rights
- 1.5 Guidelines Relating to the Tax-Exempt Status of the University and Political Activities
- 1.6 Health and Safety Policies
- 1.7 Resolution of Complaints against Members of the University Community
- 1.8 The Council of the Princeton University Community (CPUC)
- 1.9 The Judicial Committee of the Council of the Princeton University Community

## 1.1 University Principles of General Conduct and Regulations

### 1.1.1 Introduction

The central purposes of a university are the pursuit of truth, the discovery of new knowledge through scholarship and research, the teaching and general development of students, and the transmission of knowledge and learning to society at large. Free inquiry and free expression within the academic community are indispensable to the achievement of these goals. The freedom to teach and to learn depends upon the creation of appropriate conditions and opportunities on the campus as a whole as well as in classrooms and lecture halls. All members of the academic community share the responsibility for securing and sustaining the general conditions conducive to this freedom.

The primary purposes of regulations and discipline in a university are to protect the well-being of the community and to advance its educational mission by defining and establishing certain norms of behavior. At Princeton, disciplinary proceedings have a role that is subordinate to positive guidance, rational admonition, and reasonable

appeal to members of the University to observe its stated norms. The disciplinary system establishes procedures for a fair hearing, including advising individuals fully of the charges against them, affording them ample opportunity to speak on their behalf, and requiring a clear explanation of their rights of appeal. Disciplinary proceedings are instituted only for violations of standards of conduct defined in advance and published, or for actions that can be reasonably deduced as violations in light of those specifically defined as such. Regulations governing the conduct of members of the University community will be revised only after deliberations in which representatives of the appropriate groups are invited to participate.

Since rigid codification and relentless administration of rules and regulations are not appropriate to an academic community, the rules and policy statements that follow serve mainly to clarify commonly accepted standards of conduct within the University.

## 1.1.2 Academic Integrity

The ability of the University to achieve its purposes depends upon the quality and integrity of the academic work that its faculty, staff, and students perform. Academic freedom can flourish only in a community of scholars which recognizes that intellectual integrity, with its accompanying rights and responsibilities, lies at the heart of its mission. Observing basic honesty in one's work, words, ideas, and actions is a principle to which all members of the community are required to subscribe. (See **sections under 2.3**

< ../students#comp23>
regarding the Honor Code and other academic regulations.)

## 1.1.3 Statement on Freedom of Expression

Because the University is committed to free and open inquiry in all matters, it guarantees all members of the University community the broadest possible latitude to speak, write, listen, challenge, and learn. Except insofar as limitations on that freedom are necessary to the functioning of the University, Princeton University fully respects and supports the freedom of all members of the University community "to discuss any problem that presents itself."

Of course, the ideas of different members of the University community will often and quite naturally conflict. But it is not the proper role of the University to attempt to shield individuals from ideas and opinions they find unwelcome, disagreeable, or even deeply offensive. Although the University greatly values civility, and although all members of the University community share in the responsibility for maintaining a climate of mutual respect, concerns about civility and mutual respect can never be used as a justification

for closing off discussion of ideas, however offensive or disagreeable those ideas may be to some members of our community.

The freedom to debate and discuss the merits of competing ideas does not, of course, mean that individuals may say whatever they wish, wherever they wish. The University may restrict expression that violates the law, that falsely defames a specific individual, that constitutes a genuine threat or harassment, that unjustifiably invades substantial privacy or confidentiality interests, or that is otherwise directly incompatible with the functioning of the University. In addition, the University may reasonably regulate the time, place, and manner of expression to ensure that it does not disrupt the ordinary activities of the University. But these are narrow exceptions to the general principle of freedom of expression, and it is vitally important that these exceptions never be used in a manner that is inconsistent with the University's commitment to a completely free and open discussion of ideas.

In a word, the University's fundamental commitment is to the principle that debate or deliberation may not be suppressed because the ideas put forth are thought by some or even by most members of the University community to be offensive, unwise, immoral, or wrong-headed. It is for the individual members of the University community, not for the University as an institution, to make those judgments for themselves, and to act on those judgments not by seeking to suppress speech, but by openly and vigorously contesting the ideas that they oppose. Indeed, fostering the ability of members of the University community to engage in such debate and deliberation in an effective and responsible manner is an essential part of the University's educational mission.

As a corollary to the University's commitment to protect and promote free expression, members of the University community must also act in conformity with the principle of free expression. Although members of the University community are free to criticize and contest the views expressed on campus, and to criticize and contest speakers who are invited to express their views on campus, they may not obstruct or otherwise interfere with the freedom of others to express views they reject or even loathe. To this end, the University has a solemn responsibility not only to promote a lively and fearless freedom of debate and deliberation, but also to protect that freedom when others attempt to restrict it.

*This statement was originally drafted and adopted by the University of Chicago and was adopted by the Faculty of Princeton University at its meeting of April 6, 2015.*

## 1.1.4 Statement on Diversity and Community

Princeton University is a community devoted to learning. We actively seek students, faculty, and staff of exceptional ability and promise who share in our commitment to excellence in teaching and scholarship, and who will bring a diversity of viewpoints and

cultures. By incorporating a broad range of human experiences and a rich variety of human perspectives, we enlarge our capacity for learning, enrich the quality and texture of campus life, and better prepare for life and leadership in a pluralistic society.

As a community, we respect the dignity, individuality, and freedom of each member. At the same time, we strive to be a place where individuals and groups learn with and from each other. We aim to foster a sense of shared experience and common purpose, along with a collective responsibility for each other's well-being and for the well-being of the University as a whole.

Although we acknowledge the difficulties inherent in creating a community of individuals who are different from each other, we remain unwavering in our commitment to both diversity and community in a context of academic excellence. We seek to enable all members of this community to pursue their educational, scholarly, and career interests in an environment that recognizes both the distinctiveness of each person's experience and the common humanity that unites us all, and permits us to take full educational advantage of the variety of talents, backgrounds, and perspectives of those who live and work here.

## 1.1.5 Honesty and Cooperation in University Matters

All members of the University community are expected to be honest and straightforward in their official dealings with University processes, activities, and personnel. This obligation includes honoring contracts and agreements and providing accurate information on official forms and documents as well as to official University personnel, offices, and committees. Deliberate violations of this provision will be considered serious offenses; subsequent violations, or systematic violations in the first instance, will be considered extremely serious.

Students are expected to cooperate fully in the disciplinary process, and any student (whether a party or a witness) who refuses to cooperate may be subject to discipline.

## 1.1.6 Confidentiality of Records

The University's Information Security Policy (**www.princeton.edu/oit/it-policies/it-security-policy**

< http://www.princeton.edu/oit/it-policies/it-security-policy/>

) provides the general framework for protecting the confidentiality, integrity, and availability of information owned by or entrusted to Princeton University. Any willful violation of the provisions of the Privacy Rights, which appear under **section 2.7**

< ../students#comp27>

"Student Privacy Rights under Federal Law," or the Information Security Policy, will be regarded as an extremely serious offense.

## 1.1.7 Range of Penalties

For violations of University-wide rules of conduct, members of the community are subject to several kinds of penalties. The applicability and exact nature of each penalty vary for faculty, academic professionals, staff and students.

For more information, faculty and academic professionals should consult:

- **https://dof.princeton.edu/rules-and-procedures-faculty-princeton-university-and-other-provisions-concern-faculty/chapter-iv**
  < https://dof.princeton.edu/rules-and-procedures-faculty-princeton-university-and-other-provisions-concern-faculty/chapter-iv>

- **https://dof.princeton.edu/rules-and-procedures-professional-library-staff-princeton-university-and-other-provisions-concern-45**
  < https://dof.princeton.edu/rules-and-procedures-professional-library-staff-princeton-university-and-other-provisions-concern-45>

- **https://dof.princeton.edu/rules-and-procedures-professional-researchers-and-professional-specialists-princeton-university-21**
  < https://dof.princeton.edu/rules-and-procedures-professional-researchers-and-professional-specialists-princeton-university-21>

Staff should consult Human Resources policies:

Disciplinary Procedure

- **https://www.princeton.edu/hr/policies/conditions/5.1/5.1.4**
  < https://www.princeton.edu/hr/policies/conditions/5.1/5.1.4>

Termination for Failure to Comply with University Policy (Misconduct/Cause)

- **https://www.princeton.edu/hr/policies/termination/4.2/4.2.3**
  < https://www.princeton.edu/hr/policies/termination/4.2/4.2.3>

The penalties for students, in ascending order of severity are:

### 1. Warning

A formal admonition that does not become part of an individual's permanent record, but that may be taken into account in judging the seriousness of any future violation.

### 2. Disciplinary Probation

A more serious admonition assigned for a definite amount of time. It implies that any future violation, *of whatever kind,* especially but not exclusively during that time, may be grounds for suspension, suspension with conditions, or in especially serious cases, expulsion from the University. Disciplinary probation will be taken into account in

judging the seriousness of any subsequent infraction even if the probationary period has expired.

Disciplinary probation appears on an individual's permanent record at the University (but not on the transcript) and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

### 3. Withholding of Degree

In cases involving seniors or graduate students, the University may withhold a student's Princeton degree for a specified period of time. This penalty is imposed instead of suspension at the end of an undergraduate's senior year or at the end of a graduate student's program length where all other degree requirements have been met. A withheld degree is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

### 4. Suspension

Removal from membership in the University for a specified period of time. A suspension is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

### 5. Suspension with Conditions

Removal from membership in the University for at least the period of time specified by the suspension, with the suspension to continue until certain conditions, stipulated by the appropriate body applying this sanction, have been fulfilled. These conditions may include, but are not limited to, restitution of damages, formal apology, or counseling. A suspension with conditions is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

### 6. Expulsion

Permanent removal from membership in the University, without hope of readmission to the community. For members of the faculty, expulsion may involve revocation of tenure.

Expulsion is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

### 7. Censure

University censure can be added to any of the other penalties listed above, except warning. Censure indicates the University's desire to underscore the seriousness of the violation and the absence of mitigating circumstances, and to convey that seriousness in response to future authorized inquiries about the given individual's conduct.

The following may accompany any of the preceding penalties:

**Campus Service.** Campus service up to 10 hours per week may be added to disciplinary probation for a portion or duration of the probationary period, or following a warning. This penalty may be particularly appropriate in cases involving vandalism, disorderly conduct, and alcohol-related infractions.

**University Housing.** When appropriate to the infraction, particularly in instances involving antisocial behavior having a serious impact on the residential community, removal from University housing or relocation within University housing may be added to any of the other penalties listed above, except warning. In the case of a first-year or sophomore, removal from housing is not an option as all underclass students must reside in a residential college. Relocation within residential colleges will be imposed only after consultation with the head of the student's residential college.

**Access to Space, Resources, and Activities.** When appropriate in cases involving behavioral misconduct between members of the community, restrictions may be placed on access to space and/or resources or on participation in activities so as to limit opportunities for contact among the parties.

**Educational Refresher Programs.** In addition to any of the penalties listed above, a student may be required to participate in educational refresher programs appropriate to the infraction.

## 1.1.8 Circumstances Affecting Health or Safety

In circumstances seriously affecting the health or well-being of any person, or where physical safety is seriously threatened, or where the ability of the University to carry out its essential operations is seriously threatened or impaired, the president or a representative, authorized by the president, may summarily suspend, dismiss, or bar any

person from the University. In all such cases, actions taken will be reviewed promptly, typically within one week, by the appropriate University authority.

# 1.2 University-wide Conduct Regulations

## 1.2.1 Respect for Others

Respect for the rights, privileges, and sensibilities of each other is essential in preserving the spirit of community at Princeton. Actions which make the atmosphere intimidating, threatening, or hostile to individuals are therefore regarded as serious offenses. Abusive or harassing behavior, verbal or physical, which demeans, intimidates, threatens, or injures another because of personal characteristics or beliefs or their expression, is subject to University disciplinary sanctions as described above. Examples of personal characteristics or beliefs include but are not limited to sex, sexual orientation, gender identity, race, ethnicity, national origin, religion, and disability. Making tolerance of such behavior or submission to it a condition of employment, evaluation, compensation, or advancement is an especially serious offense. Procedures for resolving complaints or grievances on such matters are discussed under section 1.3 and section 1.7

.

Princeton University strives to be an intellectual and residential community in which all members can participate fully and equally, in an atmosphere free from all manifestations of bias and from all forms of discrimination, harassment, exploitation, or intimidation. As an intellectual community, it attaches great value to freedom of expression and vigorous debate, but it also attaches great importance to mutual respect, and it deplores expressions of hatred directed against any individual or group. The University seeks to promote the full inclusion of all members and groups in every aspect of University life.

Mutual respect requires special sensitivity to issues of bias based on personal characteristics. Expressions of bias directed at individuals or groups undermine the civility and sense of community on which the well-being of the University depends. They devalue the distinctive contributions of the individuals affected and impair their ability to contribute their views and talents to the community and to benefit fully from participating in it. By alienating those individuals, they harm the whole community. The University calls on all its members to display the appropriate sensitivity and to challenge expressions of bias based on personal characteristics whenever they encounter them.

## 1.2.2 Discrimination or Harassment (Based on a Protected Characteristic)

Princeton University is committed to creating and maintaining an educational, working, and living environment free from discrimination and harassment based on a protected characteristic. Princeton University's Policy on Discrimination and/or Harassment prohibits such discrimination and harassment and applies to all members of the University community.

When the University becomes aware that a member of the University community may have been subjected to or affected by discriminatory and/or harassing behavior based on a protected characteristic, the University will take prompt action, including conducting a review of the matter and, if necessary, an investigation and appropriate action to stop the discrimination and/or harassment. The action taken by the University, including any remedial measures, will depend on the particular facts and circumstances involved.

**Protected characteristics** are those personal traits, characteristics and/or beliefs that are defined by applicable law as protected from discrimination and/or harassment. They include race, creed, color, sex, gender identity or expression, age, national origin, ancestry, religion, physical or mental disability, veteran status, marital or domestic partnership status, affectional or sexual orientation, and/or other characteristics protected by applicable law.

**Discrimination** is adverse treatment of an individual based on a protected characteristic, rather than individual merit. Examples of conduct that can constitute discrimination if based on an individual's protected characteristic include but are not limited to:

- Singling out or targeting an individual for different or less favorable treatment (e.g., more severe discipline, lower salary increase) because of their protected characteristic.
- Failing or refusing to hire or admit an individual because of their protected characteristic.
- Terminating an individual from employment or an educational program based on their protected characteristic.

**Harassment** is unwelcome verbal or physical behavior which is directed at a person based on a protected characteristic, when these behaviors are sufficiently severe and/or pervasive to have the effect of unreasonably interfering with an individual's educational experience, working conditions or living conditions by creating an intimidating, hostile, or offensive environment. Examples of conduct that can constitute harassment if based on an individual's protected characteristic include but are not limited to:

- Unwelcome jokes or comments about a legally protected characteristic (e.g., racial or ethnic jokes).

- Disparaging remarks to a person about a legally protected characteristic (e.g., negative or offensive remarks or jokes about a person's religion or religious garments).
- Displaying negative or offensive posters or pictures about a legally protected characteristic.
- Electronic communications, such as e-mail, text messaging, and Internet use, that violate the Policy on Discrimination and/or Harassment.

Retaliation is prohibited against any individual or group of individuals involved in filing a complaint or report under the Policy on Discrimination and/or Harassment, filing an external complaint, participating in a disciplinary process, or opposing in a reasonable manner an action believed to constitute a violation of the policy.

The full text of the Policy on Discrimination and/or Harassment, including examples of prohibited conduct, resources, and options for addressing concerns, can be viewed online at: **http://inclusive.princeton.edu/addressing-concerns/policies/policy-discrimination-andor-harassment**

< http://inclusive.princeton.edu/addressing-concerns/policies/policy-discrimination-andor-harassment>
and in an accompanying set of Frequently Asked Questions:
**http://inclusive.princeton.edu/addressing-concerns/faqs**

< http://inclusive.princeton.edu/addressing-concerns/faqs>

. Members of the University community are expected to be familiar with and adhere to the regulations set forth in the policy.

## 1.2.3 Peaceful Dissent, Protests, and Demonstrations

Free speech and peaceable assembly are basic requirements of the University as a center for free inquiry and the search for knowledge and insight. These rights involve a concurrent obligation on the part of all members of the University, guests, and visitors to maintain on the campus an atmosphere conducive to scholarly pursuits and to respect the rights of all individuals.

In view of Princeton's obligation to promote the free expression of all views, the campus is open to any speaker whom students or members of the faculty have invited and for whom official arrangements to speak have been made with the University. The right of free speech in a university also includes the right to acts of peaceful dissent, protests in peaceable assembly, and orderly demonstrations which include picketing and the distribution of leaflets. These are permitted on the Princeton campus, subject to approval as to schedule and location, unless, or until, they disrupt regular and essential operations of the University or significantly infringe on the rights of others, particularly the right to listen to a speech or lecture.

All individuals and groups planning to engage in activities of the sort described in the previous paragraph should seek approval from the Office of the Dean of Undergraduate Students. Locations generally approved for these activities include the following:

- the area adjacent to Chancellor Green Center (on the Firestone Library side);
- the area in front of Frist Campus Center on the north side, by the Frist "gateway";
- the areas to the west and south of Alexander Hall, and to the east of Alexander Hall, between Stanhope Hall and Morrison Hall;
- the area in the vicinity of the east entrance to the University Store;
- the area between Whig and Clio halls;
- the cobblestone area between Firestone Library and Washington Road;
- the area in the vicinity of the arch near the entrance to McCosh Hall, Room 50;
- Scudder Plaza at Robertson Hall;
- the area adjacent to Shapiro Walk between the Department of Computer Science and Mudd Manuscript Library;
- the walkway in front of Nassau Hall;
- the area in the vicinity of the north entrance to Jadwin Gymnasium.

In asking groups and individuals to seek prior approval for schedule and location, the University's goal is not to restrict free speech or peaceable assembly. Rather, it is to give the University the opportunity to provide space that accommodates the reasonable needs of both the University community and those engaged in acts of speech or protest. The University reserves the right to determine the time, place, and manner of all such activities.

Whenever appropriate, the Office of the Dean of Undergraduate Students, with assistance from and in consultation with the Department of Public Safety, will designate clearly marked areas for protests and demonstrations from among the list that appears above. In addition to those on this list, other locations may be designated because of particular circumstances associated with a protest or demonstration (for example, to schedule a protest in the vicinity of a campus public lecture held in a location not near those on the list). To the extent practicable, the marked areas will be within reasonable sight and sound of the speaker's and the audience's ingress to and egress from the location of the event. The University reserves the right to refuse permission to use a particular area for protests or demonstrations, including those on the designated area list. When such a decision is reached, the University will provide reasons when asked.

It is a violation of these policies whenever any individual prevents, or willfully attempts to prevent, the orderly conduct of a University function or activity, such as lectures, meetings, interviews, ceremonies, and public events; or blocks, or willfully attempts to

block, the legitimate activities of any person on the campus or in any University building or facility.

Whenever a member of the University community, that is a member of the faculty, staff, or student body, violates these policies, that individual will be subject to University discipline and/or arrest. Whenever a nonmember of the University community violates these policies, that individual will be subject to arrest. Decisions to invoke University disciplinary action or arrest in the course of a protest or demonstration will be made after due warning and, wherever possible, such decisions will be made by officers of the University (see the *Bylaws* of the Board of Trustees).

All members of the press and media, both those affiliated with the University and those with no affiliation to the University, are fully subject to these provisions unless special arrangements for press coverage have been authorized by the University's Office of Communications. Ordinarily, arrangements of some kind to permit press coverage will be made when circumstances allow, and will be administered by the Office of Communications.

## 1.2.4 Distribution of Written Materials by Members of the University Community

Free inquiry, free expression, and civility within this academic community are indispensable to the University's objectives. Inclusion of the name, telephone number, and/or e-mail address of the University sponsoring organization or individual member of the University community on material resembling petitions, posters, leaflets distributed on campus, including materials disseminated using campus information technology resources or University Internet access is encouraged, since such attribution promotes and facilitates civility as well as vigorous debate in the academic community. Anonymous public postings without sponsorship of a registered University organization or individual shall be removed or deleted if a complaint by a member of the University is lodged with the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School.

## 1.2.5 Personal Safety

Actions that threaten or endanger in any way the personal safety or security of others will be regarded as serious offenses.

The following offenses will be regarded as extremely serious:

1. Deliberate participation in a riot or general disturbance that threatens the safety, or seriously threatens the property, of either University members or members of the local community.

2. Intimidation by violence, by a threat of violence, or by property damage, which seeks to interfere with the free expression of ideas, or attempts to punish such free expression.

3. The possession, storing, or use on campus (including in any University housing) of (a) firearms (including antique firearms and imitation firearms); (b) any guns that shoot projectiles (including paintball, BB, air); (c) ammunition for any firearm; or (d) any explosive or incendiary device (including firecrackers and other fireworks). The use of prop guns in theatrical productions and the like requires advance written permission from the Office of the Dean of Undergraduate Students. (Easily identifiable toys, such as brightly colored or clear water guns, are not covered by this provision.)

4. The possession of weapons or the use or threatened use of weapons or objects capable of being used as weapons. (Students may possess small pocket-knives or kitchen implements and may use them for their intended purposes only.)

5. Any physical assault committed in the course of any University function or activity, or on the premises of the University or in the local vicinity, especially when unprovoked and/or when injury results.

6. Any other act that seriously endangers human life, or threatens serious physical or psychological injury.

## 1.2.6 Quiet

Activities that take place in the vicinity of University residences, classrooms, the library, the chapel, and similar facilities must be conducted in such a way as to respect the necessity for maintaining a reasonable degree of quiet in such areas. (See "Noise" under section 2.2.1

< ../students#comp221>

for more information.)

## 1.2.7 TigerCards (ID Cards) and Other Identification

TigerCards are issued to eligible members of the University community and are intended for campus use only. Members of the community are asked to carry their cards while on campus. TigerCards are non-transferable and must be presented on request to authorized University representatives.

Possession, manufacture, sale, or transfer of false identification of any sort is a violation of the law and of University policy.

# 1.3 Sex Discrimination and Sexual Misconduct

Princeton University does not tolerate sex or gender discrimination, including sexual misconduct such as sexual harassment and sexual assault, stalking, and intimate partner violence. These behaviors are harmful to the well-being of our community members, the learning/working environment, and collegial relationships among our students, faculty, and staff. All forms of prohibited conduct under this policy are regarded as serious University offenses, and violations will result in discipline, including the possibility of separation from the University. State and federal laws also address conduct that may meet the University's definitions of prohibited conduct, and criminal prosecution may take place independently of any disciplinary action instituted by the University.

Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex or gender in the University's programs and activities. The University will respond to complaints or reports about prohibited conduct with measures designed to stop the behavior, eliminate any such gender discrimination, prevent the recurrence of the prohibited conduct, and remediate any adverse effects of such conduct on campus or in University-related programs or activities.

The University has an obligation to make reasonable efforts to investigate and address complaints or reports of sex or gender discrimination, including sexual misconduct, whenever it becomes aware of such a complaint or report. Lack of a formal complaint does not diminish the University's obligation to respond to information suggestive of sex discrimination or sexual misconduct. If the complainant (i.e., an individual who has been subjected to prohibited conduct, according to the complaint or report) requests that the University not investigate, the University will consider the complainant's articulated concerns, the best interests of the University community, fair treatment of all individuals involved, and the University's obligations under Title IX. All individuals have access to Confidential Resources that they may use for support and guidance without initiating University action.

Retaliation against anyone involved in filing an internal complaint under this policy, filing an external complaint, participating in the internal disciplinary process, or opposing in a reasonable manner an act believed to constitute a violation of this policy, is prohibited and will not be tolerated.

In light of these commitments, the University has adopted this policy, which includes investigation and disciplinary procedures that will be followed in response to allegations of sex or gender discrimination, including sexual misconduct such as sexual harassment and sexual assault, intimate partner violence, stalking, and related

retaliation. In a case of alleged sex or gender discrimination or sexual misconduct, this policy supersedes policies and procedures for other forms of misconduct.

## 1.3.1 The University's Title IX Coordinator

The Vice Provost for Institutional Equity and Diversity serves as the Title IX Coordinator and coordinates the University's compliance with Title IX.

The Title IX Coordinator will be informed of all complaints or reports of violations of this policy, and oversees the University's centralized response to ensure compliance with Title IX and the 2013 Amendments to the Violence Against Women Act (VAWA). The Title IX Coordinator's activities include (but are not limited to):

- Communicating with all members of the University community regarding Title IX and VAWA, and providing information about how individuals may access their rights;
- Reviewing applicable University policies to ensure institutional compliance with Title IX and VAWA;
- Monitoring the University's administration of its own applicable policies, including record keeping, timeframes, and other procedural requirements;
- Conducting training regarding Title IX, VAWA, and prohibited conduct defined in this policy; and
- Responding to any complaint or report regarding conduct that violates this policy. In this capacity, the Title IX Coordinator oversees the investigation and resolution of such alleged misconduct, directs the provision of any remedial measures, and monitors the administration of any related appeal.

The Title IX Coordinator may delegate responsibilities under this policy to designated administrators, who will be appropriately trained.

The University Title IX Coordinator's contact information is as follows:

Michele Minter
Vice Provost for Institutional Equity and Diversity
205 Nassau Hall
Princeton, New Jersey 08544
**mminter@princeton.edu**
< mailto:mminter@princeton.edu>

609-258-6110

## 1.3.2 Scope of This Policy

This policy governs the conduct of: University students, regardless of enrollment status; faculty; staff; and third parties (i.e., non-members of the University community, such as vendors, alumni/ae, visitors, or local residents).

Third parties are both protected by and subject to this policy. A third party may make a complaint or report of a violation of this policy committed by a member of the University community. A third party may also be permanently barred from the University or subject to other restrictions for failing to comply with this policy.

This policy applies to conduct that occurs on University property (i.e., on campus) and in the local vicinity. All actions by a member of the University community that involve the use of the University's computing and network resources from a remote location, including but not limited to accessing email accounts, will be deemed to have occurred on campus. This policy also applies to conduct that occurs off University property (i.e., off campus) when the conduct is associated with a University-sponsored program or activity, such as travel, research, or internship programs or when such conduct may pose a safety risk on campus, have a continuing adverse effect or could create a hostile environment on campus. Judgments about these matters will depend on facts of an individual case.

## 1.3.3 Prohibited Conduct

In determining whether alleged conduct violates this policy, the University will consider the totality of the facts and circumstances involved in the incident, including the nature of the alleged conduct and the context in which it occurred. Any of the prohibited conduct defined in this policy can be committed by individuals of any gender, and it can occur between individuals of the same gender or different genders. It can occur between strangers or acquaintances, as well as people involved in intimate or sexual relationships.

### 1. Sex Discrimination

Sex discrimination is adverse treatment of an individual based on sex or gender, rather than individual merit. Sex discrimination encompasses sexual misconduct but also includes other discriminatory behavior that does not constitute sexual misconduct. Examples of conduct that can constitute sex discrimination because of sex, gender identity, or gender expression include but are not limited to:

- Singling out or targeting an individual for different or adverse treatment (e.g., more severe discipline, lower salary increase);
- Failing or refusing to hire or allow participation by an individual in a University activity; or

• Terminating or removing an individual from employment or an educational program.

## 2. Sexual Misconduct

The following behaviors constitute sexual misconduct and are prohibited under this policy. All forms of sexual misconduct are serious offenses and will result in University disciplinary consequences. Sexual misconduct involving force, duress, or inducement of incapacitation, or where the perpetrator has deliberately taken advantage of another person's state of incapacitation, will be deemed especially egregious and may result in expulsion, or termination of employment. The consumption of alcohol or the use of illegal substances does not constitute a mitigating circumstance when it contributes to a violation regarding sexual misconduct.

**Non-Consensual Sexual Penetration (commonly referred to as rape).** Any act of vaginal or anal penetration by a person's penis, finger, other body part, or an object, or oral penetration by a penis, without consent.

**Non-Consensual Sexual Contact (commonly referred to as sexual assault).** Any sexual touching other than non-consensual sexual penetration without consent. Examples of non-consensual sexual contact may include: genital-genital or oral-genital contact not involving penetration; contact with breasts, buttocks, or genital area, including over clothing; removing the clothing of another person; and kissing.

**Sexual Exploitation.** Any act whereby one person violates the sexual privacy of another or takes unjust or abusive sexual advantage of another who has not provided consent, and that does not constitute non-consensual sexual penetration or non-consensual sexual contact. Examples may include: recording, photographing, transmitting, viewing, or distributing intimate or sexual images or sexual information without the knowledge and consent of all parties involved; voyeurism (i.e., spying on others who are in intimate or sexual situations).

**Sexual Harassment.** Unwelcome verbal or physical behavior which is directed at a person based on sex, gender identity or gender expression, when these behaviors are sufficiently severe and/or pervasive to have the effect of unreasonably interfering with an individual's educational experience, working conditions, or living conditions by creating an intimidating, hostile, or offensive environment. Examples of conduct that can constitute sexual harassment if based on an individual's sex, gender identity or gender expression include but are not limited to:

• Unwelcome jokes or comments (e.g., sexist jokes);
• Disparaging remarks about sex, gender identity, or gender expression (e.g., negative or offensive remarks or jokes about a person's self-presentation)

- Displaying negative or offensive posters or pictures about sex, gender, or gender expression;
- Electronic communications, such as e-mail, text messaging, and Internet use, that violate this policy.

Sexual Harassment is deemed especially serious when submission to or rejection of such conduct is made implicitly or explicitly a term or condition of instruction, employment, or participation in any University activity or benefit; or submission to or rejection of these behaviors by an individual is used as a basis for evaluation in making academic or personnel decisions.

**Inappropriate Conduct Related to Sex, Gender Identity, or Gender Expression.**
Unwelcome or inappropriate conduct that does not fall under other forms of sexual misconduct, but that is sexual and/or gender-based in nature. Examples may include public sex acts or flashing.

## 3. Other Prohibited Behaviors

The following behaviors are also prohibited under this policy.

**Intimate Relationship Violence (also known as dating violence or intimate partner violence).** Acts of violence, threat or intimidation that harm or injure a partner in a current or former intimate relationship (defined below). These acts may be physical, emotional/psychological, sexual, or economic in nature. Intimate relationship violence can be a single act or pattern of behavior.

**Domestic Violence in the Context of Intimate Relationships.** A particular type of intimate relationship violence that occurs when partners in a current or former intimate relationship are or have been cohabiting in the same space.

**Stalking.** A course of conduct (i.e., more than one act) that would cause a reasonable person to feel fear, to experience emotional distress, or to fear for the safety of a third person. Acts that together constitute stalking may be direct actions or may be communicated by a third party, and can include, but are not limited to: threats of harm to self or others; pursuing or following; non-consensual (unwanted) communication by any means; unwanted gifts; trespassing; and surveillance or other types of observation.

**Retaliation.** Any attempt to seek retribution against an individual or group of individuals involved in filing a complaint or report under this policy, filing an external complaint, participating in a disciplinary process, or opposing in a reasonable manner an action or policy believed to constitute a violation of this policy. Retaliation can take many forms, including abuse or violence, threats, and intimidation. Actions in response to a good faith report or response under this policy are considered retaliatory if they have a materially adverse effect on the working, academic or University-controlled living environment of an individual; or if they hinder or prevent the individual from effectively

carrying out their University responsibilities. Any individual or group of individuals can engage in retaliation and will be held accountable under this policy.

## 4. Terminology

The following definitions clarify key terminology as used throughout the policy.

**Intimate Relationship.** An intimate relationship is a short- or long-term relationship between persons of any gender that provides romantic and/or physical intimacy or emotional dependence. Intimate relationships may include (but are not limited to) marriages, civil unions, dating relationships, "hook-up" relationships, relationships in which partners are characterized as "girlfriends" or "boyfriends," and relationships between persons with a child in common.

**Consent and Incapacitation.** In reviewing possible violations of sexual misconduct, the University considers consent as the voluntary, informed, un-coerced agreement through words and actions freely given, which a reasonable person would interpret as a willingness to participate in mutually agreed-upon sexual acts. Consensual sexual activity happens when each partner willingly and affirmatively chooses to participate.

Indications that consent is not present include: when physical force is used or there is a reasonable belief of the threat of physical force; when duress is present; when one person overcomes the physical limitations of another person; and when a person is incapable of making an intentional decision to participate in a sexual act, which could include instances in which the person is in a state of incapacitation.

Important points regarding consent include:

- Consent to one act does not constitute consent to another act.
- Consent on a prior occasion does not constitute consent on a subsequent occasion.
- The existence of a prior or current relationship does not, in itself, constitute consent.
- Consent can be withdrawn or modified at any time.
- Consent is not implicit in a person's manner of dress.
- Accepting a meal, a gift, or an invitation for a date does not imply or constitute consent.
- Silence, passivity, or lack of resistance does not necessarily constitute consent.
- Initiation by someone who a reasonable person knows or should have known to be deemed incapacitated is not consent.

In the context of this policy, incapacitation is the state in which a person's perception or judgment is so impaired that the person lacks the cognitive capacity to make or act on conscious decisions. The use of drugs or alcohol can cause incapacitation. An

individual who is incapacitated is unable to consent to a sexual activity. Engaging in sexual activity with an individual who is incapacitated (and therefore unable to consent), where a person knows or ought reasonably to have understood that the individual is incapacitated, constitutes sexual misconduct.

The term **complainant** refers to the individual(s) who has been the subject of prohibited conduct, regardless of whether that individual makes a complaint or seeks disciplinary action.

The term **respondent** refers to the individual(s) who has been accused of prohibited conduct.

The term **third party** refers to any individual who is not a University student, a faculty member, or a staff member (e.g., vendors, alumni/ae, or local residents).

## 1.3.4 Relationships between Individuals of Different University Status

A sexual or romantic relationship involving individuals of different University status is not, in and of itself, sexual misconduct as defined by this policy and will not be investigated or adjudicated under this policy. Such an interaction may be a violation of another University policy and subject to separate disciplinary procedures.

A sexual or romantic relationship between students and teachers, supervisors or mentors (faculty members, staff members, or other students) violates both University and professional standards (including the University's Consensual Relations with Students Policy), and potentially violates state and federal anti-discrimination laws. The University prohibits all sexual and romantic relationships between faculty members and undergraduate students. See

**www.princeton.edu/dof/policies/publ/fac/rules_toc/chapter5/**

< http://www.princeton.edu/dof/policies/publ/fac/rules_toc/chapter5/>

for more information.

A conflict of interest also exists if there is a consensual romantic or sexual relationship in the context of employment supervision or evaluation. Therefore, a supervisor may not influence, directly or indirectly, salary, promotion, performance appraisals, work assignments or other working conditions for an employee with whom such a relationship exists. Such actions violate the University's Nepotism and Personal Relationships in the Workplace Policy. See

**www.princeton.edu/hr/policies/conditions/5.2/5.2.2/**

< http://www.princeton.edu/hr/policies/conditions/5.2/5.2.2/>

.

## 1.3.5 Confidentiality, Privacy, and Related Responsibilities

Issues of privacy and confidentiality play important roles in this policy, and may affect individuals differently. Privacy and confidentiality are related but distinct terms that are defined below.

In some circumstances, the reporting responsibilities of University employees, or the University's responsibility to investigate, may conflict with the preferences of the complainant and/or respondent with regard to privacy and confidentiality. Therefore, all individuals are encouraged to familiarize themselves with their options and responsibilities, and make use of Confidential Resources, if applicable, in determining their preferred course of action.

Requests for confidentiality or use of anonymous reporting may limit the University's ability to conduct an investigation.

## 1. Confidentiality and Confidential Resources

The term "confidentiality" refers to the circumstances under which information will or will not be disclosed to others.

Several campus professionals are designated Confidential Resources. Conversations with Confidential Resources are privileged. Information shared with Confidential Resources (including information about whether an individual has received services) will only be disclosed to the Title IX Coordinator or any other person only with the individual's express written permission, unless there is an imminent threat of serious harm to the individual or to others, or a legal obligation to reveal such information (e.g., if there is suspected abuse or neglect of a minor). Confidential Resources may submit non-identifying information about violations of this policy to the Department of Public Safety for purposes of the anonymous statistical reporting under the Clery Act.

An individual who is not prepared to make a report, or who may be unsure how to label what happened, but still seeks information and support, is strongly encouraged to contact a Confidential Resource. See section 1.3.6
#2 for a complete list of Confidential Resources on campus.

In particular, any individual who may have been subjected to a violation of this policy, or who is considering making a report under this policy, is encouraged to contact the University's Sexual Harassment/Assault Advising, Resources, and Education (SHARE) office. SHARE is a Confidential Resource that offers support and advocacy services, and provides information about the roles and reporting obligations of other offices at the University in order to empower persons to make informed decisions about their options.

In light of the University's obligation to make reasonable efforts to investigate and address conduct prohibited by this policy, University community members who are not designated Confidential Resources may be required to notify the Title IX Coordinator or

the Department of Public Safety of suspected violations, and cannot guarantee the confidentiality of a complaint or report under this policy. See also **section 1.3.5 #4**.

## 2. Confidentiality Rights of Complainants and Respondents

Individuals involved in investigations or disciplinary proceedings under this policy are encouraged to exercise discretion in sharing information in order to safeguard the integrity of the process and to avoid the appearance of retaliation. While discretion regarding the process is important, complainants and respondents are not restricted from discussing and sharing information with others who may support or assist them in presenting their case.

Medical and counseling records are privileged and confidential documents that parties will not be required to disclose.

## 3. Privacy

The term "privacy" refers to the discretion that will be exercised by the University in the course of any investigation or disciplinary processes under this policy and, as detailed in **section 1.3.12**
, the parties will be informed of information relevant to the investigation or disciplinary processes.

The University has an obligation to make reasonable efforts to investigate and address complaints or reports of violations of this policy. In all such proceedings, the University will take into consideration the privacy of the parties to the extent possible.

In cases involving students, the Title IX Coordinator may notify residential college staff and other University employees of the existence of the complaint for the purpose of overseeing compliance with this policy and addressing any concerns related to educational and residential life. While not bound by confidentiality, these individuals will be discreet and will respect the privacy of those involved in the process.

Any additional disclosure of information related to the complaint or report may be made if consistent with the Family Educational Rights and Privacy Act (FERPA), or the Title IX requirements. In addition, the National Science Foundation mandates certain reporting related to sexual misconduct involving NSF-funded principal investigators (PI) or co-PIs. See **Implementation of NSF's Notification Requirements Regarding Harassment and Sexual Assault**

< https://orpa.princeton.edu/resources/policies-and-procedures/requirements-regarding-harassment-and-sexual-assault>

.

### 4. Responsibility to Report

All members of the University community are encouraged to report any suspected violation of this policy (after consulting a Confidential Resource as appropriate).

In emergency situations, if there is a suspected crime in progress, or imminent or serious threats to the safety of anyone, faculty and staff members must immediately contact the Department of Public Safety by dialing 911 from an on-campus telephone or 609-258-3333 from an off-campus telephone or cell phone.

In non-emergency situations, faculty and staff members who are not Confidential Resources must promptly report suspected violations to the Title IX Coordinator. Some students with special responsibilities, including Residential College Advisers, must promptly report alleged violations of this policy to their Directors of Student Life, who will then consult with the Title IX Coordinator.

A complainant may choose not to make a complaint or report in their own case, even if the complainant otherwise has reporting obligations by virtue of being a faculty member, staff member, or Residential College Adviser.

### 5. Anonymity

For more information regarding the implications of anonymity in the context of reporting a policy violation, see **section 1.3.8**
#1. For information about how to make an anonymous report, see **section 1.3.6** #3.

### 6. Release of Information

If the Department of Public Safety becomes aware of a serious and continuing threat to the campus community, the Department of Public Safety will issue a timely notification to protect the health or safety of the community. The Department of Public Safety may also be required to publicly disclose a reported incident of sexual misconduct in the daily crime log or annual security report. In addition, the University may also share non-identifying information, including data about outcomes and penalties, in aggregate form. At no time will the University release the name or other personally identifiable information of the complainant to the general public without the express consent of the complainant or as otherwise permitted or required by law.

## 1.3.6 Support Resources

A complainant or witness has many options, including counseling with a Confidential Resource, filing an internal complaint, and/or filing a criminal complaint. The University recognizes that deciding among these options can be difficult. Complainants and

witnesses are encouraged to seek assistance from a Confidential Resource before deciding how to proceed.

The following resources are available to provide support and/or receive complaints or reports.

### 1. Emergency Resources and Law Enforcement

Emergency medical assistance and campus safety/law enforcement assistance are available both on and off campus. Individuals are encouraged to contact law enforcement and seek medical treatment as soon as possible following an incident that poses a threat to safety or physical well-being or following a potential criminal offense. For more information about filing a criminal complaint, see **section 1.3.11**

.

**Princeton Municipal Police**
911 or 609-921-2100

**Princeton University Department of Public Safety**
609-258-3333

### 2. Confidential Resources

Information shared with Confidential Resources (including information about whether an individual has received services) will only be disclosed to the Title IX Coordinator or any other person with the individual's express written permission, unless there is an imminent threat of serious harm to the individual or to others, or a legal obligation to reveal such information (e.g., if there is suspected abuse or neglect of a minor). For more information about confidentiality and Confidential Resources, see **section 1.3.5**

.

The University's Sexual Harassment/Assault Advising, Resources, and Education (SHARE) office is a Confidential Resource offering support and advocacy services. Individuals are encouraged to access support services and learn about their options by contacting SHARE. The SHARE office can provide information about the roles and reporting obligations of other offices at the University in order to empower individuals to make informed decisions about their options.

Campus Confidential Resources include:

**SHARE Office**
217 McCosh Health Center
Washington Road, Princeton, NJ 08544
609-258-3310
share@princeton.edu

< mailto:share@princeton.edu>

## Counseling and Psychological Services (CPS)

McCosh Health Center, Third Floor
Make an Appointment: 609-258-3285
Monday - Friday 8:45 a.m. – 4:45 p.m.
Walk-in services available for urgent problems
Evening Hours by appointment Mondays and Wednesdays, 5-7 p.m.

## University Health Services After Hours Care

24-hour on-call service 609-258-3139 via The Infirmary
McCosh Health Center, Second Floor

## Ombuds Office

179 Nassau Street - Suite D
Princeton, NJ 08544
609-258-1775
**ombuds@princeton.edu**
< mailto:ombuds@princeton.edu>

## Office of Religious Life chaplains

Murray-Dodge Hall
Princeton, NJ 08544
609-258-3047
**orl@princeton.edu**
< mailto:orl@princeton.edu>

## Carebridge (Faculty & Staff Assistance Program)

On initial visit to the site, please enter the Princeton client code **TW8AE** to access the
Carebridge Library.
800-437-0911
**clientservice@carebridge.com**
< mailto:clientservice@carebridge.com>

## 3. EthicsPoint Anonymous Hotline

Any individual may make an anonymous report concerning a violation of this policy
through the University's EthicsPoint hotline, an independent third-party reporting service.
An EthicsPoint report can be made without disclosing the reporting person's own name,
identifying the respondent, or requesting any action. Depending on the level of
information available, anonymous reporting may adversely affect the University's ability
to respond or take further action. EthicsPoint is not a Confidential Resource and making
a report to EthicsPoint may result in a University investigation.

**EthicsPoint Hotline**
866-478-9804
**https://secure.ethicspoint.com/domain/media/en/gui/27291/index.html**
< https://secure.ethicspoint.com/domain/media/en/gui/27291/index.html>   .

### Other Available Resources

Any individual may also access resources located in the local community. These organizations can provide crisis intervention services, counseling, medical attention and assistance in dealing with the criminal justice system. If accessing these resources, individuals are encouraged to clarify whether the resources are confidential.

**Mercer County Sexual Assault Response Team (SART)**
*Evidence collection and preventative medicine*
Can be activated by contacting:

- Womanspace: 609-394-9000
- Princeton Police: 609-921-2100 (calls will likely result in police involvement)
- Department of Public Safety: 609-258-3333 (calls will likely result in police involvement)

Or going to an emergency room:

- Penn Medicine Princeton Medical Center
- Capital Health Medical Center in Hopewell
- Robert Wood Johnson University Hospital

**Womanspace, Inc.**
*Services for domestic and sexual violence victims/survivors (of all genders)*
609-394-9000 (24-hour hotline) /609-394-0136 (office)
1530 Brunswick Avenue, Lawrenceville, New Jersey 08648
Monday-Friday, 9:00 a.m. - 5:00 p.m. (walk-in hours)

## 1.3.7 Options for Complainants and Other Reporting Parties

The University encourages all individuals to report any alleged or suspected violation of this policy to the Title IX Coordinator, and to report potential criminal conduct to law enforcement. After consulting a Confidential Resource as appropriate, anyone who seeks to make a complaint or report may:

- Request interim measures from the Title IX Coordinator (see **section** 1.3.9 );
- File a complaint or report with the Title IX Coordinator, thereby invoking the University's internal disciplinary process (see **section** 1.3.8

);

- Contact the Department of Public Safety for assistance in filing a criminal complaint and preserving physical evidence (see **section 1.3.6** ); and/or

- Contact local law enforcement to file a criminal complaint (see **section 1.3.6** ).

An individual may pursue some or all of these steps at the same time (e.g., one may simultaneously pursue an internal complaint and a criminal complaint). When initiating any of the above, an individual does not need to know whether they wish to request any particular course of action, nor how to label what happened. Before or during this decision-making process, complainants and other reporting persons are encouraged to consult a Confidential Resource.

## 1.3.8 Filing a Complaint or Report with the Title IX Coordinator

Individuals are encouraged to report any alleged violation of this policy directly to the Title IX Coordinator. In order to do so, individuals may use the **sex discrimination and sexual misconduct complaint form**

< http://sexualmisconduct.princeton.edu/complaint>

, or schedule an appointment with the Title IX Coordinator.

### 1. Anonymous Reporting

If a complainant self-identifies but asks to remain anonymous during the investigation, the Title IX Coordinator will consider how to proceed, taking into account the complainant's articulated concerns; the best interests of the University community; fair treatment of all individuals involved, including the respondent's right to have specific notice of the allegations if the University were to take action that affects the respondent; and the University's obligations under Title IX.

### 2. Amnesty

In order to encourage reports of conduct that is prohibited under this policy, the University may offer leniency with respect to other violations which may come to light as a result of such reports, depending on the circumstances involved.

### 3. Timeliness of Report

Complainants and other reporting individuals are encouraged to report any violation of this policy as soon as possible in order to maximize the University's ability to respond promptly and effectively. Complaints and reports may be made at any time without regard to how much time has elapsed since the incident(s) in question.

If the respondent is no longer a student or employee at the time of the complaint or report, the University may not be able to take disciplinary action against the respondent, but it will still seek to meet its Title IX obligations by providing support for the complainant and taking steps to end the prohibited behavior, prevent its recurrence, and address its effects.

## 1.3.9 Interim Measures

Upon receipt of a complaint or report of a violation of this policy, the University will provide reasonable and appropriate interim measures designed to preserve the complainant's educational experience, the safety of all parties and the broader University community, maintain the integrity of the investigative and/or resolution process, and deter retaliation. The University may provide interim measures regardless of whether the complainant seeks formal disciplinary action.

Interim measures may include:

- Access to counseling services and assistance in arranging an initial appointment;
- Rescheduling of exams and assignments;
- Change in class schedule, including the ability to transfer course sections or withdraw from a course;
- Change in work schedule or job assignment;
- Change in campus housing;
- Providing medical services;
- Imposition of an on-campus "no contact order," an administrative remedy designed to curtail contact and communications between two or more individuals; and/or
- Any other measure that can be used to achieve the goals of this policy.

Any interim measures will not disproportionately impact the complainant. Requests for interim measures may be made by or on behalf of the complainant to any University official, including the Title IX Coordinator. The Title IX Coordinator is responsible for ensuring the implementation of interim measures and coordinating the University's response with the appropriate offices on campus.

All individuals are encouraged to report concerns about the failure of another to abide by any restrictions imposed by an interim measure. The University will take immediate action to enforce a previously implemented measure and disciplinary penalties can be imposed for failing to abide by a University-imposed measure.

## 1.3.10 Investigations and Disciplinary Procedures in General for This Policy

The University is committed to providing a prompt and impartial investigation of all alleged violations of this policy. During the disciplinary process, both parties (complainant and respondent) have equivalent rights, including the opportunity to present evidence, to identify individuals who may possess relevant information and request that such individuals be interviewed, to be accompanied by an adviser of their choice, and to appeal. The University will concurrently provide both parties with written notification of the outcome of the process and any appeal.

## 1. Responsibility to Investigate

In order to protect the safety of the campus community, the Title IX Coordinator may investigate allegations of violations of this policy even absent the filing of a formal complaint or report, or if a complaint or report has been withdrawn. The Title IX Coordinator may need to proceed with an investigation even if a complainant specifically requests that the matter not be pursued. In such a circumstance, the Title IX Coordinator will take into account the complainant's articulated concerns, the best interests of the University community, fair treatment of all individuals involved, and the University's obligations under Title IX. This policy differs from New Jersey criminal law. Proceedings under this policy may be carried out prior to, simultaneously with, or following civil or criminal proceedings off campus. Neither a decision by law enforcement regarding prosecution nor the outcome of any criminal proceeding will be considered determinative of whether a violation of this policy has occurred.

## 2. Initial Assessment of Complaints

The investigative process is initiated when the Title IX Coordinator receives a complaint or report of a violation of this policy. Upon receipt of such a report, the Title IX Coordinator will respond to any immediate health or safety concerns raised by the report. The Title IX Coordinator will conduct an initial assessment. Following the initial assessment, the Title IX Coordinator may take any of the following actions:

- If the Title IX Coordinator determines that the complaint, even if substantiated, would not rise to the level of a policy violation; the nature and circumstances of the report do not make it appropriate for an investigation; or, after consultation with the complainant about the complainant's preferences regarding participation, the Title IX Coordinator determines that there will be insufficient information to investigate the matter, the Title IX Coordinator may dismiss the complaint.
- If the Title IX Coordinator determines that the complaint is outside the scope of this policy and/or most appropriately handled by another office, the Title IX Coordinator may refer the complaint to another office for review.

- If the Title IX Coordinator determines that the complaint or report would, if substantiated, constitute a violation of this policy, the Title IX Coordinator will determine appropriate interim measures and initiate an investigation.

## 3. Timing of Investigations and Any Related Disciplinary Proceedings

The Title IX Coordinator will seek to complete the investigation and any resulting disciplinary process and provide notice of the outcome within 60 calendar days after receipt of the complaint or report. The University will seek to complete any appeal within 20 calendar days after receipt of the appeal.

There may be circumstances that require the extension of timeframes for good cause, including extension beyond 60 calendar days. Timeframes may be extended to ensure the integrity and completeness of the investigation, comply with a request by external law enforcement, accommodate the availability of witnesses, or accommodate delays by the parties; or for other legitimate reasons, including the complexity of the investigation and the severity and extent of the alleged misconduct. The University will notify the parties in writing of any extension of the timeframes for good cause, and the reason for the extension.

Although cooperation with law enforcement may require the University to temporarily suspend the fact-finding aspect of a Title IX investigation, the University will promptly resume its Title IX investigation as soon as it is notified by the law enforcement agency that the agency has completed the evidence gathering process. The University will not, however, wait for the conclusion of a criminal proceeding to begin its own investigation and, if needed, will take immediate steps to provide interim measures for the complainant.

Investigations will proceed according to the aforementioned timeframes during the summer and at other times when the University is not in session. The Title IX Coordinator will work with the parties to balance the need for promptness and the preference for in-person meetings regarding the investigation.

Timeframes for all phases of the disciplinary process, including the investigation, any related disciplinary proceedings, and any related appeal, apply equally to both complainant and respondent.

## 4. Cooperation with Investigation and Disciplinary Procedures

Princeton University expects all members of the University community to cooperate fully with the investigation and disciplinary procedures. The University recognizes that an individual may be reluctant to participate in the process; nevertheless, any student or member of the faculty or staff who refuses to cooperate in an investigation may be subject to discipline. Refusal to cooperate includes delaying or failing to acknowledge

requests from University officials for information, and delaying or failing to make oneself available for meetings with University officials.

It is understood that there may be circumstances in which a complainant wishes to limit their participation. The complainant retains this right and will not be subject to discipline, although the University may be obligated to conduct an investigation.

If a respondent chooses not to answer any or all questions in an investigation for any reason, the University process will continue, findings will be reached with respect to the alleged conduct, and the University will issue any penalties, as appropriate. The University will not, however, draw any adverse inference from a respondent's silence.

## 5. Sexual History

The sexual history of the complainant and/or the respondent will generally not be used in determining whether a violation of this policy has occurred. However, in certain circumstances, the sexual history between parties may have limited relevance. For example, if consent is at issue, the sexual history between the parties may be relevant to determining whether consent was sought and given during the incident in question, although it must be remembered that even in the context of a relationship, consent to one sexual act does not constitute consent to another sexual act, and consent on one occasion does not constitute consent on a subsequent occasion. In addition, under very limited circumstances, sexual history may be relevant to explain injury, to provide proof of a pattern, or for another specific question raised by an allegation.

## 6. Consolidation of Investigation

The Title IX Coordinator has the discretion to consolidate multiple complaints or reports into a single investigation if evidence relevant to one incident might be relevant to the others.

## 7. Violations of University Policy Unrelated to Sexual Misconduct

In the situation when an initial assessment or investigation under this policy identifies additional related possible violations of University policy (other than violations of the Sex Discrimination and Sexual Misconduct policy) by the same party(ies) that would normally be handled by another disciplinary authority, the Title IX Coordinator, with the approval of that disciplinary authority, may direct an investigative panel to investigate and adjudicate such other possible violations. In such a situation, the Title IX Coordinator and other disciplinary authorities will determine the procedures to be followed on consideration of the nature of the alleged violation(s) and other relevant factors. The standard of evidence applied to each violation will not be altered: the preponderance of the evidence standard will be applied as appropriate and the clear and persuasive evidence standard will be applied as appropriate.

## 8. Circumstances Relating to Misconduct Affecting Health or Safety

In connection with this policy, in circumstances seriously affecting the health or well-being of any person, or where physical safety is seriously threatened, or where the ability of the University to carry out its essential operations is seriously threatened or impaired, the president or an authorized representative may summarily suspend, dismiss, or bar any person from the University. In all such cases, actions taken will be reviewed promptly, typically within one week, by the appropriate University authority.

## 1.3.11 Making a Criminal Complaint to Law Enforcement

At the complainant's request, the University will assist the complainant in contacting local law enforcement and will cooperate with law enforcement agencies if a complainant decides to pursue the criminal process. See section 1.3.6 #1 for contact information related to law enforcement.

## 1.3.12 Investigation, Disciplinary, and Appeal Procedures for Cases When the Respondent Is a Student

### 1. Investigation and Adjudication

When the Title IX Coordinator receives a complaint or report alleging that a student violated this policy, the Title IX Coordinator will appoint a three-person investigative panel of administrators and/or outside investigators. The investigative panel will conduct an inquiry and determine, by a preponderance of the evidence, whether this policy was violated. All panelists will have training in investigating and evaluating conduct prohibited under the policy. The panelists will also be impartial and unbiased.

The panel will collect information from each party. If parties are interviewed, they will be interviewed separately. Each party may select an adviser of their choice who may accompany them to any meeting or related proceeding, but the adviser may not actively participate in the interview process. All three members of the panel will participate in interviews with the complainant and the respondent. The panel will interview witnesses as necessary and may, at its discretion, delegate witness interviews to one or two of the panelists. Witnesses may not bring advisers. In all meetings, there will be a designated note taker. At the conclusion of each interview, the notes will be reviewed with the interviewee.

The panel will prepare a case file of all interview summaries, witness statements, and other documents. The file, redacted of personally identifiable information as necessary, will be shared with the complainant and the respondent. The panel will describe in writing for the parties the allegations that will be adjudicated.

After reviewing the file, each party will have an opportunity (1) to meet again with the panel, (2) to respond in writing, (3) to request the collection of other information by the panel, and (4) to identify individuals who may possess relevant information (and request that such individuals be interviewed). If the panel believes that further response by the parties is necessary for purposes of reaching an outcome, the panel will offer each party the opportunity to further respond to the materials collected. The panel will designate reasonably prompt time frames to ensure a timely completion of the process but also an adequate opportunity for both sides to respond thoroughly to the information gathered in the investigation.

Following the investigation, the panel will meet to determine, by a majority decision, whether the respondent, based on the preponderance of evidence standard, violated University policy. The panel will prepare a report, which will include findings of fact, findings of responsibility, and the panel's rationale. All members of the panel must endorse the report as a record of their deliberations and rationale.

## 2. Penalties

If a student is found responsible for violating University policy, the entire case file will be forwarded to the dean of undergraduate students and the deputy dean for academic affairs of the Graduate School, who will jointly determine the penalty. In the event of their unavailability, an appropriately trained administrator will serve as the substitute. Penalties will be determined based on the seriousness of the misconduct as compared to like cases in the past, and the student's previous disciplinary history (if any). Remedial measures will be determined based on the need to afford the parties an educational environment free from discrimination under Title IX. The findings regarding fact and responsibility, as well as the decision regarding the penalty in cases where violations of University policy have occurred, will be conveyed to the parties at the same time in writing. The notification will include the parties' appeal rights.

If a student is found responsible for violating University policy, the Office of the Dean of Undergraduate Students or of the Graduate School will record the penalty and retain records in accordance with protocols for all other disciplinary cases. In all cases, the case file will also be archived by the Title IX Coordinator.

## 3. Rights of Appeal

Both parties, the complainant and the respondent, have equal rights to an impartial appeal and to participate equally in the appeal process, even if the party is not the appealing party.

The appellate body has the following five members: the dean of the college, the dean of the Graduate School, the vice president for campus life, the chair of the Judicial Committee of the Council of the Princeton University Community, and another faculty

member appointed by the president. All members will have training regarding Title IX and prohibited conduct defined under this policy. The members will be impartial and unbiased. One member will be appointed by the president to serve as its chair.

Each appeal will be heard by three members of the appellate body (i.e., appeal panel). The chair will assign the appeal panel for each case. All decisions shall be made by a majority of the appeal panel.

A complainant or respondent may file a written appeal on the grounds that: (1) there is substantial relevant information that was not presented, and reasonably could not have been presented during the investigation; (2) the imposed penalty does not fall within the range of penalties imposed for similar misconduct, or (3) there was procedural unfairness during the disciplinary process.

The purpose of an appeal is not to initiate a review of substantive issues of fact or a new determination of whether a violation of University rules has occurred. The appeal panel may decide to uphold the original decision of the investigative panel and/or the deans; to alter the imposed penalty; or to return the case to the investigative panel for additional proceedings or other action. The deadline for filing an appeal is five business days from the date the parties are notified of the decision. If either party files an appeal, the associate secretary of the University will notify the other party in writing. The associate secretary of the University will serve as secretary for all appeals and will have primary responsibility for interactions with the parties, for the gathering of information needed for the appeal, and for notifying both parties in writing of the outcome of any appeal.

## 4. Expedited Process in Limited Cases

An expedited investigation and adjudication process may be implemented at the sole discretion of the Title IX Coordinator in those cases where: (a) a student is alleged to have violated this policy; (b) based on precedents and the respondent's prior disciplinary history, the penalty for the alleged violation will not interrupt the student's academic career, and (c) the parties to the matter agree to the expedited process. If during the course of the matter the Title IX Coordinator determines that the expedited process is not appropriate, the Title IX Coordinator will re-institute the standard procedures described in section 1.3.12.

The expedited process is identical to the standard procedures described in section 1.3.12 in all respects, except for the following:

- The expedited process will utilize a two-person investigative panel.
- If a student is found responsible for violating this policy, penalties will be determined by an associate dean of undergraduate students for an undergraduate

respondent or by an associate dean of the Graduate School for a graduate student respondent.

· Appeals in which the respondent is an undergraduate student will be reviewed by the dean of undergraduate students, and appeals in which the respondent is a graduate student will be reviewed by an associate dean of the Graduate School. If either party files an appeal, the associate secretary of the University or their designee will notify the other party in writing, and that individual will have primary responsibility for interactions with the parties, for the gathering of information needed for the appeal, and for notifying both parties in writing of the outcome of any appeal.

## 5. Student Enrollment and Residence Status

Pending action by the panel and/or the deans on the charges or pending an appeal, the respondent may be permitted to remain in residence on campus, attend classes, and make use of some or all University facilities, except for circumstances relating to the physical or emotional safety or well-being of a member (or members) of the University community, or the ability of the University to carry out its essential functions. Certain restrictions may be imposed by the deans on the respondent in order to provide the complainant with an educational environment free from discrimination under Title IX.

The respondent should understand that if the decision of the panel and/or the deans proves adverse, and if an appeal proves unsuccessful, the penalty will normally be considered effective as of the date of the original adjudicated decision. In cases adjudicated prior to the last day of classes, if the final decision is a separation from the University (i.e., suspension, suspension with conditions, or expulsion), the respondent will normally not earn credit for the semester in which the infraction occurred. If the case is adjudicated during reading or exam period or if the respondent has successfully completed course requirements while awaiting the final disposition of the matter, obtaining credit for the semester will be at the discretion of the deans.

Pending an investigation and adjudication or the respondent's decision about whether to appeal a separation from the University or the withholding of the degree, and/or while an appeal is in process, an administrative hold will be placed on the respondent's University transcript. Should the respondent decide not to appeal a separation or the withholding of the degree, or should an appeal not result in an alteration of the dean's decision to dismiss the respondent or withhold the degree, the registrar will record the fact of the penalty on the respondent's transcript.

## 1.3.13 Investigation, Disciplinary, and Appeal Procedures for Cases When the Respondent Is a Faculty or Staff Member

### 1. Investigation and Adjudication

When the Title IX Coordinator receives a complaint or report alleging that a member of the faculty or staff violated this policy, the Title IX Coordinator will appoint an investigative panel of at least two administrators and/or outside investigators.

When either of the parties is a faculty member, one panelist will represent the Office of the Dean of the Faculty. If either of the parties is a staff member, one panelist will represent Human Resources. When the complainant is a student alleging a violation of this policy by a member of the faculty or staff, the panel will have three members, and will include a representative of the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School, as appropriate.

The investigative panel will conduct an inquiry and determine, by a preponderance of the evidence, whether this policy was violated. All panelists will have training in investigating and evaluating conduct prohibited under this policy. The panelists will also be impartial and unbiased and will describe in writing for the parties, the allegations that will be adjudicated.

The panel will collect information from each party. If the parties are interviewed, they will be interviewed separately. Each party may select an adviser of their choice who may accompany them to any meeting or related proceeding, but the adviser may not actively participate in the interview process. All members of the panel will participate in interviews with the complainant and the respondent. The panel will interview witnesses as necessary and may, at its discretion, delegate witness interviews to one or two of the panelists. Witnesses may not bring advisers. In all meetings, there will be a designated note taker. At the conclusion of each interview, the notes will be reviewed with the interviewee.

In the circumstance when the complaint is made by a member of the faculty or staff alleging a violation of this policy by another member of the faculty or staff, the panel will prepare a case file of all interview summaries, witness statements, and other documents. The panel will present both parties with a summary of the case file, after which each party will have an opportunity (1) to meet again with the panel, (2) to provide additional written information to the panel, (3) to request the collection of other information by the panel, and (4) to identify individuals who may possess relevant information (and request that such individuals be interviewed). If the panel believes that further response by the parties is necessary for purposes of reaching an outcome, the panel will offer each party the opportunity to further respond to the materials collected. The panel will designate reasonably prompt time frames to ensure a timely completion

of the process but also an adequate opportunity for both sides to provide thorough information in the investigation.

In the circumstance when the complaint is made by a student alleging a violation of this policy by a member of the faculty or staff, the panel will prepare a case file of all interview summaries, witness statements, and other documents. The file, redacted of personally identifiable information as necessary, will be shared with the complainant and the respondent. After reviewing the file, each party will have an opportunity (1) to meet again with the panel, (2) to respond in writing, (3) to request the collection of other information, and (4) to identify individuals who may possess relevant information (and request that such individuals be interviewed). If any additional information is gathered, it will be shared with both parties and each will have the opportunity for further response. The panel will designate reasonably prompt time frames to ensure both a timely completion of the process but also an adequate opportunity for both sides to respond thoroughly to the information gathered in the investigation.

Following the investigation, the panel will meet to determine whether the respondent, based on the preponderance of evidence standard, violated University policy. The panel will prepare a report, which will include findings of fact, findings of responsibility and the panel's rationale. All members of the panel must endorse the report as a record of their deliberations and rationale.

## 2. Penalties

The appropriate disciplinary authority based on the role of the respondent is as follows:

- If a faculty member is found responsible, the panel's report will be forwarded to the dean of the faculty who will determine the appropriate penalty.
- If a staff member is found responsible, the panel's report will be forwarded to the vice president for human resources, who will determine the appropriate penalty in consultation with the staff member's manager.

Penalties will be determined based on the seriousness of the misconduct as compared to like cases in the past, and on the individual's previous disciplinary history (if any). The findings regarding fact and responsibility as well as the decision regarding the penalty in cases where violations of University regulations have occurred will be conveyed to the parties at the same time in writing. The notification will include the parties' appeal rights. In all cases involving sex discrimination or sexual misconduct, the case file will be archived by the Title IX coordinator.

## 3. Rights of Appeal

Both parties, the complainant and the respondent, have equal rights to an impartial appeal and to participate equally in the appeal process, even if the party is not the

appealing party. A complainant or respondent may file a written appeal on the grounds that (1) there is substantial relevant information that was not presented, and reasonably could not have been presented during the investigation; or (2) there was procedural unfairness.

- In a case where the respondent is a **faculty member,** written appeal should be filed with the Committee on Conference and Faculty Appeal. In addition to the two grounds above, either party may raise on appeal "any question of unfair treatment in relation to the appointment, reappointment, or academic duties or privileges."
- In a case where the respondent is an **academic professional** (professional researchers and specialists, professional library staff), a written appeal should be filed with the provost.
- In a case where the respondent is a **non-unionized staff member,** a written appeal should be filed with the executive vice president.
- In a case where the respondent is a **unionized staff member,** in accordance with the grievance procedure under the applicable collective bargaining agreement, a written appeal should be filed with the executive vice president and/or the labor relations representative in Human Resources.

The purpose of an appeal is not to initiate a review of substantive issues of fact or a new determination of whether a violation of University rules has occurred. The appellate authority may decide to uphold the original decision of the panel and/or disciplinary authority; to alter the imposed penalty; or to return the case to the panel for additional proceedings or other action. The appellate authority will have training regarding Title IX and prohibited conduct defined under this policy and will be impartial and unbiased.

The deadline for filing an appeal is one week from the date the parties are notified of the decision by the dean of the faculty or vice president for human resources or a designee. If either party files an appeal, the other party will be notified. Both parties will be notified in writing of the outcome of the appeal.

### 1.3.14 Disciplinary Procedures Where One Party Is a Member of the University Community and the Other Party Is a Non-Member of the University Community

When a third party, (i.e., a non-member of our University community) is involved as a complainant or a respondent, the University will use disciplinary procedures that are generally consistent with the disciplinary procedures stated in sections 1.3.8 through 1.3.13
, appropriately modified based on the particular circumstances involved and taking into account privacy requirements and the like. In no case will a member of our community (i.e., current student, faculty member or staff member) be afforded lesser rights or

lesser opportunities to participate in the disciplinary proceeding than the non-member of the University community.

## 1.3.15 Other Investigation and Resolution Procedures

If a complaint or report of conduct prohibited by this policy is made against multiple individuals, an office, or the University in general, the Title IX Coordinator will review the matter and take appropriate action, in accordance with this policy. The Title IX Coordinator may conduct an investigation, using investigative and disciplinary procedures that are generally consistent with those stated in this policy, appropriately modified based on the particular circumstances involved. The Title IX Coordinator also has the discretion to conduct a climate review, after which the University may implement appropriate remedial action.

## 1.3.16 Range of Penalties under This Policy and Disciplinary Procedures

Members of the University community may be subject to disciplinary penalties for violating this policy.

### 1. Additional Accommodations

If a respondent is found responsible for violating this policy, the complainant may request accommodations not already in place, such as a one-way no contact order. The University will promptly implement the accommodation as appropriate. In no circumstance will the burden of the accommodation be placed on the complainant. The accommodation shall be effective even if the respondent files an appeal or if such an appeal is pending.

### 2. Penalties Applicable to Students

**For violations of this policy by students,** in general the penalties, in ascending order of severity, are:

**Warning.** A formal admonition that does not become part of an individual's permanent record, but that may be taken into account in judging the seriousness of any future violation.

**Disciplinary Probation.** A more serious admonition assigned for a definite amount of time. It implies that any future violation, of whatever kind, during that time, may be grounds for suspension, suspension with conditions, or in especially serious cases, expulsion from the University. Disciplinary probation will be taken into account in judging the seriousness of any subsequent infraction even if the probationary period has expired.

Disciplinary probation appears on an individual's permanent record at the University (but not on the transcript) and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

**Withholding of Degree.** In cases involving seniors or graduate students in their final semester, the University may withhold a student's Princeton degree for a specified period of time. This penalty is imposed instead of suspension at the end of senior year or final year of graduate study when all other degree requirements have been met. A withheld degree is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

**Suspension.** Removal from membership in the University for a specified period of time. A suspension is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

**Suspension with Conditions.** Removal from membership in the University for at least the period of time specified by the suspension, with the suspension to continue until certain conditions, stipulated by the appropriate body applying this penalty, have been fulfilled. These conditions may include, but are not limited to, restitution of damages, formal apology, or counseling. A suspension with conditions is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

**Expulsion.** Permanent removal from membership in the University, without any opportunity for readmission to the community. Expulsion is recorded on a student's transcript. Relevant information remains on the student's permanent record at the University and may be disclosed by the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School in response to requests for which the student has given permission or as otherwise legally required.

**Censure.** University censure can be added to any of the penalties listed above, except warning. Censure indicates the University's desire to underscore the seriousness of the violation and the absence of mitigating circumstances and to convey that seriousness in response to future authorized inquiries about the given individual's conduct.

The following may accompany the preceding penalties, as appropriate:

**Campus Service.** Campus service up to 10 hours per week may be added to disciplinary probation for a portion or duration of the probationary period, or following a warning.

**University Housing.** When appropriate to the infraction, particularly in instances involving antisocial behavior having a serious impact on the residential community, removal from University housing or relocation within University housing may be added to any of the other penalties listed above, except warning. In the case of a first-year or sophomore, removal from housing is not an option as all underclass students must reside in a residential college. Relocation within residential colleges will be imposed only after consultation with the head of the student's residential college.

**Restriction of Access to Space, Resources, and Activities.** When appropriate in cases involving behavioral misconduct between members of the community, restrictions may be placed on access to space and/or resources or on participation in activities so as to limit opportunities for contact among the parties.

**Educational Refresher Programs.** In addition to any of the penalties listed above, a student may be required to participate in educational refresher programs appropriate to the infraction.

### 3. Penalties Applicable to Faculty and Staff Members

**For violations of this policy by faculty or staff members,** disciplinary penalties may include (in accordance with the employment policies governing the employee in question) counseling or training, written warning, financial penalty, unpaid leave of absence, suspension, demotion or termination in accordance with the employment policies governing the specific employee.

### 4. Penalties Applicable to Non-Members of the University Community

**For violations of this policy by non-members of the University community,** disciplinary penalties may include being temporarily or permanently barred from the University or subject to other restrictions.

## 1.4 The University, the Law, and Property Rights

Members of the University community are expected to act with respect for the safety, personal rights, and property of individuals and groups both within and outside the University, and in accordance with local, state, and federal laws. Some laws, such as those governing equal opportunity and nondiscrimination, underlie fundamental

University policy and have been discussed previously in this document. Principles and laws of particular importance to our academic community are discussed below.

## 1.4.1 On-Campus Misconduct and the Law

On-campus misconduct by members of the University will normally result in internal disciplinary action, although in some instances the University may deem it necessary to call upon external authorities and to file charges or claims in the courts. In particular, misconduct by members of the University or others that inflicts or threatens to inflict personal injury or serious damage to property, that severely impairs essential functions of the University, or that cannot be adequately handled by the University Department of Public Safety, may require the intervention of outside authorities. Outside authorities typically will be called only by a senior officer of the University or a specifically designated representative. In addition to the president and the provost, authorized senior officers include the dean of the faculty, the dean of the Graduate School, the dean of the college, the vice president for campus life, the executive vice president, the executive director of the Department of Public Safety, and the general counsel.

### Persons on Leave of Absence; Persons Who Are Not Members of the University

1. Allegations of on-campus misconduct by persons who are, for whatever reason, withdrawn, suspended, whose degrees have been withheld, or on leave of absence from the University will be evaluated before these persons may resume their status as regular members of the University. In these instances, such persons will be granted the right to a full hearing by the appropriate University judicial body with respect to the allegations related to them. The results of such a hearing may have an effect upon their reinstatement as members of the University community or upon the granting of their degree.

2. Incidents involving persons not subject to University discipline cannot always be handled by the University Department of Public Safety and may require the calling of outside authorities (under the conditions of the paragraph under On-Campus Misconduct and the Law). When persons who are not members of the University engage in serious misconduct on the campus, the University has no recourse but to press charges against them in the courts. (Members of the University involved in such cases, when their conduct is in violation of the law, cannot be guaranteed immunity either from arrest or prosecution.)

## 1.4.2 Off-Campus Misconduct

While the University does not impose disciplinary penalties for misconduct off campus beyond the local vicinity or unassociated with a University-sponsored program or activity there are exceptions (for example, where such misconduct may pose a safety risk on campus or may have a continuing adverse effect or create a hostile environment on campus). Judgments about these matters will depend on facts of an individual case. Note: All actions by a member of the Princeton University community that involve the use of the University's computing and network resources from a remote location, including but not limited to accessing e-mail accounts, will be deemed to have occurred on campus.

### 1.4.3 Violations of Local, State, or Federal Law

Violations of federal, state, or local laws by members of the University community may put the individual in personal legal jeopardy. Also, they may trigger University disciplinary action regardless of where such violations occur, particularly if they are of a serious nature and clearly violate University standards of conduct.

The University will not seek special immunity for its members if they come in conflict with the laws of the civic community, national, state, or local. However, the University's Office of General Counsel will, if asked, offer the names of attorneys in the event a community member desires to engage counsel upon being charged with a violation of the law. (Students should also consult section 2.2.13
< ../students#comp2213>
"Legal Assistance.")

Individuals who contemplate actions that may be deemed illegal should be aware that they risk harm both to their own reputations and to that of the University, and should deliberate seriously and seek to reach an informed decision before acting. Even in situations where members of the University community seek advice from University representatives, responsibility for individual actions rests with the person or persons involved.

### 1.4.4 University Discipline and the Courts

When members of the University are faced with court proceedings for offenses committed either on or off the campus, and when University disciplinary proceedings are also appropriate, the University will normally make its own determinations promptly, whether or not court action has been brought to a conclusion.

### 1.4.5 University Safety, Security, and Law Enforcement

1. The University Department of Public Safety (DPS) serves to protect the rights, safety, and security of members of the University community. The department works in conjunction with the local municipal police departments, as well as state and federal law enforcement agencies, to provide general law enforcement services to the University community.

2. The Department of Public Safety consists of uniformed, commissioned officers (University police officers) who have the powers of arrest, and non-commissioned uniformed security officers who provide general security services. The Department of Public Safety's University police officers have the authority of commissioned police officers with full power of arrest deriving their law enforcement authority from New Jersey statutes and the Trustees of Princeton University. New Jersey statute Title 18A, Section 6-4.5 provides that the University police officers "shall possess all the powers of policemen and constables in criminal cases and offenses against the law anywhere in the State of New Jersey [including the powers of arrest], pursuant to any limitations as may be imposed by the governing body of the institution which appointed and commissioned the person."

3. University police officers have a major responsibility for ensuring that members of the University observe the basic standards of conduct and respect the specific University regulations and state and local laws. University police officers are also responsible for assisting members of the campus community in emergency situations, as well as in their routine community caretaking duties. In interactions with representatives of the Department of Public Safety, individuals are expected to comply with the requests and/or instructions of University police officers.

4. In addition, the Department of Public Safety has a Communications Center with certified dispatchers responsible for emergency communications 24 hours a day, 7 days a week, and the Fire Marshal's Office responsible for enforcement of the New Jersey Fire Code and conducting fire inspections of all University-owned buildings in accordance with state code. Failure to cooperate or behave in a straightforward manner with a University police officer, Fire Marshal, or security officer may result in disciplinary action.

## Official Scheduled Inspection

Public health, public safety, and fire officials may conduct routine safety inspections of residence hall rooms and storage areas. These inspections can result in University sanctions for any student who is found to be responsible for violations of RRR policy.

## Emergency Entries

The standard privacy rights set forth in University policies may be suspended in emergency situations where the safety of members of our campus community is at risk (e.g., serious criminal incidents; fires, floods, or similar disasters; and fire alarms).

## 1.4.6 Regulations Regarding Security and Prior Restraint

### Security Measures

Security measures taken at on-campus events must be adequate to provide for the maintenance of order and to ensure the safety of those attending or participating. Within the University, the dean of undergraduate students, the dean of the Graduate School, and the executive director of the Department of Public Safety are primarily responsible for deciding whether security measures are necessary for a given event and for making appropriate arrangements. In consultation with sponsors of the event, they will make security arrangements which involve minimal interference with the scheduled event and with the privacy and freedom of those attending.

### Prior Restraint

1. Normal access to facilities of the University and normal activities within the University should not be restrained merely on suspicion of disruptive intent, even when this suspicion seems well-founded. Normal access and activities should be restricted only in circumstances that affect the health and well-being of persons, that seriously threaten physical safety, that impair or seriously threaten to impair the ability of the University to carry on its essential operations, or that threaten serious damage to University property. Except in circumstances of very grave dangers of these kinds, restraint will be invoked only by the president or a representative, or by a senior officer of the University authorized by the president.

2. "Normal access" shall be construed in this context within the following conditions and limitations:

   a. Normal access to physical facilities is governed by existing practices and policies defining hours of operation, and categories and numbers of persons to be admitted in given circumstances.

   b. Any University organization has the right to restrict attendance at any of its meetings to members and their invited guests; nonmembers have no normal right of access to such activities.

3. The imposition of a physical search of persons attending a University event as a condition for their entry to the event will be authorized only under the most extreme circumstances. A decision to authorize such a search will be taken only when the following conditions are met:

   a. Either the sponsors of the event, the Department of Public Safety, or other law enforcement authorities judge such a search to be essential to the safety of those participating or attending and request authorization from the president of the University.

   b. It is the judgment of the president, in consultation with the University's legal counsel, that the search is legal as essential to the safety of those participating or attending.

When a search has been authorized, steps will be taken to ensure that those who do not wish to be searched have the opportunity to leave without being searched. Whenever possible, the fact that a search will be conducted will be publicized well in advance of the event. All such searches will be conducted by the Department of Public Safety or contractors hired by DPS unless others, similarly accountable to the University or legally authorized, are requested by the president to act on behalf of the University.

For further information concerning University security policy for persons who are not members of the University community, see **section 3.3**
< ../community#comp33>

## 1.4.7 Property

Members of the University community are expected to act with a considerate regard for the property of the University itself or individual persons. Examples of offenses that will be regarded as serious are:

1. Willful or reckless damage, vandalism, or destruction of the property of others, or of the University, including the deliberate defacement of library materials, buildings, sidewalks (including chalking), walls, or trees. In addition to whatever disciplinary consequence is imposed, the penalty for willful or reckless damage or vandalism will ordinarily include replacement or repair.

2. The deliberate setting of fires, unless approved, including bonfires, on University property, even in cases in which there is no deliberate endangerment of human life. Prior approval for bonfires must be granted by Grounds and Building Maintenance, the Department of Public Safety, and the local fire official acting in consultation with the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School, as may be appropriate.

3. Theft or unauthorized borrowing of money, property or services, or attempt to commit theft or conspiracy to commit theft.

4. The unauthorized or fraudulent use of the University's telephone system. Users of the limited-access telephone system are expected to be aware of, and to adhere to, the guidelines established by the Telecommunications Office.

5. Unauthorized occupancy of University residential units or other University spaces.

## 1.4.8 Library Use

Because the Library is uniquely important to the University, members of the University community are expected to act with particularly considerate regard for the security of the collections. Insofar as these collections play a crucial role in supporting the highest standards of academic excellence, the regulations governing Library use require special attention. The theft or defacement of Library materials runs counter to the Library's mission to ensure continuing access the world's intellectual and cultural heritage, and will not be tolerated. Similarly, misuse of Library electronic resources is not acceptable. Such acts will be viewed as very serious offenses; students should understand that their status in the University may be jeopardized by infractions of this nature. For other information about the Library visit: **http://library.princeton.edu**

< http://library.princeton.edu/>

## 1.4.9 Computer and Network Use

Princeton University makes available to its community members electronic and digital data and network resources, including shared information technology resources that use text, voice, images, and video to deliver information. These resources are to be used in a manner consistent with University policy and the law.

All uses of the University's information technology and network resources, whether administered centrally by the Office of Information Technology (OIT) or by individual departments, are subject to the regulations and policies set forth in "Acceptable Use Policy for Princeton University Information Technology and Digital Resources" (**www.princeton.edu/itpolicy**

< http://www.princeton.edu/itpolicy>

) and the "Policy on Access to Accounts and Information" (**www.princeton.edu/oit/it-policies/access-to-accounts**

< http://www.princeton.edu/oit/it-policies/access-to-accounts>

). These policies provide information regarding laws (including copyright) that are potentially applicable to certain uses of the University's IT and digital resources and network access, and explain when the University can access, preserve and review information created, transmitted or stored in its IT systems by individual users. Members of the University community are expected to be familiar with and adhere to these policies.

The University anticipates that faculty and staff will conduct University businesses using the IT systems and resources provided by the University. To the extent faculty and

staff conduct University business using personal devices or accounts, data stored in those devices and accounts may be subject to legal holds (i.e., a requirement to preserve relevant information) and the users may be legally obligated to produce such data under federal or state law or rules, or pursuant to subpoenas, court orders or discovery obligations in a pending or reasonably anticipated legal proceeding.

Members of the University community who engage in any illegal or fraudulent use of the University's information technology resources, including infringement of copyright-protected materials, may be subject to disciplinary action, including the termination or suspension of network privileges.

Regulations governing use of the University's name and property (see **section 1.4.11** ), the tax-exempt status of the University and political activities (see **section 1.5** ), and community use of University resources (see **section 3.1** < ../community/#comp31> ) also apply to use of the University's information technology resources.

Members of the University community cannot use University IT and network resources for commercial (including consulting) purposes; rather, they should use information technology resources, Internet service providers, and computer hosts outside the University.

## 1.4.10 Patent and Copyright Policies

The University's policies concerning intellectual property are intended to further its central mission—the sustained production, preservation, and dissemination of knowledge—while exercising due care for its fiduciary responsibility for the resources it administers. To that end, faculty members grant to the Trustees of Princeton University a non-exclusive license in scholarly articles, provided the articles are not sold by the University for a profit. Moreover, the University may record and broadcast activities on campus and University-sponsored activities off campus, including public lectures as well as musical, dramatic, or other artistic performances, academic pursuits, campus life, and casual and portrait photography or film, and retain copies of such recordings for archival, academic, and other non-commercial purposes that advance the University's mission. The University Research Board (URB) is responsible for the general oversight and administration of the University's Patent and Copyright policies as regards the University, its faculty, employees, students, and outside sponsors. The Dean for Research is responsible for the implementation of the Patent Policy and Copyright Policy under general oversight of the University Research Board. The Office of Technology Licensing is responsible for providing management of copyrights and licensing services for the University community. The Office of Technology Licensing is also responsible for the University's Technology Transfer Program, providing

management of inventions and patenting and licensing services for inventions developed by members of the University community. For information about these policies, see the following websites: Patent Policy: **https://dof.princeton.edu/rules-and-procedures-faculty-princeton-university-and-other-provisions-concern-faculty/chapter-13**

< https://dof.princeton.edu/rules-and-procedures-faculty-princeton-university-and-other-provisions-concern-faculty/chapter-13>

, Copyright Policy: **https://dof.princeton.edu/rules-and-procedures-faculty-princeton-university-and-other-provisions-concern-faculty/chapter-14**

< https://dof.princeton.edu/rules-and-procedures-faculty-princeton-university-and-other-provisions-concern-faculty/chapter-14>

, and Open Access policy: **https://dof.princeton.edu/policies-procedure/policies/open-access**

< https://dof.princeton.edu/policies-procedure/policies/open-access>

.

### 1.4.11 Princeton University Name, Marks, and Seal

No individual or organization may use Princeton University's name, seal, logos, restricted images, or other identifiers ("marks"), or any marks that suggest Princeton University or any Princeton University organization, except to the extent such individual or organization has been authorized by the proper University officials or as permitted under trademark law. The Vice President for Communications and Public Affairs is responsible for the general oversight and administration of the University's trademark policies. The Office of Trademark Licensing is responsible for maintaining, managing and licensing the University's marks.

The use of the seal of the University on publications, manufactured articles, and the like is prohibited, except when specifically authorized by the University. Applications for such authorization must be made to the Secretary of the University.

Regulations relating to the tax-exempt status of the University and political activities (see section 1.5
) also apply to the use of the name, marks and seal of the University.

# 1.5 Guidelines Relating to the Tax-Exempt Status of the University and Political Activities

## 1.5.1 Introduction

A basic responsibility of the University is to protect its educational function and the resources accumulated over many years through the generosity of alumni and other friends of the University. There is a close interrelationship between maintenance of the legal status of the University as a tax-exempt institution and fidelity to the educational purposes for which it is chartered and for which it enjoys tax exemption.

No less fundamental is the opportunity for all members of the University community to exercise their prerogatives as citizens and engage in civic activities. While in some ways distinct, this concern also relates in important ways to the educational mission of the University. A basic principle of a residential university, such as Princeton, is that the education in the classroom is complemented and strengthened by the many opportunities for personal development and growth in the residential community. For this reason, Princeton University has over many years provided facilities for, and encouragement to, members of the University community who wish to pursue varied talents and interests beyond the classroom. The result is a wide variety of existing campus organizations, including political organizations of various sorts, publications, pre-professional associations, musical and theatrical groups, intercollegiate and intramural athletic teams, debating societies, and so on.

Encouragement of an interest in public affairs and the furtherance of a sense of social responsibility have long been considered important elements of a liberal arts education. The University continues to consider self-chosen participation in political and social action by individuals and groups to be a valuable part of the educational experience it seeks to encourage. Such activities on the part of individuals or groups do not, and should not be taken to, imply commitment of the University to any partisan political position or point of view.

To serve these objectives, the following guidelines have been developed. The guidelines are believed to be consonant with the traditional role of the University and to be in keeping with relevant laws.

## 1.5.2 Guidelines

Members of the University community, as individuals, have the right to exercise their full freedom of expression and association. Under federal law, however, the University may not "participate in, or intervene in any political campaign on behalf of (or in opposition to) any candidate for [any] public office" and "no substantial part of the activities" of the University may be directed to influencing legislation (i.e., lobbying) (Section 501(c)(3) of the Internal Revenue Code). The University, including its respective offices and academic departments, may not endorse, or provide or solicit financial or other support for, candidates for public office or partisan political organizations. These prohibitions apply as well to campus-based organizations. Therefore:

1. Campus-based organizations which devote no more than an "insubstantial" part of their activities to influencing legislation may be recognized by the University.

   a. Such recognized organizations will have free use of University facilities and will be eligible to receive University funding.

   b. Such organizations will not be permitted to use University funds to influence legislation and will not be permitted to solicit tax-deductible contributions using the University's name.

2. Campus-based organizations which devote a "substantial" part of their activities to influencing legislation or that participate or intervene in a political campaign on behalf of any candidate for public office may be recognized by the University.

   a. Such organizations may use University facilities free of charge for organizational meetings.

   b. Such organizations may use University facilities free of charge to present lectures, seminars, and similar programs which are open to the entire campus community and which provide opportunity for discussion and questioning.

   c. Such organizations will be charged for use of facilities for the appearance of political candidates which are closed events or which do not provide an opportunity for questioning. Other candidates for the same political office must be given the opportunity to appear in an equivalent venue on an equivalent basis.

   d. Such organizations cannot use University facilities for the purpose of fundraising for a political candidate or organization or in order to establish a campaign headquarters.

   e. Such organizations will not receive funds from the University.

   f. Such organizations are prohibited from using the University's name to solicit tax-deductible charitable contributions.

3. While the University's name has traditionally been used in limited ways for purposes of identification by individuals and/or organizations connected with the University, individuals and groups must take special care to make it clear that when expressing political views they are speaking only for themselves and not for the University.

4. All campus space and facility assignments are made by the Office of the Provost. Requests by campus-based organizations for the assignment of space or a facility must be submitted for processing to the Office of Design and Construction. (Student organizations should submit their requests through the Office of the Dean of Undergraduate Students or the Office of the Dean of the Graduate School.)

5. Any non-campus-based organization wishing to use University space or a facility must obtain permission through the Office of Conference and Event Services. The organization concerned will be required to pay a reasonable rental charge for the

use and to bear the cost of any unusual janitorial or other related expenses. Generally, non-campus-based organizations that are not charitable in nature will not be permitted to use University space or facilities for fundraising purposes.

6. The University's resources, including but not limited to its name, seal, funds, space, facilities, communications systems (e.g., mail systems and privileges, phone systems, information technology resources, internet access, etc.), contact lists, supplies, equipment, and sales and use tax exemptions, are intended to serve the educational, research, and administrative needs of the University.

    a. It is proper for the University's resources to be used for bona fide academic research that may include projects related to current political issues and to the positions taken by various candidates for public office. Research of this kind, so long as it is consistent with accepted academic canons, may use centrally provided resources or, with appropriate approval, departmental resources. With departmental authorization, such research also may incur related charges against departmental accounts.

    b. Studies which in and of themselves might be bona fide academic research might also be designed for partisan political purposes. The University's resources cannot be used for such work nor to advance other causes not directly related to the mission of the University, unless it is paid for from non-University funds and at the regular rate plus the standard surcharge applicable to such work.

    c. The University may provide space or facilities at a reasonable charge to groups that conduct political campaign activities, but only if the University offers the use of equivalent space or facilities on an equivalent basis to groups conducting campaign activities for other candidates for the same office, as well as to non-political groups.

7. Campus-based organizations claiming national or regional status must base off campus the portion of their activities that involve or employ people not members of the Princeton University community. Such organizations must also use off-campus mail addresses and non-University resources for non-University activities.

8. Faculty, staff, and students have an obligation to fulfill all of their normal responsibilities at the University, and while they are free to engage in political and civic activities, such activities must not be at the expense of the University or their responsibilities at the University.

9. Any visit, communication (whether oral, written or electronic) or related activity (e.g., preparation, research or other background work) that could be construed as a faculty or staff member or student engaging in lobbying activity on behalf of the University must be coordinated through the Office of Government Affairs.

10. Campus-based organizations, no less than other organizations, should realize that they are subject to local, state, and federal laws and that they bear responsibility for compliance with these laws.

Questions about these guidelines should be directed to the Office of the Dean of Undergraduate Students, the Graduate School, or the Office of the General Counsel.

# 1.6 Health and Safety Policies

## 1.6.1 Drugs

### State Laws

New Jersey state law classifies heroin, cocaine, amphetamines, LSD, marijuana, and hashish, among other substances, as "controlled dangerous substances." The possession, use, sale, or manufacture of such substances may be subject to mandatory penalties. References to current laws may be consulted at the Office of Public Safety. (New Jersey law does provide some immunity for those who seek immediate medical assistance on behalf of themselves or others in drug overdose situations.)

### University Policy Concerning Use of Illegal Drugs

The University prohibits the unlawful manufacture, dispensation, possession, use, or distribution of a controlled substance of any kind in any amount on University property, or while in the conduct of University business away from the campus. This prohibition includes the manufacture, dispensation, possession, use, or distribution of prescription drugs without a prescription. Penalties for these acts will be administered by the appropriate University administrator or committee, and in accordance with rules and procedures administered by them (for the faculty and other academic staffs, the Office of the Dean of the Faculty; for graduate students, the Office of the Dean of the Graduate School; for undergraduates, the Office of the Dean of Undergraduate Students; and for administrators and staff, the Office of the Vice President for Human Resources). Penalties range from warning to permanent separation from the University depending on the seriousness of the infraction and the degree to which violation of the policy adversely affects the well-being of the community or the fulfillment of the University's educational mission.

Violations of local ordinances or of state or federal laws regarding controlled dangerous substances by members of the University community may entail criminal charges and University disciplinary actions regardless of where such violations occur, if they are of a serious nature. The manufacture, sale, or distribution of illegal drugs, any involvement in

illegal drug use or traffic with minors, and possession or use of the more dangerous or highly addictive drugs, are all considered serious offenses and will be handled accordingly. Depending on the particular circumstances, continued association with the University by violators of this policy may be made contingent upon satisfactory participation in a drug abuse assistance or rehabilitation program.

It is also University policy, in accordance with the Drug-Free Workplace Act of 1988, that all employees, as a condition of employment on projects supported out of federal funds, abide by this University policy regarding controlled dangerous substances and notify the University within five (5) days of any criminal drug statute conviction for a violation occurring at the workplace.

All members of the University community should be aware that New Jersey State law prohibits the illegal possession, use, sale, or manufacture of controlled substances and drug paraphernalia and that violators may be subject to criminal charges as well as mandatory penalties in addition to University disciplinary action. Federal law also provides for loss of certain federal benefits (including student loans and research grants) for conviction under any criminal drug statute. More information about New Jersey and federal drug laws may be obtained at the Department of Public Safety, or the Office of the General Counsel.

## 1.6.2 Alcoholic Beverages

Members of the Princeton University community are expected to be acquainted with and to abide by both state and University regulations regarding the consumption of alcohol. They are also expected to be aware of the social, physiological, and psychological consequences of excessive drinking in order to make responsible and informed decisions about the serving and consumption of alcohol. The University provides regular educational programs on alcohol and drug abuse as well as counseling services.

The University alcoholic beverage policy is designed to be consistent with the laws of the State of New Jersey, which, in general, prohibit the consumption and serving of alcoholic beverages by and to persons under 21 years of age. The policy also reflects the need for mutual respect and personal responsibility within a diverse community. Under no circumstances will the consumption of alcohol constitute a mitigating circumstance when it contributes to the violation of University regulations. Alcoholic beverages will not normally be provided at University events where persons under the legal drinking age for consumption of alcoholic beverages are present, including those sponsored by the University, the residential colleges, the University centers, the Undergraduate Student Government, and the classes. (See section 2.2.9
< ../students#comp229>

in the Orange Pages for a more detailed description of the alcohol policy.)

## 1.6.3 Smoking

Smoking is prohibited by law and by University policy in all workplaces, places of public access in University buildings, and outdoor spaces within 25 feet of all such buildings, including but not limited to all academic, residential, and administrative buildings and elevators; individual offices and rooms; athletic sporting facilities; spectator areas at outdoor University events; University-owned vehicles, shuttle buses, and vans; dining facilities and bars; theaters and concert halls; partially enclosed areas such as archways, weather protected ramps, and tents; and outdoor dining areas. As per New Jersey regulations, this prohibition extends to e-cigarettes. All smoking materials must be disposed of in appropriate receptacles. Questions, concerns, or complaints about smoking on campus should be directed to the Office of Environmental Health and Safety. For more information about this policy, see the following website: **https://ehs.princeton.edu/health-safety-the-campus-community/smoking-campus**
< https://ehs.princeton.edu/health-safety-the-campus-community/smoking-campus>

.

# 1.7 Resolution of Complaints against Members of the University Community

## 1.7.1 Informal Procedures

The University encourages open and honest communication between members of the community. Most conflicts and differences of opinion between members of the University community can be resolved by the individuals directly confronting issues and jointly exploring alternatives. In addition, there are a variety of resources available to individuals who may be called upon to assist in informal conflict resolution. These are, in the case of students and faculty: the dean of the faculty, the dean of undergraduate students, and the dean of the Graduate School, and, in the case of staff: a supervisor or department head, the human resources representative, and the Employee Assistance Program counselor. All members of the community also can contact the director for institutional equity and EEO or the Title IX coordinator for concerns or complaints relating to harassment and discrimination. Additional resources include: the SHARE director for cases relating to sexual misconduct, and the University ombudsperson.

## 1.7.2 Formal Procedures

In cases where conflicts cannot be mutually resolved, the University has established formal complaint procedures. For further information, students should consult the Orange Pages (**sections 2.5**

< ../students#comp25>

and **2.6.7**

< ../students#comp267>

). Faculty, administrators, and staff should consult their applicable policy manuals.

## 1.7.3 Protection from Retaliation

Federal and state laws, as well as University policies, provide members of the University community with protection from retaliation, and underscore that retaliatory conduct may have serious consequences, including disciplinary sanctions.

Retaliation against a person who, in good faith, files a complaint or participates in the reporting, investigation, or adjudication process pertaining to a complaint is a particularly serious offense. Retaliation may include, but is not limited to, threats to personal safety or security (see **section 1.2.5**

) and harassment (see **sections 1.2.1**

and **1.2.2**

). Complaints of retaliation should be reported as possible violations of University policies.

A complaint of retaliation does not constitute proof of prohibited conduct. Therefore, such a complaint shall not be taken into account during reappointment, tenure, promotion, merit, or other evaluation or review until a determination has been made that there has been a violation of University policy.

## 1.7.4 Academic Matters

An undergraduate student with a grievance should first bring it to the attention of the faculty member(s) involved. If the grievance cannot be resolved in this way, the student should discuss the matter with the chair of the relevant department. If the student feels that a satisfactory resolution has not been found, the student may present the grievance to the dean of the college. The dean of the college resolves all aspects of the complaint unless the dean determines that the grievance raises issues of faculty misconduct, in which case the dean should refer those portions of the complaint to the dean of the faculty. The dean of the faculty renders a decision about issues of faculty misconduct and may choose to appoint a special committee of faculty to advise with regard to resolution of those issues. (A graduate student with a grievance should consult the procedures under **section 2.6.7**

< ../students#comp267>

.)

A student who questions the appropriateness of a grade should begin by talking to the faculty member in charge of the course. If the student continues to believe that the grade seems unjust, the next step would be to talk to the chair of the department (or departmental representative) or the director of the program in which the course is offered. If the student is still not satisfied, the situation may be reported to the dean of the college. In unusual circumstances, where these conversations have not yielded a satisfactory understanding, a formal appeal may be presented to the Faculty Committee on Examinations and Standing. A grade change can be submitted by the faculty member in charge of the course if circumstances warrant such an action.

*Rules and Procedures of the Faculty* provides that the Faculty Advisory Committee on Policy may hear appeals from decisions of faculty committees made on academic grounds that directly affect a student's academic standing and for which appeal is not otherwise provided.

## 1.7.5 Nonacademic Matters Other Than Sexual Misconduct Involving Students

In some instances, an alleged infringement upon the rights or sensibilities of an individual can be discussed among the involved parties. If this is not appropriate or advisable or does not lead to a satisfactory resolution, the matter should be immediately brought to the attention of the dean or an associate dean of undergraduate students or the dean or an associate dean of the Graduate School. If the matter is not resolved through discussion or through formal action by a dean, a complaint can be made in accordance with the normal disciplinary procedures (see **section 2.5**
< ../students#comp25>

, or, in cases of alleged infringement by graduate students, see **section 2.6.7**
< ../students#comp267>

).

If the matter involves alleged discrimination or harassment and is not resolved informally, then a complaint may be made to the dean or an associate dean of undergraduate students or the dean or an associate dean of the Graduate School. (Individuals may elect to submit a complaint utilizing the University's complaint form, which may be accessed at **https://inclusive.princeton.edu/addressing-concerns/file-a-report**

< https://inclusive.princeton.edu/addressing-concerns/file-a-report>

) The dean or associate dean may refer the matter to the appropriate disciplinary committee or administrator for adjudication in accordance with the normal disciplinary

procedures. (For additional information regarding the student disciplinary process, including appeal procedures, see section 2.5

< ../students#comp25>

, or, in cases of alleged infringement by graduate students, see section 2.6.7

< ../students#comp267>

).

## 1.7.6 Nonacademic Matters Involving Undergraduate Student Organizations

If a grievance cannot be resolved directly with the leadership of the student organization, a grievance may be brought to the attention of a dean in the Office of the Dean of Undergraduate Students. The dean may seek advice from the University Student Life Committee in resolving the matter.

## 1.7.7 Nonacademic Matters Other Than Sexual Misconduct Regarding Faculty, Staff, or Administration

In some instances, an individual who has any concern about, or complaint against, a member of the faculty, staff, or administration regarding nonacademic matters can discuss the concern or complaint with the individual involved. If this is not appropriate or advisable, or does not lead to a satisfactory resolution, the person should immediately, in the case of a faculty member, appeal to the department chair and, in the case of a member of the University staff or administration, to the appropriate manager or head of the office. Further appeal, if necessary, may then be made to the Office of the Dean of the Faculty for matters pertaining to faculty, professional library staff, and professional research and technical staff, or to the Office of Human Resources for all other staffs. All complaints will be investigated promptly.

If the matter is such that a direct discussion of it with the individual involved and/or with the department chair or office head does not seem appropriate (because, for example, the concern or complaint is of a personal or private nature), an initial discussion may be sought directly with the Office of the Dean of the Faculty or the Office of Human Resources, as appropriate.

Concerns or complaints about nonacademic matters can often be resolved on an informal basis. Whenever an individual wishes to make a formal complaint, however, that individual should review the appropriate staff rules or handbook and then contact the Office of the Dean of the Faculty or the Office of Human Resources to implement the formal review process.

In cases of alleged discrimination or harassment the individual may wish to first discuss the problem, in confidence, with the University ombudsperson or other confidential campus resource. (For a full list of campus resources in this context, see

the University's Policy on Discrimination and/or Harassment at **https://inclusive.princeton.edu/addressing-concerns/policies/policy-discrimination-andor-harassment**

< https://inclusive.princeton.edu/addressing-concerns/policies/policy-discrimination-andor-harassment>
.)

In cases of alleged infringement of the University's policy prohibiting discrimination and harassment by members of the faculty or other academic staff members (professional library staff, professional research staff, or professional technical staff), complaints may be made to the Office of the Dean of the Faculty; in cases of alleged infringement by members of the administrative and support staff, complaints may be made to the vice president for human resources or the director for institutional equity and EEO. (Individuals may elect to submit a complaint utilizing the University's complaint form, which may be accessed at **https://inclusive.princeton.edu/addressing-concerns/file-a-report**

< https://inclusive.princeton.edu/addressing-concerns/file-a-report>

.) The investigating office will conduct a fact-finding inquiry in accordance with the process set forth in the Policy on Discrimination and/or Harassment. (The full text of this policy, including investigation and appeal procedures, may be accessed at **https://inclusive.princeton.edu/addressing-concerns/policies/policy-discrimination-andor-harassment**

< https://inclusive.princeton.edu/addressing-concerns/policies/policy-discrimination-andor-harassment>
.)

# 1.8 The Council of the Princeton University Community (CPUC)

In May 1969, a Special Committee on the Structure of the University, chaired by Professor Stanley Kelley Jr., proposed the establishment of a Council of the Princeton University Community as "a permanent conference of the representatives of all major groups of the University" where "they could each raise problems that concern them and ... be exposed to each other's views." The council first met on October 27, 1969. Typically, it meets five times during the academic year, with special meetings as needed. Copies of the CPUC Charter are available in the office of the council secretary, 217 Nassau Hall.

## 1.8.1 Powers

The Council of the Princeton University Community is primarily a deliberative and consultative body, with authority to:

1. Consider and investigate any question of University policy, any aspect of the governing of the University, and any general issue related to the welfare of the University; and to make recommendations regarding any such matters to the appropriate decision-making bodies of the University or to the appropriate officers of the University.

2. Make rules regarding the conduct of resident members of the University community, which rules shall be binding on them; but the council may delegate authority to make rules, and, with respect to matters mainly of concern to a particular group within the University community, the authority to make rules shall normally be delegated to a body representing that group or shall be exercised in a manner otherwise acceptable to the members of that group.

3. Oversee the making and the applying of rules regarding the conduct of resident members of the University community, whether such rules shall have been made by other bodies, by the council itself, or by officers of the University, for the purpose of ensuring that such rules protect the rights of individuals and the legitimate interests of the University, and that they are clear in meaning, fair, enforceable, and in conformity with the law. The council normally would not consider matters primarily academic in nature.

## 1.8.2 Membership

Following a series of charter amendments in the fall of 1975, membership of the CPUC was set at 50, as follows:

1. *Administration.* (6) The president, the provost, and four appointed each year by the president from among the executive vice president, the financial vice president and treasurer, the secretary of the University, the dean of the faculty, the dean of the Graduate School, the dean of the College, and the vice president for campus life.

2. *Faculty.* (15) At least two from each division and four nontenured.

3. *Undergraduates.* (12) Including the president and vice president of the Undergraduate Student Government and 10 undergraduates elected at large from the student body in April.

4. *Graduate Students.* (7) At least one from each division.

5. *Alumni.* (4) Chosen by the Alumni Council.

6. *Staff.* (7) One each from the professional library staff, the administrative staff, the professional research staff, the professional specialists, and the office staff, and two staff members from groups not otherwise represented.

## 1.8.3 Committees

Much of the work of the Council of the Princeton University Community is conducted through its standing committees or through such special committees as have been established from time to time. The standing committees of the CPUC are:

1. *The Executive Committee.* The President of the University is the presiding officer of the council and of the Executive Committee. The committee has 14 members, including, in addition to the president, six faculty members (at least one from each division and one nontenured), three undergraduates (including the chair of the Undergraduate Student Government), two graduate students, and two members selected by the council from among the staff and alumni representatives. The Executive Committee sets the council's agenda, recommends the appointment of members of council committees, may consider any matter within the jurisdiction of the council, and serves as an informal advisory body to the president.

2. *The Committee on Rights and Rules.* The Committee on Rights and Rules, on behalf of the Council, considers and investigates the adequacy of all rules regarding the conduct of resident members of the University community, and the adequacy of the procedures for making and applying such rules.

3. *The Committee on Governance.* The Committee on Governance, on behalf of the council, considers and investigates questions relating to the governing of the University. It also consults with the Executive Committee of the Board of Trustees regarding the filling of vacancies among the charter and term trustees, and meets with the Committee on Honorary Degrees of the Board of Trustees to consult with it concerning the awarding of honorary degrees.

4. *The Committee on Priorities.* The Committee on Priorities, which is advisory to the president, reviews the budget of the University, considers issues that arise in the course of the preparation of the budget, and reviews plans for the development of the University. The provost chairs the committee, which also includes the dean of the faculty, the vice president for finance and treasurer, six faculty members (at least one from each division and one nontenured), four undergraduates and two graduate students (chosen with due consideration to the variety of interests represented in the student body), and one member from one of the other groups represented on the council.

5. *The Committee on Resources.* The Committee on Resources, on behalf of the council, considers questions of general policy concerning the procurement and management of the University's financial resources. This committee concerns itself primarily with the University's responsibilities as a stockholder, and typically considers a number of proxy questions each year.

6. *The Judicial Committee.* The Judicial Committee hears and decides, in the first instance or on referral by another judicial body of the University, cases that involve alleged violations of those established rules and regulations of conduct which apply, in at least substantially the same form, to all resident members of the University community, and whose violation constitutes a serious infringement of the recognized rights of members of the University community, a serious offense against the University's mission, a threat to the ability of the University to carry on its essential operations, or a substantial impairment of the common and legitimate interests of the University community. The Judicial Committee also may decide to hear appeals from persons found guilty of violating established rules and regulations, when it has been alleged by such persons that the proceedings against them have not been fair and reasonable, and when another route of appeal is not otherwise specified.

Appointment to the Judicial Committee is contingent on the appointee's recognition of the committee's judicial role and a commitment to apply established rules and regulations impartially to the facts of individual cases. Individuals with responsibilities for enforcing rules of conduct or for keeping order on campus, as well as holders of and candidates for certain offices, are excluded from membership. The committee consists of three faculty members, two undergraduates, one graduate student, one member from one of the other groups represented on the council, and a chair, appointed by the president, who votes only in case of a tie. In its report proposing the establishment of the CPUC, the Kelley Committee expressed its hope that the Judicial Committee would ensure that members of the University community, if they stand accused of the same offense and if it is a serious one, will have their cases decided in accordance with the same interpretation of the rules involved. The procedures of the Judicial Committee are detailed below.

# 1.9 The Judicial Committee of the Council of the Princeton University Community

## 1.9.1 Powers and Membership

The Judicial Committee of the Council of the Princeton University Community hears and decides, either in the first instance or on referral from one of the other judicial bodies, cases that involve alleged violations of those established rules and regulations whose violation constitutes a serious infringement of the recognized rights of members of the University community, a serious offense against the University's mission, a threat to the ability of the University to carry on its essential operations, or a substantial impairment of the common and legitimate interests of the University. The committee also hears and

decides appeals from persons found guilty of violations of rules by other judicial bodies, when such persons have claimed that the procedures against them have not been fair and reasonable, and when another route of appeal is not otherwise specified. The committee's members include three members of the faculty, two undergraduate students, one graduate student, one member from one of the other groups represented on the council, and a chair who does not vote except in the case of a tie. The nature and structure of the Judicial Committee ensures that members of the University community, if they stand accused of the same offense and if it is a serious one, will have their cases decided in accordance with the same interpretation of the rules involved. Under previous arrangements, cases of alleged offenses by undergraduates, graduate students, faculty members, and staff members were heard by different judicial bodies, and there was no mechanism to prevent the different judicial bodies from putting quite different constructions on the same rule.

Special judicial bodies and special procedures do, however, remain in existence and continue to deal with alleged violations of rules which apply only or mainly to some particular group within the University (e.g., rules governing students, faculty, staff, Public Safety officers, or administrators). Acts which are an exercise of a function unique to such a particular group are not subject to the jurisdiction of the Judicial Committee so long as it would have been reasonable for a person in the circumstances to have believed that those acts were properly within the scope of the individual's particular function. Such acts may, however, fall under the jurisdiction of the rule-applying body or office of the particular group.

## 1.9.2 General Procedures

1. The procedures of the Judicial Committee, which are outlined below, are designed to enable the committee to fulfill its charge, and to guarantee to each person charged the following rights in the interest of ensuring procedural fairness:

   a. To receive in writing in advance of a formal hearing a statement of the charges against the individual, together with a list of the witnesses and of the material evidence which the person bringing charges intends to make available to the Judicial Committee.

   b. To testify if the individual desires and to answer questions without prejudice for failure to testify or answer questions.

   c. To supply to the committee material evidence and a reasonable number of witnesses to be called in the individual's own defense.

   d. To question all witnesses called by the committee, and to challenge the evidence.

    e. To have an adviser of the individual's choice from the resident members of the University community at any hearing, open or closed, who may speak on the individual's behalf.

    f. To receive upon request a record of the proceedings at the hearing. The procedures of the committee also ensure that all persons involved in judicial hearings have the right to orderly procedures.

Any individual involved in proceedings is entitled to be protected from harassment, or fear of harassment, by other participants or by observers. In addition, the University community is entitled to have the triers of fact protected from the influence of threats, harassment, or unruly mob behavior.

2. The procedures of the Judicial Committee were formulated after consideration of a multitude of matters, among them the nature of this University community, the role of the Judicial Committee in the community, procedures of other organizations in and out of this University which have related interests, procedures in courts of law, procedures in congressional and other legislative hearings, the needs, the interest, and the welfare of the individuals who form this community, and the experience of the committee in its first year of existence. Some aspects of the procedures are investigative, others are deliberative. They provide the Judicial Committee the opportunity:

    a. to ascertain the facts surrounding an alleged violation of University regulations;

    b. to explore issues related to such charges, in order to determine possible mitigating circumstances which should be taken into account in the levying of the penalties, if any.

They aim therefore to facilitate the disposition of matters brought to the Judicial Committee with the greatest degree of justice and fairness for all concerned. The committee assumes that all members of the Princeton University community participating in proceedings will observe generally accepted principles of honesty and fair play.

## 1.9.3 Procedure in Cases Not Previously Heard by Another Authority

1. *Charges*

    a. Persons wishing to place a case before the committee shall file a complaint with the secretary of the Council of the Princeton University Community within a reasonable time, stating the nature and circumstances of the alleged violation of University regulations.

    b. The secretary will immediately forward the complaint to the chair of the committee, who will make a preliminary determination of jurisdiction, subject to

review by the full committee. The chair may refer the case to another authority or agree to put the case before the committee.

c. If the case is to come before the committee, the chair will obtain from the person making the complaint a formal statement of the charges being made against a specific person or persons, identifying the University regulation or regulations alleged to have been violated, together with an outline of the case to be presented.

2. *Notification.* Upon receipt of this information the chair will immediately send a copy of the information described in the paragraph above to each person so charged, informing them of the date and place of a pre-hearing conference, to be held within one week of the date of the notification.

3. *Pre-hearing conference.* The purposes of the pre-hearing conference are the following:

a. To give the committee sufficient information for it to determine whether or not a hearing is necessary to determine the facts. If the matter of jurisdiction is at issue, and if a hearing is necessary, the determination of jurisdiction will be the first order of business in the hearing.

b. To make sure that the persons charged fully understand their rights, the charges against them, and the nature of the supporting evidence.

c. To clarify for all parties the procedures to be followed by the committee in hearing and deciding upon a case.

d. To determine whether the persons charged wish to request an administrative determination on the charge. Persons against whom charges have been made may request, and at its discretion the committee may approve, an administrative disposition of the case by an appropriate officer of the University. Under these circumstances the persons charged must sign a statement indicating that they understand the charges against them and their right to a hearing before the Judicial Committee, but that they waive this right and the right to an appeal to the committee. The administrative officer will dispose of the case, sending to the persons charged and to the committee a record of the disposition of the case. Administrative disposition of a charge in no way denies the right of an appeal to the president of the University.

e. To determine whether the persons charged desire an open or a closed hearing and to discuss the scheduling of the hearing.

f. To determine whether any member of the committee chooses not to hear this case because the member cannot in good conscience apply established rules and standards in this case (Charter, 5.6.3). The pre-hearing conference will be closed. It will be attended by the committee and its staff, the persons charged or their representative, the persons bringing charges or their representative, and

any other persons invited by the committee. Each party to the case may be accompanied by an adviser from within the University community. If after proper notice the persons charged do not appear, the committee will proceed to make its own determination in the case. At least three members of the committee shall be present. After the pre-hearing conference, the committee will meet privately to determine on the basis of what it has heard whether a hearing is required under Section 5.6.1 of the Charter of the Council of the Princeton University Community and to set a date for the hearing. Parties to the case will then be informed of the decision of the committee. If the case is to be heard, the committee will obtain from all parties involved:

    a. a list of the witnesses prepared to give testimony if called by the committee, with an indication of the relevance of the testimony of each to the charges being made;

    b. a description of the material evidence available to the committee, with an indication of its relevance.

    The committee will distribute to all parties involved a list of all witnesses and material evidence to be presented.

4. *Hearings*. Hearings will be closed unless the persons being charged request an open hearing. At any point during an open hearing, the persons charged may request permission to close the hearing. The committee will rule on any such requests. In exceptional circumstances, the committee reserves the right to hold a portion of the hearing in closed session.

    a. At a closed hearing only the persons bringing charges and their advisers, the persons being charged and their advisers, witnesses called by the committee, members of the committee, and the committee staff may be present. The names of the persons charged will not be released by the committee, and the records of the case will be considered confidential.

    b. At an open hearing, in addition to the persons mentioned in the paragraph above, spectators from the University community may be admitted up to the normal seating capacity of the room. Open hearings will be held in the Peyton Hall lecture room or a room of approximately equivalent size. The campus radio may be given permission to broadcast the hearing under conditions approved by the committee, or arrangements may be made for the broadcast of the hearing in an additional auditorium if there is sufficient public interest to justify these arrangements.

    c. The chair of the Judicial Committee is responsible for maintaining conditions which are consistent with the orderly conduct of hearings. In carrying out this responsibility, the chair is obligated to prevent and deter hostile, threatening, or

unduly disrespectful remarks or behavior by any individuals present and also to prevent and deter prolonged or emphatic audience response to testimony or argument. In meeting this obligation, the chair may take such steps as are outlined under **section 1.9.5**

"Responsibilities of the Chair," point 3.

d. The committee will call a reasonable number of witnesses requested by the persons bringing charges and the persons being charged. Normally, these witnesses will be called from lists provided before the opening of the hearing by the persons involved and made available to both parties, but the committee may call any witnesses it pleases. Normally, witnesses shall not be present at the hearing until they present their testimony.

e. The committee may permit additions to lists of witnesses or evidence when it is convinced that the availability or relevance of such witnesses or evidence could not have been foreseen before the hearing began. Advance notice of such additions shall always be given to all parties, and the committee shall allow such delay as it may consider necessary to prepare for the questioning of added witnesses or the examination of added exhibits.

f. All witnesses may be questioned by all parties in a case and their advisers and by any member of the committee. The chair may rule any question out of order.

g. All material evidence and documents shall be formally introduced as presented in the hearing, lists of the exhibits proposed for presentation as evidence and copies of documentary evidence having been made available in advance to all parties in a case. The committee may introduce additional materials during the course of the hearing.

h. The credibility of any evidence which is introduced may be challenged by any parties in a case.

i. The judgment of the committee shall be based entirely upon testimony and evidence presented formally during the course of the hearing. The persons charged shall be presumed innocent until the committee is convinced beyond a reasonable doubt by the evidence presented during the hearing that they are guilty. In determining their guilt or innocence the committee will disregard any previous history of disciplinary action with respect to the persons charged. If the persons charged are found guilty, the committee may, in determining a penalty, take into account any previous disciplinary action.

j. The persons charged and the persons bringing charges may be questioned by the members of the committee and by the other parties in the case. The persons charged may decline to answer questions without prejudice.

    k. A verbatim record of the hearing shall be made and kept under the supervision of the secretary of the committee. This record shall be supplied to the persons being charged and the persons bringing charges upon request.

5. *Judgment*

    a. After the parties in the case have had a reasonable opportunity to present their arguments and to question opposing witnesses, and the committee has completed its questioning, the committee shall meet in private to reach a decision and, if it finds the charges to have been sustained, to assign an appropriate penalty.

    b. Five members, not including the chair, shall constitute a quorum. All decisions shall be made by a majority of those present.

    c. When the committee has reached its decision, the chair will notify the parties and then those authorities mentioned in section 5.6.6 of the Charter of the Council of the Princeton University Community and the press of the committee's disposition of the case. The committee's report will include the result of its vote and a majority opinion, together with minority opinions, if any. If the hearing has been closed, the committee in making its public report will be guided by the principles concerning the confidential nature of student records.

## 1.9.4 Procedure in Appeals of Cases Previously Heard by Another Authority

1. According to the charter of the council, the Judicial Committee may also decide to hear appeals from persons found guilty of violating established rules and regulations, when it has been alleged by such persons that the procedures of the original authority were not fair and reasonable.

    a. The person wishing to have a judgment reviewed shall, within one week (during which the University is in session) of the original judgment, file a request for review with the secretary of the council, stating the authority that made the judgment and the date, and indicating the reasons for requesting a review.

    b. The secretary will immediately forward the request to the chair of the committee.

    c. The chair will immediately notify the original authority that the request for review has been made and will as promptly as possible obtain from the authority that made the earlier judgment the record of the proceedings in the case. A copy of this record will be furnished by the committee to the person making the request.

    d. The person making the request will file with the chair of the Judicial Committee within one week of receiving the record a memorandum stating in what specific respects it is alleged that the procedures were not fair and reasonable. In

preparing this memorandum, the person requesting review has the right to seek any advice the person chooses.

2. *Review and Determination.* The committee will meet in closed session to review the appeal memorandum. It may at its discretion call the person making the appeal for questioning in closed session, but if it does, the authority which made the original judgment shall be invited to have a representative present, who may participate in the questioning. The committee may then come to a judgment as listed in point 4 below. Note that the only grounds for appeal are that the procedures of the original authority were not fair and reasonable.

3. *Hearing.* The committee, at its discretion, may hold a formal hearing to determine if the procedures of the original authority were fair and reasonable. If such a hearing is conducted, the procedures would be analogous to those outlined in the above section 1.9.3
"Procedure in Cases Not Previously Heard by Another Authority," in point 4.

4. *Judgment.* The committee may decide to uphold the previous judgment, or to return the case to the original authority. In exceptional cases, for instance where the committee determines that it is unable to return the case to the original authority, the committee may decide to reverse or alter the previous judgment. The ruling of the original authority will be upheld unless convincing argument is presented to the contrary.

## 1.9.5 Responsibilities of the Chair

1. The chair of the Judicial Committee shall preside at all hearings. If the chair must be absent during part of a hearing, the chair may designate another member of the committee to act in the chair's place as deputy chair for the period the chair is absent. If, in extraordinary circumstances, an entire hearing must be conducted in the absence of the chair, the committee shall elect a chair pro tem from among its members by a majority vote, selecting a person from the alternate panel to replace the missing member as a regular voting member so long as the chair shall be absent.

2. The chair, as presiding officer, is responsible for procedural correctness. The chair

   a. makes an initial determination of any procedural question which arises during the course of a hearing;

   b. rules on the propriety of any questions asked by members of the committee, persons charged, or persons bringing charges.

3. The chair is responsible for maintaining conditions which are consistent with the right to orderly conduct of hearings as described in 4c. When persons attending the hearings as observers engage in acts which violate this right, the chair may, after

due warning, require the withdrawal of such persons from the hearing room. The chair may also, after due warning, adjourn the hearing and reconvene, barring all observers except members of the press. The chair may also initiate, on consultation with the committee, charges against observers who are disrupting the hearing.

In cases where the violation of this right stems from acts of persons charged or persons bringing the charges, the committee shall normally adjourn the case and begin hearings within 48 hours on the charge of violating the rights to an orderly hearing. If such persons persist in their disruptive actions, the committee may, after due warning in exceptional instances, continue these proceedings in their absence.

a. Any decision of the chair may be challenged by a member of the Judicial Committee. The committee will meet, if necessary, in executive session to consider the decision and vote on it. A majority of the committee is required to reverse the chair's decision.

b. In hearing cases involving the violation of the right to orderly hearings, the committee shall normally restrict itself to hearing arguments concerning mitigating circumstances involved in the alleged violation. The committee shall then meet to discuss the case and to decide upon appropriate penalties, if any, by majority vote. Penalized individuals wishing to appeal such decisions must address their appeals to the president of the University.

4. The chair shall have no vote in decisions related to the adjudication of charges or the conduct of hearings except to resolve a tie.

## 1.9.6 Order of Proceedings in Cases of the First Instance

1. The chair shall first call upon the persons bringing charges or their representatives to outline the substantive basis of the charges. They may introduce additional material evidence at this time.

2. Members of the committee may then question persons bringing charges.

3. The chair of the committee shall then call upon persons charged to outline their case.

4. Members of the committee may then question the persons charged.

5. Witnesses will then be called by the committee in an order to be determined by the chair.

a. Witnesses normally will first be questioned by members of the committee, then by the persons bringing charges, and, finally, by the persons charged. Each group may, in the same order, then re-question each witness and the members of the committee may ask final questions of witnesses before they are dismissed. (Since all witnesses are called by the committee in order to

facilitate its investigation and adjudication of charges, there are no friendly or hostile witnesses, and cross-examination, redirect examination, and re-cross-examination procedures are not germane.)

b. Witnesses will normally not be present before giving their testimony. After they have been questioned, they may remain at an open hearing and may be called for further questioning by the committee.

c. Persons charged and persons bringing charges will always have an opportunity to speak in direct rebuttal of evidence or the testimony of witnesses when it is their turn to address themselves to the committee.

d. In asking questions of witnesses, persons bringing charges and persons charged may address themselves to the substantive basis and validity of testimony. The committee will make every effort to protect each witness from undue harassment during a hearing.

6. After all witnesses have been called, persons bringing charges and persons charged may question the evidence and documents and raise additional questions. These parties may address their questions directly to one another, unless the chair rules otherwise.

7. Members of the committee may at any time question the persons bringing charges and the persons charged. The latter may decline to answer without prejudice.

8. The chair shall then call upon the persons bringing charges and the persons charged to summarize their positions and to make concluding remarks.

9. At the completion of concluding remarks, the chair may make summary remarks on behalf of the committee and shall close the hearing. The committee shall then meet in executive session in order to make its judgment and to impose penalties, if any.

## 1.9.7 Order of Proceedings in Appeals Cases

The order of proceedings in appeals cases is the same as that in cases of the first instance, except that persons making an appeal present their case first and representatives of the body having made the original decision second.

## 1.9.8 Procedural Requests

1. The parties to a case may request a ruling by the chair concerning procedural correctness at any time during the hearing.

2. The parties to a case may request that the committee add witnesses to be called before it or that the committee call witnesses in a specified order.

3. At any point during an open hearing, the persons charged may request permission to close the hearing. The committee will rule on any such requests.

4. Any member of the committee may request a recess of the hearing so that the committee can meet in executive session at any time during the hearing.

## 1.9.9 Evidence

1. Normally, evidence accepted by both parties at a pre-hearing conference will be labeled before the hearing opens.

2. Other evidence, not accepted by one party, may be introduced and challenged during the hearing. After arguments are given, the chair shall make a ruling on the issue of its admissibility.

3. Photographic evidence introduced:

   a. Persons who took photographs used as evidence are subject to questioning by the committee and both parties to a case as to the circumstances under which the photographs were taken.

   b. Witnesses who used photographs for purposes of identification prior to the hearing are subject to questioning as to how such photographs were used.

All documentary evidence will be retained in the permanent records of the committee.

## 1.9.10 Reports

1. In accordance with section 5.6.6 of the Charter of the Council of the Princeton University Community, the Judicial Committee shall submit a written report on the disposition of each case.

2. This report shall include:

   a. a chronology of the case from the receipt of charges to final disposition;

   b. a statement of actions taken by the committee pertaining to the case;

   c. a statement of the findings which were significant and relevant to the disposition of the case and the selection of any penalties; and

   d. remarks on procedural questions raised during the hearing.

## 1.9.11 Appeals from Decisions of the Judicial Committee

In accordance with the charter of the CPUC (CPUC charter 5.6.5), the president of the University may review decisions of the Judicial Committee in cases not previously heard by another authority and may reduce any penalties imposed by the committee but may not increase them. It has been the policy of each president during the time of the existence of the council, and it is correct in the view of the Committee on Rights and Rules, to regard an appeal to the president chiefly as an opportunity for an individual to seek clemency by explaining special circumstances that might be taken into account

with respect to penalties imposed upon the individual. The purpose of an appeal to the president is not to initiate a rehearing of substantive issues of fact or a new determination of innocence or guilt.

Appeals will not normally be considered unless lodged with the president within one week after the Judicial Committee's decision, unless otherwise specified in the decision.