**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN DOE, | : |
| | : |
| Plaintiff, | : Civil Action No. 3:18-cv-16539-MAS-LHG |
| | : |
| v. | : **Return Date:  December 21, 2018** |
| | : |
| PRINCETON UNIVERSITY, | : |
| | : |
| Defendant. | : |
| | : |

---

**DEFENDANT PRINCETON UNIVERSITY'S RESPONSE IN OPPOSITION TO
PLAINTIFF JOHN DOE'S MOTION FOR PRELIMINARY INJUNCTION,
AND CROSS MOTION TO DISMISS THE COMPLAINT
FOR FAILURE TO STATE A CLAIM AS A MATTER OF LAW**

---

On the Brief:

Stephen J. Kastenberg, Esq. (026001993)
Christopher J. Kelly, Esq. (024972008)
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1163
Telephone:  856.761.3400
Facsimile:  856.761.1020

*Attorneys for Defendant,
Princeton University*

## TABLE OF CONTENTS

**Page**

I.    **PRELIMINARY STATEMENT** ........................................................ 1

II.   **BACKGROUND** ........................................................................... 4

III.  **PRELIMINARY INJUNCTION LEGAL STANDARD** ...................... 8

IV.  **ARGUMENT: PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION** ............................................................................... 8

     A.    **Doe Will Not Suffer Irreparable Harm In The Absence Of An Injunction** ........................................................................ 8

          1.    **An Injunction Cannot Issue Where the Alleged Irreparable Harm is Speculative** ....................................... 8

          2.    **Continuing the Investigation Will Not Otherwise Cause Irreparable Harm to Plaintiff** ..................................... 11

     B.    **Plaintiff Cannot Show A Likelihood Of Success On The Merits** ................... 12

          1.    **Plaintiff's Due Process Claim (Count One) Fails** ................................. 12

          2.    **Plaintiff's Breach of Contract (Count Two) and Anticipatory Breach of Contract Claims (Count Three) Fail** ..................... 15

          3.    **Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing Claim (Count Four) Fails** ...................... 17

     C.    **The Balance Of Equities Weighs Heavily In Princeton's Favor** ................... 18

     D.    **An Injunction Is Not In the Public Interest** .................................... 21

V.    **CONCLUSION** ........................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

Adams v. Freedom Forge Corp.,
    204 F.3d 475 (3d Cir. 2000)...........................................................................8

Biener v. Calio,
    361 F.3d 206 (3d Cir. 2004)..........................................................................13

Bleiler v. College of the Holy Cross,
    No. 11-11541-DJC, 2013 WL 4714340 (D. Mass. Aug. 26, 2013).........................14

Campbell Soup Co. v. ConAgra, Inc.,
    977 F.2d 86 (3d Cir. 1992).............................................................................9

Clayton v. Trustees of Princeton University,
    608 F. Supp. 413 (D.N.J. 1985) .....................................................................19

Continental Grp., Inc. v. Amoco Chems. Corp.,
    614 F.2d 351 (3d Cir. 1980)............................................................................9

Doe v. Brandeis Univ.,
    177 F. Supp. 3d 561 (D. Mass. 2016) ..............................................................14

Doe v. Columbia Univ.,
    101 F. Supp. 3d 356 (S.D.N.Y. 2015),............................................................14

Doe v. Rector and Visitors of George Mason Univ.,
    149 F.Supp.3d 602 (E.D. Va. 2016) ...............................................................13

Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,
    421 F. Supp. 2d 831 (D.N.J. 2006) .................................................................15

Hernandez-Loring v. Universidad Metropolitana,
    233 F.3d 49 (1st Cir. 2000)...........................................................................14

Howe v. Pennsylvania State Univ.,
    No. 1:16-0102, 2016 WL 393717 (M.D. Pa. Feb. 2, 2016)..................................9

Instant Air Freight Co. v. C.F. Air Freight, Inc.,
    882 F.2d 797 (3d Cir. 1989)............................................................................8

Jackson v. Macalester College
    169 F. Supp. 3d 918, 921–22 (D. Minn. 2016) .................................................11

Jansen v. Emory Univ.,
    440 F.Supp. 1060 (N.D. Ga. 1977) ..........................................................................14

Lorentzen v. Boston College,
    440 F.Supp. 464 (D. Mass.1977), ...........................................................................14

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992)...................................................................................................8

McMahon v. Salmond,
    573 Fed. Appx. 128 (3d Cir. 2014) .........................................................................15

Moe v. Seton Hall Univ.,
    No. CIVA 2:09-01424, 2010 WL 1609680 (D.N.J. Apr. 20, 2010) ..................13, 15

Rendell–Baker v. Kohn,
    457 U.S. 830 (1982)..................................................................................................13

Robb v. Lock Haven Univ.,
    No. 17-cv-00964, 2017 WL 2506434 (M.D. Pa. June 9, 2017)..................................9

Score Bd., Inc. v. Upper Deck Co.,
    959 F. Supp. 234 (D.N.J. 1997) .................................................................................8

Winter v. Natural Resources Defense Council, Inc.,
    555 U.S. 7 (2008)...................................................................................................8, 12

Wuillamey v. Werblin,
    364 F. Supp. 237 (D.N.J. 1973) .......................................................................9, 10, 21

Yapak, LLC v. Massachusetts Bay Ins. Co.,
    No. CIV 3:09-CV-3370, 2009 WL 3366464 (D.N.J. Oct. 16, 2009) ......................18

**State Cases**

Accident Index Bureau, Inc. v. Male,
    95 N.J. Super. 39 (App.Div.1967) ............................................................................10

Citizens Coach Co. v. Camden H. R. Co.,
    29 N.J. Eq. 299 (1878)..............................................................................................10

J.H. Renarde, Inc. v. Sims,
    312 N.J. Super. 195, 711 A.2d 410 (1998) ..............................................................18

Johnson v. Roselle EZ Quick LLC,
    226 N.J. 370 (2016) ..................................................................................................10

Mittra v. Univ. of Medicine,
    316 N.J. Super. 83, 719 A.2d 693 (App. Div. 1998) .........................................15, 16

Napolitano v. Trustees of Princeton Univ.,
   186 N.J. 548, 453 A.2d 263 (App. Div. 1982)...........................................................15, 16, 21

Noye v. Hoffman-La Roche Inc.,
   238 N.J. Super. 430, 570 A.2d 12 (App. Div. 1990) ..................................................18

State v. Schmid,
   84 N.J. 535, 423 A.2d 615 (1980).....................................................................19, 21

Wilson v. Amerada Hess Corp.,
   168 N.J. 236 (2001) ...........................................................................................17, 18

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 22

## I.      PRELIMINARY STATEMENT

Defendant Princeton University ("Princeton") opposes the motion of Plaintiff John Doe ("Plaintiff" or "Doe") for a preliminary injunction seeking to bar Princeton for an indeterminate amount of time from continuing its pending investigation into allegations that Doe, a Princeton student, violated the university's sex discrimination and sexual misconduct policy. Princeton also moves to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because he has not stated any claim upon which relief can be granted.

Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.* prohibits discrimination based on sex by educational institutions.  The regulations, guidance, and agreements implementing Title IX include minimum requirements for conducting investigations of sexual misconduct against a student.  Doe does not contend – nor could he – that Princeton's procedures are inconsistent with the current Title IX requirements.  Instead, he filed his complaint and motion on the heels of an announcement by the U.S. Department of Education ("DoE") of ***potential*** regulatory changes concerning Title IX investigations, and seeks a preliminary injunction barring Princeton from further investigating Doe's alleged policy violations until "such time as the review, comment, and implementation of [DoE's] proposed regulations has passed."  Complaint, Prayer for Relief.[1]  The potential regulatory changes on which Doe's claims rest are at the beginning of their required 60 day public notice and comment period – which DoE can extend – after which DoE will consider those comments for an indefinite amount of time.  After that, it ***may*** choose to implement the proposed regulations at

---

[1]      This is the ***only*** relief requested in the Complaint.  *See also* Plaintiff's Memorandum of Law in Support of Application for Preliminary Injunction (hereafter "Pl's Br."), p. 2. Given that, the parties submit that the underlying allegations are not relevant to plaintiff's claims or Princeton's defenses, and have agreed not to reference them.

some future date; it *may* modify its proposed regulations from the preliminary form announced; it *may* seek additional comment on such modifications; or it *may* elect to do nothing, leaving the current regulations intact.  Here, the potential regulations immediately generated substantial public and political comment and debate.

In contrast to Plaintiff's litany of contingent what-ifs, Princeton has current, cognizable legal obligations under DoE regulations and an agreement with DoE entered into on October 12, 2014 (the "Resolution Agreement"), all reinforced by Princeton's own rules, to conduct Title IX investigations "promptly."  Even if case law did not mandate a court's deference to a university's internal handling of such student matters, – and it does – Princeton must comply with current law, not an attenuated, speculative, multiply-contingent view of a possible future legal obligation.  Indeed, concern for campus safety, and concern for both complainants and respondents in such investigations dictate the prompt investigation and evaluation of such claims.

Under Doe's view of the law, all universities, colleges, vocational, and secondary schools nationwide would have to halt every pending or forthcoming Title IX sexual misconduct investigation indefinitely, waiting – like Godot – for a change in regulations that may never come.  Indeed, educational institutions would have to place all such investigations on hold every time a potential regulatory – and, presumably, legislative – modification is announced that, if ultimately adopted in the proposed form, could affect the conduct of such investigations.  This is not the law, and freezing Title IX investigations in such circumstances would be harmful public policy.

In this case, Doe's motion fails for the following reasons.

*First*, Doe cannot meet his burden of showing irreparable harm based on a potential violation of some possible future regulatory change.  Nor can Doe establish irreparable harm by speculating about injury he might incur if the investigation – which may or may not find him responsible for rule violations – proceeds under currently applicable law.  Immediate irreparable harm is the touchstone of a preliminary injunction, and the Court need look no further than this failure.  Doe does not, however, meet any of the other requirements for a preliminary injunction in any event.

*Second*, Doe has not demonstrated a likelihood of success on the merits for his claims.  Doe's due process claim fails because private universities like Princeton are not required to provide federal due process in their disciplinary proceedings (and Doe cannot identify a violation in any event).  Further, Doe's contract claims fail because he cannot identify any contractual provision that Princeton has violated or threatens to violate.  Indeed, Doe concedes Princeton is adhering to its published procedures, which do not, even for good cause, contemplate Princeton postponing its investigation for an unspecified period of time.  To the contrary, Princeton's procedures – and applicable law – mandate that it promptly and thoroughly investigate the claims against Doe in accordance with its current policies.  Not only should the Court deny Doe's motion, but also it should dismiss his complaint as a matter of law for these reasons.

*Third*, the equities weigh strongly in favor of denying the injunction and allowing Princeton to conduct a prompt and thorough investigation as required by current law, Princeton's policies, and Princeton's Resolution Agreement with the DoE.  Moreover, Princeton's interest in the safety and well-being of its academic community weighs heavily against the open-ended stay Doe demands.  Prompt resolution also furthers the interests of both campus victims and

respondents by enabling fair and impartial investigation and resolution before memories have faded and while witnesses and others remain part of the campus community.  Respondents, who may be absolved of any policy infractions, additionally stand to benefit from prompt resolution, rather than having such claims pending indefinitely over them, with interim restrictive measures in effect.

> _Fourth_, the public interest supports the prompt resolution of campus sexual misconduct claims.  The promotion of campus safety, and the interests of justice for both victims and respondents, is not only in Princeton's interest, but the public's interest, as evidenced by DoE statements in its currently applicable guidance to educational institutions.  And, as noted, the entry of an injunction here would logically extend to widespread and repeat freezing of Title IX educational institution investigations across the country.

> Accordingly, Princeton requests that this Court deny plaintiff's request for a preliminary injunction, and that the complaint be dismissed with prejudice.

## II.     BACKGROUND

> Princeton is a private university operating in Princeton, New Jersey.  Complaint, ¶ 5.  Doe is a student at Princeton.

> Princeton's "Rights, Rules, Responsibilities" (the "Policy") outlines Princeton's policies with respect to various issues, including sex discrimination and sexual misconduct by students and other members of its community.  Policy, attached as Exhibit A to Declaration of Ronald L. Israel ("Israel Cert.").  The Policy governs "investigation and disciplinary procedures that will be followed in response to allegations of sex or gender discrimination, including sexual misconduct such as sexual harassment and sexual assault, intimate partner violence, stalking, and related retaliation."  Id. at 1.3.  As a recipient of federal funding, Princeton is also subject to Title

IX, which prohibits discrimination on the basis of sex in any federally funded education program or activity.  20 U.S.C. § 1681.

Princeton's Policy stresses timely resolution of sexual misconduct investigations, dictating that the university's Title IX Coordinator "will provide notice of the outcome within 60 calendar days after receipt of the complaint or report."   Israel Cert., Ex. A., at § 1.3.10.  On November 7, 2018, following a complaint by another student, Jane Roe, against Doe, Princeton's Title IX Coordinator began an investigation into whether Doe had sexually harassed and assaulted the student.  Crotty Cert. ¶ 2.

The Policy sets forth the procedure for investigating complaints made pursuant to Title IX.  Israel Cert., Ex. A, at § 1.3, *et seq.*  Under the Policy, Princeton "has an obligation to make reasonable efforts to address complaints and reports of sex or gender discrimination, including sexual misconduct[.]"  Id.  Once a complaint of sexual misconduct or sex discrimination is submitted, the university's Title IX Coordinator appoints a panel of three trained, skilled Title IX investigators to investigate.  Id. at § 1.3.12(1).  Once the initial investigation, including providing the complainant and respondent an opportunity to be interviewed, has been completed, a case file, consisting of "all interview summaries, witness statements and other documents" is prepared and provided to each party.  Id.  Each party then has an opportunity to meet again with the investigators, respond in writing, request that the investigators collect additional evidence or testimony, and to submit proposed questions for the panel to ask the other parties and/or witnesses.  Such questions will be asked verbatim, provided that the panel deems them appropriate.  Id.; Crotty Cert. at ¶ 8.  Following that opportunity, the panel determines, by a majority decision, whether a preponderance of the evidence demonstrates the respondent violated University policy.  Id.  If a student is found responsible, the case file is

forwarded to the dean of undergraduate students and the deputy dean for academic affairs of the

Graduate School, who will jointly determine the penalty.  Id. at § 1.3.12(2).  The entire

investigatory process is kept confidential.  Id. at § 1.3.5(2).

   Princeton's Title IX investigations must comply with DoE regulations, currently

applicable DoE guidance, and with the Resolution Agreement.  The DoE proposed modifications

to its Title IX regulations on November 16, 2018, which were published in the Federal Register

on November 28, 2018.  Kelly Cert., Ex. A, 83 Fed. Reg. 230 at 61462-61499 (Nov. 28, 2018).

Pursuant to the Administrative Procedures Act, the proposed rules at issue here are published in

the Federal Register for a 60-day notice and comment period, which the DoE can extend

indefinitely.  5 U.S.C. § 553; Executive Order 12,866 § 6(a).  Thereafter, the DoE will consider

for an indeterminate period of time how further to proceed.  It may adopt, modify, or withdraw

the proposed rules.  Executive Order 12,866 § 6(a)(3)(E).  If the DoE modifies its proposed rule,

it may republish the modified proposal for an additional 60 day notice and comment period.

Kelly Cert., Ex. B ("Regulatory Timeline," Regulations.gov.).  If the DoE decides to move

forward with a final rule, the final rule must then be published in the Federal Register for at least

30 days before it becomes effective.  5 U.S.C. § 553 (d).  It is common practice for DoE to

provide for longer effective dates, so that new rules applicable to educational institutions become

effective during the summer, between academic years.  It is not uncommon for litigation

concerning controversial final government rulemaking to ensue, which may further delay

implementation.

   The DoE issues official guidance on regulatory compliance.  "Guidance

documents represent the [DoE's] thinking on a topic."  Kelly Cert. Ex. C ("Significant Guidance

at the Dept. of Educ." U.S. Dept. of Educ.)  On September 22, 2017, as Plaintiff alleges, the DoE

withdrew certain guidance that it had issued in 2011 interpreting Title IX.  Kelly Cert. Ex. D
(Dear Colleague Letter).  However, DoE left in place and effective the agency's 2001 guidance
regarding Title IX.  Israel Cert. Ex. D (Revised Sexual Harassment Guidance:  Harassment of
Students by School Employees, Other Students, or Third Parties (the "2001 Guidance")).  Both
the 2001 Guidance and currently applicable regulations require that Title IX investigations
"include prompt, fair, and impartial process from the initial investigation to the final result."  34
C.F.R. § 668.46(k)(2)(i); Israel Cert Ex. D (2001 Guidance) at (IX).

Princeton, like many other universities, entered into a Resolution Agreement with the
DoE regarding Princeton's Title IX policies. As part of the Resolution Agreement, Princeton's
Title IX policy, including the 60-day timeframe for resolving complaints, was reviewed and
approved by DoE.  Crotty Cert. ¶6; Israel Cert. Ex. D .  The Resolution Agreement requires that
Princeton's Title IX Policy have "designated and reasonably prompt timeframes for the major
stages of the misconduct grievance process…"  Crotty Cert. Ex. A at p.3.  The proposed
regulations do not change the existing requirements that Princeton investigate promptly and
within designated time frames. Kelly Cert., Ex. E.

The proposed regulations have already been the subject of significant public focus and
policy debate.  (See Kelly Cert. ¶ 6, and Ex. E thereto, gathering examples of media coverage.)
In addition, on October 12, 2018, a group of Senators, who had received a pre-announcement
version of the proposed regulations, sent an open letter to Secretary of Education Betsy DeVos
asserting that the DoE's intended proposed regulations contravene Congress' intent in passing
Title IX and requesting that the DoE withdraw them.  Kelly Cert., Ex. F.

## III.   PRELIMINARY INJUNCTION LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008).  To succeed on his

motion, Doe bears the burden of proving each of the following: (1) he is likely to succeed on the

merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the

balance of equities tips in his favor; and (4) the injunction is in the public interest.  Id. at 374;

Adams v. Freedom Forge Corp., 204 F.3d 475, 486 (3d Cir. 2000). This burden is "quite heavy."

Score Bd., Inc. v. Upper Deck Co., 959 F. Supp. 234, 238 (D.N.J. 1997).

Because Doe cannot satisfy any of the elements of the preliminary injunctive

standards – much less all four – this Court should deny his request for an injunction.

## IV.   ARGUMENT: PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION

### A.   Doe Will Not Suffer Irreparable Harm In The Absence Of An Injunction

#### 1.   An Injunction Cannot Issue Where the Alleged Irreparable Harm is Speculative

Plaintiff cannot demonstrate that he will suffer irreparable harm, or any harm at

all, if Princeton proceeds with the investigation of the complaint lodged against him.  A court

may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way

of protecting the plaintiff from harm."  Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d

797, 801 (3d Cir. 1989).

The Supreme Court itself has held that speculative harm does not constitute

cognizable legal harm, finding that the "irreducible constitutional minimum of standing" requires

"injury in fact":  a concrete and particularized injury that is actual or imminent, but not

conjectural or hypothetical.  Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).  It therefore

follows that the Third Circuit and Districts courts within it, likewise hold that speculative injury is not irreparable harm.  See, e.g., Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992) (plaintiff cannot make showing of irreparable harm if harm will occur only in the indefinite future); Continental Grp., Inc. v. Amoco Chems. Corp., 614 F.2d 351, 359 (3d Cir. 1980) ("injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties."); Robb v. Lock Haven Univ., No. 17-cv-00964, 2017 WL 2506434 (M.D. Pa. June 9, 2017) ("[B]ecause 'speculative injury does not constitute a showing of irreparable harm,' Plaintiffs have failed to sufficiently establish irreparable injury entitled them to injunctive relief."); Howe v. Pennsylvania State Univ., No. 1:16-0102, 2016 WL 393717 (M.D. Pa. Feb. 2, 2016) (denying preliminary injunction because "[s]peculative injury does not constitute a showing of irreparable harm.").

Plaintiff's request for a preliminary injunction in this matter is based entirely on speculation that a proposed regulatory change will in fact occur.  Indeed, this District has specifically rejected the notion that an injunction can issue based on announced but not yet adopted and implemented regulatory change.  In Wuillamey v. Werblin, the plaintiffs sought to enjoin real estate development based on a failure to obtain a permit from the United States Department of Environmental Protection pursuant to regulations that had been published, but not adopted yet.  The court rejected the plaintiffs' motion and reasoning:

> Plaintiffs in the case at bar do not seek to abate a presently existing nuisance. Rather, they seek equitable relief against a possible future violation of federal air quality standards. . . .  Such speculation seems entirely to foreclose the plaintiffs' ability to demonstrate that, absent an injunction, they will suffer any harm, 'irreparable' or other.

Wuillamey v. Werblin, 364 F. Supp. 237, 241 (D.N.J. 1973).  The court so held even though, unlike here, the proposed regulation at issue sought to make itself immediately applicable,

prohibiting a person from commencing construction "after the date of this ***proposed regulation***"

without a permit.  Id. at 242 (emphasis added).  Wuillamey held this immediately applicable

obligation unenforceable, as a proposed regulation has no force of law and may never come to

pass:

> A proposed regulation may be modified or abandoned. It does not have the force of law. Since 40 C.F.R. § 52.1590 is at this date not final, plaintiffs cannot be heard to complain that it is being violated.

Id. at 243.

Similarly, New Jersey state courts have long found that injunctions cannot issue

based on speculation about forthcoming changes in the law.  More than a hundred years ago the

Court of Errors and Appeals held that "[n]o rule of equity is better settled than the doctrine that a

complainant is not in a position to ask for a preliminary injunction when the right on which he

founds his claim is, as a matter of law, unsettled." Citizens Coach Co. v. Camden H. R. Co., 29

N.J. Eq. 299, 304 (1878); see also Accident Index Bureau, Inc. v. Male, 95 N.J. Super. 39, 50

(App.Div.1967), aff'd 51 N.J. 107 (1968), app. dis. 393 U.S. 530, 89 S.Ct. 872, 21 L.Ed.2d 754

(1969) ("[A]n interlocutory injunction should not issue when a legal question upon which the

case turns is not free from doubt.").  As recently as 2016, the New Jersey Supreme Court held

that "a party may not rely on pending legislation because "[t]he possibility that a bill might

become law is an expectation built on uncertainty until it happens." Johnson v. Roselle EZ Quick

LLC, 226 N.J. 370, 389 (2016) (internal citations omitted).  The same is true for DoE's proposed

regulations.   Indeed, the point is particularly acute here, where the proposed changes are the

subject of substantial public discussion, debate, and political activity, rendering their final timing and outcome even less certain.[2]

Thus, although Plaintiff claims that he will suffer irreparable harm absent an open-ended (potentially never-ending) injunction barring Princeton "from proceeding with the Title IX investigation. . .  until such time as the review, comment, and implementation of DOE's propose regulations concerning Title IX investigations has passed," Complaint, Prayer for Relief, his motion must be denied.

**2.      Continuing the Investigation Will Not Otherwise Cause Irreparable Harm to Plaintiff**

Even setting aside that speculative regulatory changes will not serve as a premise for irreparable harm, the thesis that Princeton's adherence to the existing disciplinary procedures will harm Plaintiff is also impermissibly.  Doe, with counsel or another assistant if he chooses, will have the opportunity to present his position to the investigative panel, and the process may conclude without assigning him responsibility for any rule violation or any sanction.  The presupposition that Princeton will sanction Doe as a result of the investigatory proceeding constitutes speculative claim of harm, a type not countenanced by the Supreme Court and Third Circuit, and does not provide a basis to enter a preliminary injunction.

The recent case of <u>Jackson v. Macalester College</u> illustrates this point. 169 F. Supp. 3d 918, 921–22 (D. Minn. 2016).  There, a student under investigation for sexual misconduct moved for a temporary restraining order to enjoin the private college he attended

---

[2]      Indeed, Congress's authority to overrule regulations under the Congressional Review Act (5 U.S.C. § 801, *et seq.*) and the belief of some Senators, as expressed in their October 24, 2018 letter to DoE, that the proposed regulations are contrary to Congress's intent in passing Title IX, provides yet another reason why the adoption and eventual implementation of the proposed regulations in their current form is highly uncertain.

from conducting an investigation.  The college's Title IX investigator had not yet interviewed the student, nor had the college commenced its five-step adjudicative process.  Id. at 678.  The student respondent there – unlike here – argued that there was a high likelihood he would be found responsible for the alleged assault and expelled.  Id.  The court denied the motion because the plaintiff failed to show irreparable harm:  "The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights...."  Id.  Jackson is directly on point to this case, where the confidential investigation is ongoing and Plaintiff has not been found responsible or sanctioned.

As the Supreme Court has held, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," Winter, supra, 555 U.S. at 22.  Therefore, this Court should deny Plaintiff's request for an injunction.

**B.**     **Plaintiff Cannot Show A Likelihood Of Success On The Merits**

Not only has Plaintiff failed to establish irreparable harm, but he has not stated any claim upon which relief can be granted, much less demonstrate a likelihood of success on the merits.  Accordingly, the Court should deny the motion and dismiss the complaint with prejudice.

**1.**     **Plaintiff's Due Process Claim (Count One) Fails**

In his complaint, Plaintiff claims that Princeton will violate his Due Process rights under the United States Constitution if it continues to pursue the disciplinary proceedings against him prior to the enactment of the Department of Education's proposed Title IX regulations.  Complaint at ¶¶ 43-50.

To prevail on a procedural due process claim, a plaintiff must establish (1) that he possessed a protected liberty interest; (2) that the state or its agents deprived him of that interest; and (3) that this deprivation was effectuated without constitutionally-sufficient process.  Doe v. Rector and Visitors of George Mason Univ., 149 F.Supp.3d 602 (E.D. Va. 2016).  As a threshold matter, however, a due process claim is not available against a private university like Princeton for conducting its own disciplinary proceedings.  Even if Princeton were a state actor – and it is not – plaintiff has not established any of the foregoing factors.

Plaintiff's due process claim is not viable because private universities are not state actors and are not bound by constitutional due process in carrying out disciplinary proceedings. It is undisputed that Princeton is a private university.  Complaint at ¶ 5.  The Constitution's due process protections generally "protect[] individuals only against government action." Biener v. Calio, 361 F.3d 206, 216 (3d Cir. 2004).

Plaintiff attempts to circumvent this state action requirement by arguing that Princeton's receipt of federal Title IX funds obligates it to provide constitutional due process. Pl. Br. at 4.  This flies directly in the face of Supreme Court precedent holding that a "school's receipt of public funds does not [without more] make [its] decisions acts of the State." Rendell– Baker v. Kohn, 457 U.S. 830, 839 (1982).[3]

Courts – including the District of New Jersey – have repeatedly held that private universities' disciplinary processes are not subject to federal due process requirements.  Moe v. Seton Hall Univ., No. CIVA 2:09-01424, 2010 WL 1609680, at *3 (D.N.J. Apr. 20, 2010)

---

[3]     Plaintiff cites no case law or statutory support for the argument that Title IX requires private universities to comply with Constitutional due process when investigating student conduct rule violations, because there is none.  In fact, the DoE's current effort to promulgate new regulations affording certain measures in disciplinary hearings belies the idea that the appropriate balance of protections is not instead a matter of policymaking.

(dismissing due process claims against university); see also Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 51 (1st Cir. 2000) ("a private university is not directly governed by the due process requirements of the Fifth and Fourteenth Amendments"); Jansen v. Emory Univ., 440 F.Supp. 1060, 1062 (N.D. Ga. 1977), aff'd, 579 F.2d 45 (5th Cir.1978); Lorentzen v. Boston College, 440 F.Supp. 464 (D. Mass.1977), aff'd, 577 F.2d 720 (1st Cir. 1978), cert. denied, 440 U.S. 924 (1979).

This remains true when a private university receiving Title IX funding launches a Title IX investigation concerning a student.  Bleiler v. College of the Holy Cross, No. 11-11541-DJC, 2013 WL 4714340, at *4 (D. Mass. Aug. 26, 2013) (holding, in the context of a due process challenge to a Title IX investigation, "[s]ince there is no dispute that Holy Cross is a private school, the federal Constitution does not establish the level of due process that the College had to give [plaintiff] in his disciplinary hearing."); see also Doe v. Columbia Univ., 101 F. Supp. 3d 356, 369 n.5 (S.D.N.Y. 2015), vacated on other grounds, 831 F.3d 46 (2d Cir. 2016) (holding a due process claim by student respondent in private university's Title IX investigation into claims of sexual misconduct would fail because the private university was not a state actor).

In support of his due process argument, Plaintiff relies on Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 602 (D. Mass. 2016).  Brandeis is distinguishable as it involved allegations that a university failed to conduct a disciplinary hearing with "basic fairness" and also involved a student provided far less process than indisputably exists here.  There, the university did not allow the student to have a full statement of the charges levied against him; have counsel present; examine evidence or witness statements; or review the examiner's report finding him responsible prior to the sanctions and appeals phases of his proceedings.  Id. at 603-07.  Unlike in Brandeis, Princeton's procedures comply with Title IX, which Plaintiff does not dispute.  Princeton has

provided Plaintiff with notice of the complaint against him; allows him an advisor (who can be

an attorney) to assist in the investigation and be present at his interview; will allow him to

examine any evidence and reports utilized in the investigation; and will afford him the

opportunity to respond to the evidence prior to any finding by the investigatory panel.

      **2.**      **Plaintiff's Breach of Contract (Count Two) and Anticipatory Breach of Contract Claims (Count Three) Fail**

Plaintiff also cannot prevail on his breach of contract claim.  To show a breach of

contract, a "[p]laintiff must prove that a valid contract existed, Defendant materially breached

the contract and [p]laintiff suffered damages as a result of that breach."  <u>Fletcher-Harlee Corp. v.</u>

<u>Pote Concrete Contractors, Inc.</u>, 421 F. Supp. 2d 831, 833 (D.N.J. 2006) (citing <u>Coyle v.</u>

<u>Englander's</u>, 199 N.J. Super. 212, 223, 488 A.2d 1083 (1985)).  "In order for a valid contract to

exist, Plaintiff must show mutual assent, consideration, legality of the object of the contract,

capacity of the parties and form of memorialization."  <u>Id.</u>

Under New Jersey law, "[t]he relationship between a student and a university is

not purely contractual, and a student's contract claim arising from a university disciplinary

process is not adjudicated under strict contract principles."  <u>Napolitano v. Trustees of Princeton</u>

<u>Univ.</u>, 186 N.J. 548, 453 A.2d 263 (App. Div. 1982); <u>see also</u> <u>Mittra v. Univ. of Medicine</u>, 316

N.J. Super. 83, 719 A.2d 693 (App. Div. 1998); <u>McMahon v. Salmond</u>, 573 Fed. Appx. 128 (3d

Cir. 2014); <u>Moe,</u> 2010 WL 1609680, at *4-6.  Instead, New Jersey accords substantial deference

to private universities' implementation and enforcement of their own policies, and a plaintiff

cannot prevail on a breach of contract claim regarding a private university's procedures absent a

clear deviation from those procedures:

> A private educational institution such as Princeton University
> involves essentially voluntary relationships between and among
> the institution and its students, faculty, employees, and other
> affiliated personnel, and the life and activities of the individual

15

members of this community are directed and shaped by their
shared educational goals and the institution's educational policies.

[. . .]

We must give substantial deference to the importance of
institutional integrity and independence. Private educational
institutions perform an essential social function and have a
fundamental responsibility to assure the academic and general well
being of their communities of students, teachers and related
personnel. At a minimum, these needs, implicating academic
freedom and development, justify an educational institution in
controlling those who seek to enter its domain. The singular need
to achieve essential educational goals and regulate activities that
impact upon these efforts has been acknowledged even with
respect to public educational institutions.... Hence, private colleges
and universities must be accorded a generous measure of
autonomy and self governance if they are to fulfill their paramount
role as vehicles of education and enlightenment[.]

Napolitano, 186 N.J. Super. at 565, 453 A.2d at 272 (citing State v. Schmid, 84 N.J. 535, 423

A.2d 615 (1980)).  When, as here, a student asserts a contract claim, the scope of judicial review

of a university disciplinary process is limited to "a determination whether the procedures

followed were in accordance with the institution's rules and regulations."  Mittra, 316 N.J.

Super. at 90.

 Plaintiff argues that Princeton failed to comply with its Policy "[b]y denying

Plaintiff's request for an adjournment pending the implementation of the proposed regulations

for Title IX investigations."  Pl's Br., p. 11.  Princeton's Policy directs that the university

"complete the investigation and any resulting disciplinary process and provide notice of the

outcome within [sixty] calendar days after the receipt of the complaint or report," but provides

that the investigation "[t]imeframes *may* be extended" for "good cause."  Israel Cert. Ex. A at §

1.3.10(3) (emphasis added).  The Policy defines "good cause" to include "ensur[ing] the integrity

and completeness of the investigation, comply[ing] with a request by external law enforcement,

accomodat[ing] the availability of witnesses, or accomodat[ing] delays by the parties," as well as

16

"for other legitimate reasons, including the complexity of the investigation and the severity of the alleged misconduct." Id.

As an initial matter, Plaintiff did not request an extension of the timeframe for completing an investigation – he requests that the investigation come to a full stop.  Complaint at Prayer for Relief.  The Policy does not contemplate suspension of an investigation, as opposed to an extension for completing its work, and Princeton's rejection of a suspension cannot amount to a clear deviation from its policies.  In any event, under the Policy, Princeton's decision to extend the timeframe for investigation is ***discretionary***.  Princeton cannot be in contractual breach of the Policy by declining to exercise in good faith the discretion that the Policy affords it, especially given the substantial deference due Princeton's application of the Policy.  Wilson v. Amerada Hess Corp., 168 N.J. 236, 246 (2001) ("The fact that a discretion-exercising party causes the dependent party to lose some or all of its anticipated benefit from the contract thus is insufficient to establish a breach of contract by failing to perform in good faith.")  Princeton's decision to proceed with the investigation falls squarely within the terms of the Policy.  Moreover, the grounds in the Policy for a "good cause" extension of the timeframe for investigation all involve short-term issues like scheduling witness interviews and cooperating with law enforcement.  The Policy does not contemplate extending the timeframe for investigation indefinitely based on the possibility that the DoE might – or might not –change existing regulations.  Indeed, an open-ended extension like that would also contravene DoE requirements that Princeton's Title IX investigations proceed promptly, so that Princeton's denial of that request cannot be unlawful.

### 3. Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing Claim (Count Four) Fails

Similarly, Plaintiff's breach of implied covenant of good faith and fair dealing claim fail as a matter of law.  "There is no universally-accepted test for establishing a breach of

the duty of good faith and fair dealing, but two elements recur with some frequency: (1) the defendant acts in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." Yapak, LLC v. Massachusetts Bay Ins. Co., No. CIV 3:09-CV-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009).  "[I]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing."  Noye v. Hoffman-La Roche Inc., 238 N.J. Super. 430, 433, 570 A.2d 12, 14 (App. Div. 1990)).

Plaintiff observes that this covenant exists with every contract, but Princeton's relationship with Doe "is not purely contractual."  Even if a contract did exist between Plaintiff and Princeton, Plaintiff's breach of implied covenant of good faith and fair dealing claim would fail because (i) the express provisions of the Policy do not permit a suspension of the investigation, and in any event, afford Princeton discretion whether to grant an extension; Princeton is not alleged to be – and is not – acting with "bad motive or intention."  See Wilson, supra, 168 N.J. at 251 ("Without bad motive or intention, discretionary decisions that happen to result in [] disadvantage to the other party are of no legal significance.").  On the contrary, as discussed, New Jersey law accords Princeton "substantial deference" in implementing its internal procedures, and here Title IX regulations and its agreement with DOE require prompt investigation of sexual misconduct complaints.

## C.   The Balance Of Equities Weighs Heavily In Princeton's Favor

"Unless the hardship to plaintiff if the injunction does not issue greatly outweighs the harm to defendant if it does, the injunction should not issue."  J.H. Renarde, Inc. v. Sims, 312 N.J. Super. 195, 204-05, 711 A.2d 410, 415 (1998).  The balance of equities tips decidedly in favor of Princeton.

First, Princeton has an interest and legal mandate to promote the safety and wellbeing of its community, and in preserving its autonomy to do so.  New Jersey's state and federal courts agree that academic institutions must be granted significant deference in handling internal student discipline matters.  The New Jersey Supreme Court has found that "[p]rivate educational institutions perform an essential social function and have a fundamental responsibility to assure the academic ***and general well-being*** of their communities of students, teachers and related personnel."  State v. Schmid, 84 N.J. 535, 566 (1980) (emphasis added).  To accomplish these goals, "Princeton's interest in autonomy is extremely strong."  Clayton v. Trustees of Princeton University, 608 F. Supp. 413, 438, (D.N.J. 1985).

The DoE affirms universities' (and the public's) strong interest in preventing and remedying sexual harassment to ensure the well-being of the academic community.  The Preamble to the 2001 Guidance describes the "enduring principles" that:

> It continues to be the case that a significant number of students, both male and female, have experienced sexual harassment, which can interfere with a student's academic performance and emotional and physical well-being.  Preventing and remedying sexual harassment in schools is essential to ensuring a safe environment in which students can learn.

[Israel Cert., Ex. D. at ii].  Critical to Princeton's mandate to maintaining the general well-being of the university community and preventing and remedying sexual harassment is the prompt investigation of sexual misconduct complaints.

Second, granting Plaintiff's injunction would cause Princeton to violate valid, currently applicable Title IX regulations and DoE guidance.  Universities can lose their federal student aid for failing promptly to investigate claims of sexual misconduct or sex discrimination, which is exactly what Plaintiff insists Princeton do.  20 U.S.C. § 1682 (allowing DoE and Department of Justice to terminate federal funding to an educational institution that is not in

compliance with Title IX).  Specifically, Princeton is required to take "immediate and appropriate steps to investigate or otherwise determine what occurred and take prompt and effective steps reasonably calculated to end any harassment, eliminate a hostile environment… and prevent harassment from occurring again" once it has notice of possible sexual harassment, as it does here.  DoE 2001 Guidance at (VII).  Prompt resolution is important not only to campus safety, but also to furthering the interests of justice and of both victims and respondents by enabling fair and impartial investigation and resolution before memories have faded and while witnesses and others remain part of the campus community.

        In fact, DoE's Office for Civil Rights has found that the pendency of other investigations to be an insufficient basis to delay a corresponding Title IX investigation.  <u>Academy School Dist. No. 20</u>, OCR Case No. 08-93-1023 (school acted improperly when it stopped its investigation after complaint filed with police.); <u>see also</u> <u>Mills Public School Dist.</u>, OCR Case No. 01-93-1123 (not sufficient for school to wait until end of police investigation to conduct Title IX investigation.)  Certainly, if Title IX investigations cannot be delayed pending criminal investigations, they cannot be delayed pending potential changes in the law.

        Third, the prompt completion of Title IX investigations benefits Princeton's student community for other reasons.  The Policy obligates Princeton to implement interim measures that can affect both a complainant and respondent.  In many situations, including the investigation at issue here, Princeton issues a no-contact order during the pendency of the investigation, which places restrictions on the conduct of both the respondent and the complainant.  In addition, Princeton will not award a degree to any senior who is a respondent in a pending disciplinary matter until that matter has been resolved.  Crotty Cert. at ¶ 10. Prompt resolution can obviate some or all of the burden of these interim measures.

Finally, while an injunction will demonstrably harm Princeton and its academic community, plaintiff cannot establish that he has suffered or will suffer any harm, let alone irreparable harm, from Princeton's compliance with current law or its hypothetical violation of regulations that have not yet been, and may never be, implemented. See Section IV.A., ante; Wuillamey v. Werblin, supra, 364 F. Supp. at 241 ("[P]laintiff[] cannot be heard to complain that [a proposed regulation] is being violated.").

### D. An Injunction Is Not In the Public Interest

In addition to Princeton's institutional interest, the foregoing case law, including Napolitano and Schmid, and DoE authority also demonstrate that the public interest is served by investigating allegations of sexual misconduct at educational institutions promptly and thoroughly. The 2001 Guidance explains that "[a] school has a responsibility to respond promptly and effectively to sexual harassment." Notably, nothing in the proposed regulations invoked by Plaintiff alters the requirements to investigate and resolve such claims promptly. To the contrary, the proposed Title IX regulations require "reasonably prompt timeframes for completion of the grievance process." Kelly Cert. Ex. A, 83 Fed. Reg. 230, 61472 (Nov. 29, 2018). Prompt resolution of Title IX claims remains one of the DoE's priorities.

Moreover, granting an injunction would have negative public consequences that extend far beyond this case. Under Plaintiff's argument, any educational institution receiving federal funds must freeze any and all Title IX investigations due to these and any other later potential new regulations. Such investigations would repeatedly be placed into limbo for indeterminate periods, with uncertainty and negative consequences not only for the parties involved, but for the academic communities and general public that benefit from the prompt resolution of such claims.

V.      **CONCLUSION**

For the foregoing reasons, Princeton respectfully requests that the Court deny Plaintiff John Doe's Order to Show Cause for Preliminary Injunction.  Princeton also respectfully requests that the Court dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: December 10, 2018

/s/ Christopher J. Kelly
Stephen J. Kastenberg
Christopher J. Kelly
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey  08002-1163
Telephone:  856.761.3400
Facsimile:  856.761.1020

*Attorneys for Defendant,*
*Princeton University*