**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN DOE,

    Plaintiff,

v.

PRINCETON UNIVERSITY,

    Defendant.

Civil Action No. 18-16539 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court upon Plaintiff John Doe's ("Plaintiff") Application for a Preliminary Injunction. (ECF No. 1.) Defendant Princeton University ("Princeton") opposed (ECF No. 5) and filed a Motion to Dismiss (ECF No. 7). Plaintiff replied. (ECF No. 9.) On December 21, 2018, the Court heard Oral Argument on the matter. For the reasons set forth below, Plaintiff's Application for a Preliminary Injunction is denied, and Defendant's Motion to Dismiss is granted in part and denied in part.

**I.**     **Background**

    Plaintiff is a student at Princeton and involved in an investigation by Princeton pursuant to Title IX of the Educational Amendment of 1972 ("Title IX") and Princeton's "Rights, Rules, Responsibilities 2018" policy (the "RRR Policy"). (Compl. ¶ 10, ECF No. 1.) Plaintiff and Jane Roe, a fellow student, began a relationship in the spring of 2017. (*See id.* ¶ 1.) In January 2018, Plaintiff advised Princeton that "he felt he was being harassed by Jane Roe." (*Id.* ¶ 11.) On

November 7, 2018, Plaintiff was advised that Princeton had begun a Title IX investigation regarding Jane Roe's allegations about conduct that occurred in the spring of 2017.[1] (*Id.*)

As part of the investigation, Plaintiff was scheduled to be interviewed on November 26, 2018. (*Id.* ¶ 37.) Plaintiff requested that the interview be postponed until January 28, 2019, the day the notice-and-comment period for proposed regulations by the United States Department of Education ("DOE") closes. (*Id.* ¶ 38.) Princeton agreed to two postponements of the interview, first to December 3, 2018, and then to December 10, 2018. (*Id.* ¶ 39.) Princeton, however, did not agree to delay the Title IX Investigation pending the implementation of the proposed regulations. (*Id.*) Princeton also did not agree to apply certain substantive portions of the proposed regulations to the Title IX Investigation. (*Id.*) This lawsuit ensued.

Plaintiff asserts four causes of action against Defendant. In Count One–Violation of Due Process Rights, Plaintiff alleges that if the Title IX Investigation continues "before DOE's proposed regulations are enacted, Plaintiff would be subject to a disciplinary proceeding that does not sufficiently protect his due process rights or provide him a fundamentally fair disciplinary process[,]" and Princeton's failure to adjourn the Title IX investigation "has violated Plaintiff's due process rights." (*Id.* ¶¶ 49-50.) In Count Two–Breach of Contract, Plaintiff alleges that Princeton's failure to adjourn the Title IX Investigation until the implementation of the DOE's proposed regulations is a violation of a provision of the RRR Policy. (*Id.* ¶¶ 51-58.) In Count Three–Anticipatory Breach of Contract, Plaintiff alleges that "Princeton's [RRR Policy] strives to 'establish procedures for a fair hearing,'" and Princeton's failure to adjourn the Title IX Investigation "until such time as the proper framework for such investigation is determined

---

[1] The underlying facts regarding Jane Roe's allegations and the current investigation are not at issue nor are they before the Court. The Court refers to the current investigation as the "Title IX Investigation."

qualifies as an anticipatory breach of Princeton's obligation to Plaintiff . . . ." (*Id.* ¶¶ 59-64.) In Count Four–Breach of Implied Covenant of Good Faith and Fair Dealing, Plaintiff alleges that "Princeton refused in bad faith Plaintiff's requested adjournment" and this "breached the implied covenant of good faith and fair dealing" contained within the RRR Policy. (*Id.* ¶¶ 65-70.) Plaintiff requests that the Court enjoin Princeton "from proceeding with the Title IX [I]nvestigation as to Plaintiff's and Jane Roe's respective allegations until such time as the review, comment, and implementation of DOE's proposed regulations concerning Title IX investigations has passed." (*Id.* at 14.)

### A. Princeton's Title IX Policy

Section 1.3 of the RRR Policy includes, among other things, Princeton's "investigation and disciplinary procedures that will be followed in response to allegations of sex or gender discrimination, including sexual misconduct such as sexual harassment and sexual assault, intimate partner violence, stalking, and related retaliation." (RRR Policy 14, ECF No. 1-5.) The RRR Policy applies to the conduct of students occurring on Princeton "property (i.e., on campus), and in the local vicinity[,]" as well as off-campus conduct that is associated with a Princeton-sponsored program or activity. (*Id.* at 16.) Section 1.3.3 of the RRR Policy outlines a wide range of conduct that is prohibited under the policy. (*Id.* at 16-20.)

Section 1.3.10 of the RRR Policy contains general provisions applicable to Title IX investigations at Princeton. (*See id.* at 28-32.) It explains that "[d]uring the disciplinary process, both parties (complainant and respondent) have equivalent rights, including the opportunity to present evidence, to identify individuals who may possess relevant information and request that such individuals be interviewed, to be accompanied by an adviser of their choice, and to appeal." (*Id.* at 29.) Per sub-section 2, "[t]he investigative process is initiated when the Title IX Coordinator receives a complaint or report of a violation of" the RRR Policy and "upon receipt of such a report,

3

the Title IX Coordinator will" respond to any immediate concerns, conduct an initial assessment, and may take certain actions. (*Id.*) Sub-section 3 states:

> The Title IX Coordinator will seek to complete the investigation and any resulting disciplinary process and provide notice of the outcome *within 60 calendar days after receipt of the complaint or report*. [Princeton] will seek to complete any appeal within 20 calendar days after receipt of the appeal.
>
> There may be circumstances that require the extension of timeframes *for good cause, including extension beyond 60 calendar days*. Timeframes may be extended to ensure the integrity and completeness of the investigation, comply with a request by external law enforcement, accommodate the availability of witnesses, or accommodate delays by the parties; or for other legitimate reasons, including the complexity of the investigation and the severity and extent of the alleged misconduct. [Princeton] will notify the parties in writing of any extension of the timeframes for good cause, and the reason for the extension.

(*Id.* at 30 (emphasis added).)

Section 1.3.12 of the RRR Policy provides specific procedures for circumstances where a student allegedly violated Section 1.3 of the RRR Policy. (*See id.* at 32-35.) After receipt of a complaint or a report alleging a violation, the Title IX Coordinator "will appoint a three-person investigative panel of administrators and/or outside investigators." (*Id.* at 32.) This investigative panel is empowered to "conduct an inquiry and determine, by a preponderance of the evidence, whether this policy was violated." (*Id.*) If parties involved in the investigation are interviewed, "[e]ach party may select an adviser of their choice who may accompany them to any meeting or related proceeding, but the adviser may not actively participate in the interview process." (*Id.*) The investigative panel compiles a file of certain relevant documents and provides the file to the complainant and the respondent along with a written description of "the allegations that will be adjudicated." (*Id.*) Upon receipt and review of the file, the parties "have an opportunity (1) to meet again with the panel, (2) to respond in writing, (3) to request the collection of other information by the panel, and (4) to identify individuals who may possess relevant information (and request that such individuals be interviewed)." (*Id.* at 33.) "If the panel believes that further

4

response by the parties is necessary for purposes of reaching an outcome, the panel will offer each party the opportunity to further respond to the materials collected." (*Id.*) "Following the investigation, the panel will meet to determine, by a majority decision, whether the respondent, based on *the preponderance of evidence standard*, violated University policy." (*Id.* (emphasis added).)

Upon a finding that a student violated the RRR Policy, "the entire case file [is] forwarded to the dean of undergraduate students and the deputy dean for academic affairs of the Graduate School, who will jointly determine the penalty." (*Id.*) "Penalties will be determined based on the seriousness of the misconduct as compared to like cases in the past, and the student's previous disciplinary history (if any)." (*Id.*) In the case of student who "is found responsible for violating University policy, the Office of the Dean of Undergraduate Students . . . will record the penalty and retain records in accordance with protocols for all other disciplinary cases." (*Id.*) Subsection 2 of Section 1.3.16 provides the range of penalties applicable to students including, among others: a warning, disciplinary probation, withholding a degree, suspension, suspension with conditions, expulsion, and censure. (*Id.* at 39-41.)

**B.     The Department of Education's Proposed Title IX Regulations**

On September 22, 2017, the Department of Education ("DOE") issued a "Dear Colleague" letter withdrawing: (i) an April 4, 2011 "Dear Colleague" letter; and (ii) an April 29, 2014 Questions and Answers document. (Sept. 22, 2017 Correspondence 1, ECF No. 1-7.) In the same letter, the DOE referred recipients of the letter to a "Q&A on Campus Sexual Misconduct" contemporaneously issued with the letter and stated that the DOE would "continue to rely on its *Revised Sexual Harassment Guidance*, which was informed by a notice-and-comment process and issued in 2001 [("2001 Guidance")], as well as the reaffirmation of that *Guidance* in the Dear Colleague Letter on Sexual Harassment issued January 25, 2006." (*Id.* at 2.)

On November 29, 2018, the DOE published a notice of proposed rulemaking in the Federal Register. *See* Title IX, 83 Fed. Reg. 61,462 (proposed Nov. 29, 2018) (to be codified at 34 C.F.R. pt. 106).[2] If promulgated, the Proposed Regulations would be the first "Title IX regulations . . . to address sexual harassment as a form of sex discrimination" promulgated since Title IX's implementing regulations were promulgated in 1975. *Id.* at 61,463. In the Executive Summary of the Proposed Regulations, the DOE states that it "has determined that current regulations and guidance do not provide appropriate standards for how recipients must respond to incidents of sexual harassment." *Id.* at 61,462. The DOE, accordingly, "propose[s] regulations addressing sexual harassment under Title IX to better align the Department's regulations with the text and purpose of Title IX and Supreme Court precedent and other case law." *Id.* The DOE asserts that the Proposed Regulations "will help to ensure that recipients understand their legal obligations including what conduct is actionable as sexual harassment under Title IX, the conditions that activate a mandatory response by the recipient, and particular requirements that such a response must meet so that recipients protect the rights of their students to access education free from sex discrimination." *Id.* The notice-and-comment period for the Proposed Regulations closes on January 28, 2019. *Id.*

The DOE proposes adding Section 106.45(b)(3) "stating that the recipient must conduct an investigation of the allegations in a formal complaint," and providing specific requirements and procedures applicable when investigating a formal complaint *Id.* at 61,475. Among those requirements are regulations regarding cross-examination in Title IX proceedings. Specifically, the Proposed Regulations include a requirement that universities' Title IX procedures "must

---

[2] Plaintiff submitted the unofficial version of the proposed regulatios submitted to the Federal Register (ECF No. 1-6), and Princeton submitted the official version of the same (ECF No. 5-2). The Court cites to the official version using the pagination contained therein. The Court refers to these as the "Proposed Regulations."

6

provide for a live hearing[,]" and "[a]t the hearing, the decision-maker must permit each party to ask the other party and any witnesses all relevant questions and follow-up questions, including those challenging credibility." *Id.* "Such cross-examination at a hearing must be conducted by the party's advisor of choice, notwithstanding the discretion of the recipient under § 106.45(b)(3)(iv) to otherwise restrict the extent to which advisors may participate in the proceedings." *Id.*

The DOE also proposes adding Section 106.45(b)(i) "stating that in reaching a determination regarding responsibility, the recipient must apply either the preponderance of the evidence standard or the clear and convincing evidence standard." *Id.* at 61,477. Universities may employ the preponderance of the evidence standard if that standard applies to "conduct code violations that do not involve sexual harassment but carry the same maximum disciplinary sanction." *Id.*

## II. Discussion

### A. Plaintiff's Application for a Preliminary Injunction

Plaintiff's primary argument in support of his application for a preliminary injunction is that "if Princeton proceeds in its investigation before DOE's proposed regulations take effect, Plaintiff will be irreparably harmed by being subjected to a process lacking the proper due process protections." (Pl.'s Moving Br. 4, ECF No. 1-3.) "Plaintiff's position is that he should not be subject to an investigation that the DOE has already determined may be insufficient to protect his constitutional due process rights." (*Id.* at 2.) Plaintiff, accordingly, views an adjournment of the proceedings until implementation of the DOE regulations as "the only way to ensure that Plaintiff's constitutional and contractual rights are protected." (*Id.*)

Plaintiff argues that he is likely to succeed on the merits of each of the four asserted causes of action. Plaintiff insists that he will be successful on the due process violation claim because

7

(1) Princeton is required to comply with Title IX, (2) the DOE's current guidance "has recognized that students accused of sexual harassment are entitled to due process protections[,]" (3) the DOE's proposed regulations "provide adequate due process protections for those involved in grievance proceedings," and (4) Princeton has indicated it would proceed with the current investigation in the absence of the due process protections embodied in the proposed regulations. (*Id.* at 6-9.) Plaintiff argues that Princeton has breached its contract with Plaintiff by denying Plaintiff's request for an adjournment of the proceedings despite the provision within the RRR Policy's providing for an extension of time of investigation for "good cause." (*Id.* at 11.) Plaintiff argues that he will succeed on his breach of the implied covenant of good faith and fair dealing claim for the same reasons as the breach of contract claim. (*See id.* at 12-15.)

Plaintiff insists that he will be irreparably harmed if the Court does not grant the preliminary injunction. (*Id.* at 15.) Specifically, Plaintiff argues that if the investigation proceeds, he "will not have the opportunity to cross-examine his accuser or have other fundamental procedural protections, such as the correct burden of proof." (*Id.*) As a result, he will have to "defend himself without the benefit of procedures deemed necessary by DOE, and, upon a finding that he was responsible for the conduct alleged, would be subject to significant penalties, including reputational and educational injuries for conduct that he unequivocally denies." (*Id.*)

Finally, Plaintiff argues that the balance of the equities favors granting the preliminary injunction because the relief would "simply maintain the status quo." (*Id.* at 16.) Plaintiff also notes that Jane Roe filed her complaint "nearly eighteen months after the conduct at issue" and so an "adjournment for such a significant purpose would cause no prejudice in light of the extensive delay" that has already occurred. (*Id.* at 16-17.)

### B. Plaintiff's Application for a Preliminary Injunction is Denied

"[T]he grant of injunctive relief is an extraordinary remedy . . . which should be granted only in limited circumstances." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) (internal citation omitted). To obtain a preliminary injunction, the moving party must establish:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017) (alterations in original) (quoting *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)).

The Third Circuit clarified that the moving party must first establish the two "most critical" factors—success on the merits and irreparable injury—before the Court considers the possibility of harm to others and the public interest. *Id.* at 179. On the first factor, the moving party must establish a likelihood of success on the merits "which requires a showing significantly better than negligible but not necessarily more likely than not . . . ." *Id.* On the second factor, the irreparable injury must be "more likely than not to [occur] . . . in the absence of preliminary relief." *Id.*

The Third Circuit has held that a "showing of irreparable harm is insufficient if the harm will occur only in the indefinite future[,]" instead "the moving party must make a clear showing of *immediate* irreparable harm." *Campbell Soup Co. v. ConAgra Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (internal quotations and citation omitted). This Court has stated that "an injunction may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Boretsky v. Corzine*, No. 08-2265, 2009 WL 1312701, at *5 (D.N.J. May 11, 2009) (citation omitted).

Here, Plaintiff has failed to establish that he will suffer an immediate irreparable injury in the absence of the requested relief. At the outset, the Court notes that Plaintiff failed to set forth any precedent supporting the proposition that a preliminary injunction should issue based on proposed regulations that do not constitute final agency action. Indeed, Plaintiff's position belies "the established point of law that proposed regulations . . . have no legal effect." *Sweet v. Sheahan*, 235 F.3d 80, 87 (2d Cir. 2000) (citation omitted). Despite this, Plaintiff asserts that if the Title IX Investigation proceeds he "will not have the opportunity to cross-examine his accuser or have other fundamental procedural protections, such as the correct burden of proof." (Pl.'s Moving Br. 15.) As a result, he will have to "defend himself without the benefit of procedures deemed necessary by DOE, and, upon a finding that he was responsible for the conduct alleged, would be subject to significant penalties, including reputational and educational injuries for conduct that he unequivocally denies." (*Id.*)

Plaintiff asserts that "it is beyond speculative to suggest that DOE will do anything other than enact [the Proposed Regulations] following the review and comment period" because of the "significant and time-consuming research" that the DOE conducted before issuing the Proposed Regulations. (Pl.'s Reply Br. at 9.) During Oral Argument, Plaintiff's counsel asserted that the DOE has "already undertaken the normal process" that would be entailed in the notice-and-comment period, and counsel agreed with the proposition that the notice-and-comment period for the Proposed Regulations is *pro forma*. (Dec. 21, 2018 Tr. 124:18-24; 4:25-5:2.)

The Court is not persuaded by Plaintiff's assertions. The Administrative Procedures Act ("APA"), 5 U.S.C. § 500 *et seq.* provides that after notice of proposed rule making, "the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(c). The APA also requires that "[a]fter consideration of the relevant matter presented, the

agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." *Id.* "Section 553 [of the APA] was enacted to give the public an opportunity to participate in the rule-making process[,]" and "[i]t also enables the agency promulgating the rule to educate itself before establishing rules and procedures which have a substantial impact on those regulated." *Texaco, Inc. v. Fed. Power Comm'n*, 412 F.2d 740, 744 (3d Cir. 1969) (citation omitted).

While Plaintiff highlights the significant amount of research the DOE indicates it engaged in prior to publishing the Proposed Regulations, there is no indication that this work is a sufficient substitute for the APA-mandated notice-and-comment period, and Plaintiff has provided the Court with no legal authority supporting that proposition. The Court, accordingly, cannot accept Plaintiff's assertions that the notice-and-comment period is *pro forma* and that the Proposed Regulations, in their current form, will be promulgated as final regulations. As the Court alluded to during the December 21, 2018 Oral Argument, accepting Plaintiff's proposition requires the Court to ignore a possible violation of the APA while applying the substance of the Proposed Regulations to adjudicate an alleged due process violation claim. (*See* Dec. 21, 2018 Tr. 5:9-16.) The Court agrees with the Second Circuit's observations in *Sweet*, that "by design, rulemaking—proposed rules, followed by notice and comment, leading to final rules—is a process of graduated decision-making resulting in final regulations," and "[i]t would make little sense for this court to short-circuit the process by giving effect to what were merely meant to be proposed regulations." 235 F.3d at 87.

The alleged harm Plaintiff alleges he will suffer is also too speculative. Plaintiff asserts that, in his view, the Title IX Investigation will not result in a negative outcome for him. (Dec. 21, 2018 Tr. 6:9-13.) The Court does not have the facts at issue in the Title IX Investigation, thus the Court cannot assess the likely result of the Title IX Investigation and whether Plaintiff will

11

suffer any adverse consequences. Thus, as Plaintiff's counsel stated at Oral Argument, the only potential harm Plaintiff can point to at this time is the "risk that the process is going to [negatively] impact" Plaintiff. (*Id.* at 7:4-5.) This risk, based on procedures and requirements embodied in the Proposed Regulations, is far too speculative. Substantively, Plaintiff's argument that there is a risk of harm that Princeton will apply a lower standard of evidence is challenged by the content of the Proposed Regulations themselves. The Proposed Regulations require Princeton to apply the same standard of evidence in Title IX investigations as applied to other conduct code violations with the potential for the same penalties. Princeton admits that a different standard of evidence is currently applied to other conduct code violations. (*Id.* at 23:2-13.) Plaintiff, however, fails to acknowledge that if the Proposed Regulations are promulgated in their current form, Princeton may respond by using the lower standard for all conduct code violations. Plaintiff, accordingly, would not have suffered any harm arising from the application of an improper standard of review.

Whether Plaintiff will suffer any harm from Princeton's current procedure for submitting written questions in lieu of direct cross-examination is a closer call. As the DOE acknowledges in the Proposed Regulations, the United States Supreme Court has described cross-examination as "the 'greatest legal engine ever invented for the discovery of truth.'" Proposed Regulations at 61,476 (quoting *California v. Green*, 399 U.S. 149, 158 (1970)). In the Sixth Circuit opinion discussed in the Proposed Regulations, the right of cross-examination is limited to circumstances where "the university's determination turns on the credibility of the accuser, the accused, or witnesses . . . ." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) (citations omitted). Specifically, "if a university is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination in order to satisfy due process." *Id.* (citation omitted).

Here, Plaintiff cites no authority showing that the Third Circuit or this Court has adopted the same reasoning and the Court cannot identify any precedent showing the same. Plaintiff, moreover, has not established that Princeton's ultimate determination in the instant Title IX Investigation will turn on the credibility of Jane Doe, a witness, or Plaintiff. Thus, even if the Sixth Circuit's precedent on the right to cross-examination in Title IX investigations was binding on the Court, Plaintiff has not established that that right has been triggered and would be violated by Princeton's current Title IX procedures contained in the RRR Policy.

In sum, the Court concludes that Plaintiff has failed to establish that he will suffer an immediate irreparable harm in the absence of the Court providing relief. The Court now turns to the merits of Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court also concludes that Plaintiff has failed to establish a likelihood of the success on the merits on his due process violation claim. The Court, does not address the third and fourth factors of the preliminary injunction analysis.

**C.  Princeton's Motion to Dismiss is Granted in Part**

On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted). A district court is to conduct a three-part analysis when considering a Rule 12(b)(6) motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[ ] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff . . . ." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-

defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

### 1. *Plaintiff's Due Process Violation Claim Fails*

"To prevail on a procedural due process claim, plaintiff must establish (i) that he possessed a protected liberty interest, (ii) that the state or its agents deprived him of this interest, and (iii) that this deprivation was effectuated without constitutionally sufficient process." *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 613 (E.D. Va. 2016) (citation omitted). Because Princeton is a private institution, the United States Constitution does not set the level of due process Princeton must provide Plaintiff. *Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49, 51 (1st Cir. 2000) (noting that "a private university is not directly governed by the due process requirements of the Fifth and Fourteenth Amendments.") In *Rendell-Baker v. Kohn*, the United States Supreme Court concluded that a private "school's receipt of public funds does not make the [actions of the school] acts of the State." 457 U.S. 830, 840 (1982).

Princeton argues that "a due process claim is not available against a private university like Princeton for conducting its own disciplinary proceedings." (Def.'s Opp'n Br. 13.) Thus, per, Princeton, Plaintiff's due process claim fails on its face. Princeton also argues that unlike the cases Plaintiff relies on regarding "basic fairness", Princeton's procedures comply with Title IX and Princeton has followed those procedures to date. (*Id.* at 14 (discussing *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561 (D. Mass. 2016)).) Plaintiff replies that "Princeton's receipt of federal funding requires that it comply with Title IX, pursuant to DOE's direction as to how to do so." (Pl.'s Reply

Br. 9, ECF No. 9 (emphasis omitted).) Plaintiff asserts that "DOE has definitively weighed in on the proper procedure to be implemented in the context of a university's Title IX investigations[,]" and because "Princeton's current Policy does not comply, Plaintiff is likely to succeed on his due process claim." (*Id.* at 5.) Plaintiff argues that the 2001 Guidelines "direct[] that procedures 'according due process to both parties involved' in a proceeding 'will lead to sound and supportable decisions.'" (*Id.* at 4 (citations omitted).)

Plaintiff's arguments are unpersuasive. In effect, Plaintiff argues that the Proposed Regulations, and the Executive Summary and specific procedures contained therein, have the force of law. As discussed above, the Proposed Regulations are merely proposals and do not have the force of law. Perhaps recognizing the flaw in relying on the Proposed Regulations, Plaintiff also relies on the DOE's current guidance for support. (*Id.* (arguing that the 2001 Guidelines "direct[] that procedures according due process to both parties involved in a proceeding will lead to sound and supportable decisions.") (internal quotations and citation omitted).) Plaintiff equates the references to due process in the 2001 Guidelines to the DOE imposing a requirement for cross-examination in current Title IX investigations. The 2001 Guidelines, however, do not establish that Plaintiff's due process rights require Princeton to allow cross-examination in the Title IX Investigation.

At bottom, Plaintiff's due process claim relies on proposed procedures and standards contained in proposed regulations, and Plaintiff has alleged no facts establishing that the RRR Policy in its present form violates current binding DOE regulations or other binding precedent. Accordingly, Plaintiff has not adequately alleged that the present application of the RRR Policy to Plaintiff violates his due process rights.

### 2. Defendant's Motion is Denied as to Counts Two, Three, and Four

Under New Jersey law, "a cause of action exists for breach of contract when the plaintiff can demonstrate that there exists '[a] valid contract, defective performance by the defendant, and resulting damages.'" *Zelnick v. Morristown-Beard Sch.*, 137 A.3d 560, 566 (N.J. Sup. Ct. Law. Div. 2015) (quoting *Coyle v. Englander's*, 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985)). New Jersey courts, however, have cautioned that "the relationship between the university and its students should not be analyzed in purely contractual terms." *Mittra v. Univ. of Med. & Dentistry of N.J.*, 719 A.2d 693, 694 (N.J. Super. Ct. App. Div. 1998). "While recognizing that the tuition paid by the student in order to be educated at a university may in some circumstances be considered contractual consideration," New Jersey Courts have "nevertheless emphasized the 'necessity for independence of a university in dealing with the academic failures, transgressions or problems of a student.'" *Romeo v. Seton Hall Univ.*, 875 A.2d 1043, 1049 (N.J. Super. Ct. App. Div. 2005) (citation omitted). New Jersey courts have rejected "a rigid application of contractual principles to university-student conflicts" and have limited a court's "scope of review to a determination whether the procedures followed were in accordance with the institution's rules and regulations." *Mittra*, 719 A.2d at 697.

Here, the parties agree that strict contractual principles do not govern Plaintiff's breach of contract claim. Plaintiff alleges that Princeton breached its contract with Plaintiff by denying Plaintiff's request for an adjournment of the proceedings despite the RRR Policy provision providing for an extension of time of the Title IX Investigation for "good cause." (Compl. ¶¶ 51-58.) Princeton argues that the RRR Policy states that the timeframe of an investigation may be extended for "good cause" and "good cause" is defined to include certain identified instances and "other legitimate reasons, including the complexity of the investigation and the severity of the alleged misconduct." (Def.'s Opp'n 16-17.) Princeton argues that Plaintiff is not seeking an

16

extension. (*Id.* at 17.) Instead, Plaintiff wants the investigation to come to a full stop. (*Id.*) Princeton asserts that the decision to extend the timeframe of an investigation is discretionary, and it cannot be in breach of the RRR Policy "by declining to exercise in good faith the discretion that the RRR Policy affords it, especially given the substantial deference due Princeton's application of the RRR Policy." (*Id.* (citing *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126-27 (N.J. 2001)).) Plaintiff responds to Princeton's argument by asserting that "Plaintiff has *not* requested that Princeton cease its investigation entirely forever; rather, Plaintiff has very clearly requested that Princeton simply hold off on its investigation until the proper terms of that investigation have been clarified by DOE, which will undoubtedly happen sometime in the near future." (Pl.'s Reply 6 (emphasis in original).) Plaintiff asserts that "Princeton's own Policy contemplates that the process may be delayed for legitimate reasons." (*Id.*)

Here, Plaintiff pled the minimum amount of facts required to survive a Rule 12(b)(6) motion. Plaintiff has plausibly alleged the existence of a contract between Princeton and Plaintiff. Plaintiff has also plausibly alleged that Princeton has breached that contract by denying Plaintiff's extension of time for "good cause." Whether the Proposed Regulations amount to good cause for an extension of time and whether Princeton's denial of Plaintiff's request was in accordance with the substantial deference granted to it by New Jersey law are issues more appropriately resolved at the summary judgment stage of litigation. Plaintiff's Anticipatory Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing claims rely on the same set of sufficiently pled facts. The Court, accordingly, denies Defendant's Motion to Dismiss as to Counts Two, Three, and Four.

## III. Conclusion

For the reasons set forth above, Plaintiff's Application for a Preliminary Injunction is denied, and Princeton's Motion to Dismiss is granted in part and denied in part. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp  
**MICHAEL A. SHIPP**  
**UNITED STATES DISTRICT JUDGE**

**Dated:** January 9, 2019